**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>THE MORTGAGE LAW GROUP, LLP, CONSUMER FIRST LEGAL GROUP, LLC, THOMAS G. MACEY, JEFFREY J. ALEMAN, JASON E. SEARNS and HAROLD E. STAFFORD,<br><br>Defendants. | ) | Case No. 3:14-cv-00513 |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO ABSTAIN

## INTRODUCTION

The Defendants in this case are all lawyers (and CFLG is a law firm). All but one of the Defendants (*i.e.*, all but Jason Searns) are currently involved in two different sets of proceedings, which involve conflicting legal theories arising out of the same conduct:

***First,*** Defendants are involved in state bar proceedings. Stafford and CFLG are the subject of an inquiry by the Wisconsin Office of Lawyer Regulation ("OLR"). Macey and Aleman are the subject of a disciplinary proceeding by the Illinois Attorney Registration and Disciplinary Commission ("ARDC") arising from their involvement with TMLG. In those actions, the OLR and ARDC contend that TMLG and CFLG (and its attorney members) were engaged in the practice of law. The OLR and ARDC further contend that, because they were involved in the practice of law, Defendants may be subject to disciplinary action by those bodies.

***Second,*** Defendants are involved in this lawsuit. In this action, the CFPB must seek to establish that Defendants were ***not*** engaged in the practice of law. That is because Regulation O

(*i.e.*, the regulation that the CFPB seeks to enforce) contains an attorney exemption. In short, Regulation O does not apply to attorneys who abide by the applicable rules of practice in their respective states.

Thus, Defendants find themselves in a classic Catch-22. In one set of proceedings (*i.e.*, the state regulatory actions), they face the prospect of liability because they ***are*** practicing law. In another proceeding (*i.e.*, this action), they face liability because they ***are not*** practicing law. If all actions proceed simultaneously, the OLR, ARDC and this Court will all be inquiring into the same factual and legal issues (*i.e.*, whether Defendants were practicing law, and whether they abided by the applicable rules of conduct) at the same time. They will also be simultaneously reaching legal conclusions on the application of substantive Illinois and Wisconsin regulatory law and the potential liability of Defendants under the respective state rules. Thus, the possibility of duplicative proceedings and inconsistent rulings looms large.

These actions should not be permitted to proceed simultaneously. The power to define the practice of law and regulate the conduct of lawyers has traditionally been reserved to the states, and is a matter of vital state concern. Indeed, both Wisconsin and Illinois have delegated the exclusive power to regulate the practice of law to their respective Supreme Courts. Those Supreme Courts, in turn, have created comprehensive administrative regimes (of which the OLR and ARDC are vital parts) to exercise that power. Both Supreme Courts have provided for judicial review of those administrative regimes.

Respectfully, the OLR and ARDC (and the Wisconsin and Illinois Supreme Courts) are much better equipped (and are the more appropriate bodies) to decide issues of attorney conduct and regulation than is this Court. Defendants submit that this Court should abstain from hearing

this case (under the *Burford* doctrine or the doctrine of primary jurisdiction) until the current OLR and ARDC matters are completed.

## FACTUAL BACKGROUND

### TMLG's Business

The Mortgage Law Group, LLP ("TMLG") is a national law firm that specialized in mortgage foreclosure mitigation legal services. Such services included, but were not limited to, loan modifications, repayment plans, forbearances, resolution of issues involving junior liens, and short sale alternatives.

Macey, Aleman and Searns were the only three Class A partners of TMLG. To provide legal services to clients across the country, TMLG also had a number of Class B partners, attorneys who are licensed to practice law in their respective states. When a client retained TMLG for legal services, a TMLG Class B partner in the client's state was assigned to that particular client and was responsible for reviewing the client's documents, managing the client's file and supervising TMLG support staff in the provision of services. TMLG stopped accepting new clients in early 2013, and has not provided service to any clients since mid-2013.

### CFLG's Business

CFLG is a Wisconsin-based law firm that provided foreclosure defense and ancillary mortgage relief services to its clients. CFLG provided similar services to its clients as those provided by TMLG. From its inception in 2011 until July 2012, Harold Stafford was the sole member and owner of CFLG. In July 2012, Macey and Aleman acquired a majority ownership interest in CFLG.

To provide services to clients, CFLG engaged Class B members in various states. Each of those Class B members was licensed to practice law in his or her respective state. When a

client retained CFLG, a CFLG Class B partner in the client's state was assigned to that particular client and was responsible for reviewing the client's documents, managing the client's file and supervising CFLG support staff in the provision of appropriate paralegal services. CFLG stopped taking new clients in early January 2013, and has not provided service to any clients since mid-2013.

**The Wisconsin OLR Action**

On or about August 14, 2013, the OLR opened an inquiry into Harold Stafford arising out of his involvement with CFLG. (*See* Declaration of Harold Stafford ("Stafford Decl."), at Ex. 1.)[1] To that end, the OLR requested that Stafford provide documents and information concerning CFLG's representation of various clients, noting that the conduct may fall within the scope of several of the Wisconsin Rules of Professional Conduct ("Wisconsin RPC"). Specifically, the OLR is investigating whether there exists "clear, satisfactory and convincing evidence" of violations of the Wisconsin RPC, including, *inter alia*, Rules 20:1.5 (Fees), 20:1.15 (Safekeeping Property; trust accounts and fiduciary accounts), 20:5.1 (Responsibilities of partners, managers and supervisory lawyers), 20:7.1 (Communications regarding a lawyer's services) and 20:8.4 (Misconduct). Stafford has provided responsive documents and information to the OLR, and he was deposed in connection with that inquiry in August 2014. That inquiry is still pending.

**The Illinois ARDC Action**

On or about August 28, 2014, the Administrator of the ARDC filed a complaint against Macey and Aleman arising out of their involvement with TMLG. (*See* Ex. A hereto.) Therein,

[1] Certain confidential information not material to this motion has been redacted from the copy of Stafford Decl. Ex. 1 filed contemporaneously with this motion. Unredacted copies will be provided to the Court upon request and the CFPB upon the entry of an appropriate protective order.

the ARDC alleged that Macey and Aleman engaged in the unauthorized practice of law with respect to TMLG's representation of various clients, made certain misrepresentations to those clients regarding TMLG's services, and failed to refund unearned fees to those clients. Specifically, Macey and Aleman are alleged to have violated Illinois Rules of Professional Conduct, including, *inter alia*, 5.5(a)(1) (Unauthorized Practice of Law), 7.1 (Communications Concerning a Lawyer's Services), and 8.4(c) (Misconduct). The Illinois ARDC action is currently pending.

**The CFPB Files This Case**

On July 22, 2014, the CFPB filed the instant action. Defendants are alleged to have violated certain provisions of the Mortgage Assistance Relief Services Code, 12 C.F.R. § 1015.1, *et seq.* ("Regulation O"). Specifically, the CFPB alleges that various of Defendants violated Sections 1015.3(a), 1015.3(b)(1), 1015.3(b)(2), 1015.5(b)(4), 1015.(b)(8), 1015.3(b)(9), 1015.4(b)(1) and 1015.5(a) by making certain representations to and collecting certain fees from TMLG and CFLG clients and by failing to make certain disclosures.

However, Regulation O also contains two attorney exemptions. An attorney is exempt from all provisions of Regulation O (except Section 1015.5) if the attorney:

(1) Provides mortgage assistance relief services ***as part of the practice of law***;

(2) Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located; and

(3) ***Complies with state laws and regulations that cover the same type of conduct the rule requires.***

12 C.F.R. § 1015.7(a) (emphasis added). With respect to Section 1015.5, an attorney is exempt if the attorney meets the requirements of Section 1015.7(a) and the following requirements:

(1) Deposits any funds received from the consumer prior to performing legal services in a client trust account; and

(2) ***Complies with all state laws and regulations, including licensing regulations, applicable to client trust accounts.***

12 C.F.R. § 1015.7(b) (emphasis added).

## ARGUMENT

### I. This Court Should Dismiss This Matter Or Abstain From Hearing This Matter Pending Resolution Of The Disciplinary Proceedings Under The *Burford* Doctrine.

#### A. The *Burford* Abstention Doctrine.

Federal jurisdiction, if properly conferred, "is meant to be exercised." *Property & Cas. Ins. Ltd. v. Central Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 320-21 (7th Cir. 1991). "Abstention is a narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Ryan v. St. Bd. of Elections*, 661 F.2d 1130, 1135 (7th Cir. 1981); *Gen. Railway Signal Co. v. Corcoran*, 921 F.2d 700, 708 (7th Cir. 1991) ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."). The United States Supreme Court has promulgated a number of doctrines permitting (and, in some circumstances, requiring) district courts to abstain from adjudicating matters within their jurisdiction. *See, e.g., Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941); *Younger v. Harris*, 401 U.S. 37 (1971).

The principles set forth in *Burford* and its progeny constitute one such doctrine, though the application of federal abstention doctrines is fact-specific and often imprecise. *See Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419 (7th Cir. 1990) ("Courts…have tried to label the various kinds of abstention and then make broad rules about what cases fit under each label. Abstention is a much more amorphous concept"); *Prop. & Cas. Ins.* at 321-22.

In *Burford*, the Texas legislature established an administrative mechanism for regulating local oil well drilling. The direct review of orders arising out of that mechanism was vested in a designated state district court, with review by a designated branch of the court of civil appeals and the Texas Supreme Court. Burford received an administrative order permitting the drilling of four oil wells. In response, Sun Oil Company filed a suit in federal court that challenged that administrative order. The Fifth Circuit reversed this decision and the Supreme Court granted certiorari. In reversing the Fifth Circuit's decision, the Supreme Court held that:

> The state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here. Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand.

*Id.* at 333-34.

Subsequent cases have held that *Burford* abstention is appropriate in cases: (1) where a federal court is faced with "difficult questions of state law" that implicate significant state policies; or (2) where the exercise of federal jurisdiction would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996); *Int'l College of Surgeons v. City of Chicago*, 153 F.3d 356 (7th Cir. 1998). Among the factors to be considered in the *Burford* analysis are: (1) whether the suit is based on a cause of action which is exclusively federal; (2) whether difficult or unusual state laws are at issue; (3) whether there is a need for coherent state doctrine

in the area; and (4) whether state procedures indicate a desire to create special state forums to adjudicate the issues presented. *Hartford* at 425-26; *Gen. Railway* at 708-09.

**B. This Case Involves Important State Interests.**

There can be no doubt that the definition and regulation of the practice of law is a state issue of vital concern. As the Supreme Court has held, a state "has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Middlesex Co. Ethics Committee v. Garden St. Bar Assoc.*, 457 U.S. 423, 434 (1982).[2] To that end, "[s]tates traditionally have exercised extensive control over the professional conduct of attorneys." *Id.* The objective of such control is "the protection of the public, the purification of the bar and the prevention of a re-occurrence." *Id.* Thus, "[t]he judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." *Id.*; *see also Adams v. Attorney Registration & Disciplinary Comm'n*, 600 F. Supp. 390, 394 (N.D. Ill. 1984) ("The regulation of attorneys is essential to the primary governmental function of administering justice and at the core of the state's power to protect the public."). Thus, whether Defendants were engaged in the practice of law and whether they complied with state laws and regulations governing their conduct (*i.e.*, both of which are relevant to the attorney exemption to Regulation O) are clearly matters of important state interest.

Notably, Illinois and Wisconsin have each vested the exclusive authority to regulate attorneys in their respective Supreme Courts. *See, e.g., People ex rel. Brazen v. Finley*, 519

[2] The *Middlesex County* Court upheld a district court decision to abstain from a federal constitutional challenge to state attorney disciplinary rules in favor of ongoing state bar proceedings under *Younger v. Harris*. The Court's reasoning is instructive in this case. *See, e.g., New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) ("The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases[.]"); *Hartford* at 425; *Prop. & Cas. Ins.* at 321-22.

N.E.2d 898, 901-902 (Ill. 1988) ("[O]ur court possesses the inherent and exclusive power to regulate the practice of law in this State and to sanction or discipline the unprofessional conduct of attorneys admitted to practice before it."); *State ex rel. Reynolds v. Dinger*, 109 N.W.2d 685, 692 (Wis. 1961) ("[T]he regulation of the practice of the law is a judicial power and is vested exclusively in the supreme court."). To that end, the Illinois and Wisconsin Supreme Courts have each promulgated rules of professional conduct to govern attorneys admitted to practice in those states, and they have implemented comprehensive administrative regimes to address this area of vital state concern.

The Illinois Supreme Court has delegated the responsibility of registration and discipline of attorneys to the Illinois ARDC. Ill. S. Ct. Rule 751. All attorney disciplinary proceedings are governed by Illinois Supreme Court Rule 751, *et seq*, and the Illinois Supreme Court has delegated complete authority to the Illinois ARDC to make the rules for such disciplinary proceedings. Illinois' administrative scheme for the regulation and discipline of attorneys provides for several levels of review concentrated within the Illinois ARDC and reviewable only by the Illinois Supreme Court:

- ***First,*** upon receiving a complaint that an attorney has committed misconduct, the Illinois ARDC Administrator investigates the complaint. Ill. S. Ct. Rule 754. If the Administrator's investigation produces evidence of misconduct, the complaint is referred to the Inquiry Board, a three-person panel appointed by the Illinois ARDC.

- ***Second,*** the Inquiry Board determines whether the evidence is sufficient to file a complaint with the Hearing Board or whether the complaint should be dismissed. Ill. S. Ct. Rule 753 (a)(3).

- ***Third,*** if a complaint is filed with the Hearing Board, the Hearing Board panel hears evidence, makes a determination whether the attorney has violated the Rules of Professional Conduct, and, if necessary, makes recommendations for discipline to the Illinois Supreme Court. Ill. S. Ct. Rule 753 (c)(3), (6).

- ***Fourth,*** the Administrator or the attorney respondent may request that the recommendation of the Hearing Board be reviewed by a Review Board, which

consists of a three-person panel appointed by the Illinois Supreme Court. Ill. S. Ct. Rule 753(d)(1), (3).

- ***Fifth,*** the recommendation of the Review Board is reviewable only by the Illinois Supreme Court upon either party filing a petition with the Court. The recommendations by the Hearing and Review Boards are advisory and not binding on the Court. *In Re Storment*, 203 Ill. 2d 378 (2002).

Similarly, Wisconsin has delegated responsibility for the regulation and discipline of attorneys to the Wisconsin OLR. Wis. Sup. Ct. R. 21. The Wisconsin OLR has exclusive responsibility for the regulation and discipline of attorneys, and its decisions are reviewable only by the Wisconsin Supreme Court. Complaints filed with the Wisconsin OLR are handled in a similar manner to those filed with the Illinois ARDC:

- ***First,*** upon receiving a grievance or inquiry relating to attorney conduct, the OLR will screen the grievance or inquiry and if necessary, it will initiate a formal investigation. Wis. Sup. Ct. R. 22, 22.04, 21.07. The Director may refer the investigation to a District Committee for assistance. Wis. Sup. Ct. R. 22.04.

- ***Second,*** after the initial investigation is completed, the Director may submit the findings from the investigation to the Preliminary Review Committee to determine whether there is cause to proceed. The Preliminary Review Committee is a 14-member panel of 9 lawyers and 5 public members appointed by the Wisconsin Supreme Court. Wis. Sup. Ct. R. 21.07. The Preliminary Review Committee determines whether the attorney has engaged in misconduct. A vote of four or more members will cause the matter to proceed to a Referee, appointed by the Wisconsin Supreme Court, to review the matter. Wis. Sup. Ct. R. 22.13.

- ***Third,*** at the proceeding before the Referee, which is conducted as a trial of a civil action to the court, the Director must prove the misconduct. Wis. Sup. Ct. R. 22.16.

- ***Fourth,*** the Referee will submit a report to the Wisconsin Supreme Court, and the Supreme Court will determine the appropriate discipline in light of the Referee's factual and legal conclusions from the hearing. Wis. Sup. Ct. R. 22.17. The Referee's conclusions of law are reviewed *de novo*. *Office of Lawyer Regulation v. Daniel Johns, Jr.,* 353 Wis. 2d 746 (Wis. 2014). A respondent may file a motion to reconsider with the Wisconsin Supreme Court within 20 days of the Court's decision. Wis. Sup. Ct. R. 22.18.

### B. This Case Involves A Difficult Question Of State Law.

*Burford* abstention is not warranted simply because a claim before a federal court implicates an important state interest. Rather, the issue must present a "difficult question of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Quackenbush* at 726-27; *see also New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989).

This matter does not involve the straightforward application of simple state law (for example, contract law) to the CFPB's claims. Rather, the law with respect to the central issue (*i.e.*, whether Defendants' conduct constitutes the unauthorized practice of law) appears to be unsettled. To Defendants' knowledge, the Illinois ARDC, the Wisconsin OLR and the respective courts of those states have not previously considered the TMLG and CFLG business models and whether they comply with local regulations regarding the practice of law. Thus, the possibility for inconsistent results on whether Defendants' conduct constitutes the practice of law and whether Defendants complied with state laws and regulations in the conduct of their businesses looms large. Accordingly, this Court should abstain from this matter until such time as the Illinois ARDC and Wisconsin OLR proceedings are resolved.

### C. Allowing The Illinois ARDC And Wisconsin OLR To Resolve The Charges Would Foster State Efforts To Create Coherent Policy With Respect To Attorney Conduct.

In general, courts exercise *Burford* abstention in cases involving the expertise of the state court (or, in this case, administrative agencies), the predominance of local issues, and the need for coherent state doctrine in the area. *See, e.g., Hartford Cas. Ins. v. Borg-Warner Corp.*, 913 F.2d 419 (7th Cir. 1990) (finding *Burford* abstention appropriate to avoid incongruous results in regulating the insurance industry to which states have a "paramount interest" in uniformity);

*Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639 (2d Cir. 2009). Such cases involve the interpretation of state law, and in those cases "courts fear that federal intervention would disrupt state efforts to create coherent policy with regard to matters of substantial state interest." *See Ryan v. State Bd. of Elections*, 661 F.2d 1130 (7th Cir. 1981); *Adams v. Attorney Registration & Disciplinary Commission*, 600 F. Supp. 390 (N.D. Ill. 1984). As discussed above, states have an "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Middlesex Ethics* at 434. To that end, the Illinois and Wisconsin Supreme Courts have promulgated the Illinois Rules of Professional Conduct and Wisconsin Rules of Professional Conduct, respectively, to govern and regulate the conduct of attorneys.

However, "for the second basis of *Burford* abstention to apply, the mere existence of a statewide regulatory regime is not sufficient." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483 504 (2011). To justify abstention under the second prong of the *Burford* doctrine: (1) the state must offer some forum in which the issue may be litigated; and (2) that forum must be "special." *Int'l College of Surgeons* at 363 ("The ability to point to a specialized proceeding is a prerequisite of, not a factor in, the second type of *Burford* abstention."); *Prop. & Cas. Ins.* at 323 (same). A "special forum is one that stands in a special relationship of technical oversight or concentrated review to the evaluation of claims arising under the state administrative scheme at issue." *Int'l College of Surgeons* at 364. "[J]udicial review must, by state legislative design, be concentrated in a few particular courts" for *Burford* to be applicable. *Adkins* at 505.

As set forth above, Illinois and Wisconsin have each established statewide regulatory regimes for the regulation and discipline of attorneys. Moreover, each of those regimes provides for a special forum for litigation of those issues, and they concentrate review of the agencies'

decisions in the respective state Supreme Courts. Thus, a special forum for the issues raised by this case exists in Illinois and Wisconsin.

Defendants acknowledge that there are two federal district court decisions that can be construed against the exercise of *Burford* abstention in favor of an attorney disciplinary proceeding. In *Adams v. Attorney Registration & Disciplinary Comm'n*, 600 F. Supp. 390 (N.D. Ill. 1984), Judge Moran found that the construction of an Illinois rule of professional conduct ("Illinois RPC") regarding attorney advertising did not implicate a "complex system of state regulation" in an action challenging the constitutionality of the rule. In *Francorp, Inc. v. Siebert*, 210 F. Supp. 2d 961 (N.D. Ill. 2001), Judge Moran similarly declined to apply *Burford* in an action for violation of the Illinois Deceptive Trade Practices Act arising from the unauthorized practice of law by a non-lawyer. But district court decisions are not binding. *See Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 785 (N.D. Ill. 2011). Moreover, those decisions are distinguishable from this case. Respectfully, this Court should not follow *Adams and Francorp*.

***First,*** *Adams* and *Francorp* have never been followed by any other courts. Indeed, no other court has followed either of those decisions in considering the propriety of *Burford* abstention in favor of state regulatory proceedings.

***Second,*** *Adams* involved a constitutional challenge to the Illinois RPC regarding direct mail advertising, not a question of whether the plaintiff attorney complied with the rule. *Adams* at 391. The court noted that "[t]he regulation of attorneys is essential to the primary governmental function of administering justice and at the core of the state's power to protect the public." *Id.* at 394. In declining to abstain from deciding the constitutional question under *Burford*, the court noted that although the subject matter was of "acute state interest," the plaintiff's claim did not involve interpretation of state law, did not implicate a complex system of

regulation, and did not interfere with a complex series of state regulations. *Id.* at 396. Because "[c]onstruction of the challenged statute [was] unquestioned[,]" *Burford* did not require abstention. *Id.*

***Third,*** *Francorp* did not involve the application of the Illinois RPC. Rather, in that case, the defendant asserted a counterclaim against plaintiff, a non-lawyer, under the Illinois Deceptive Trade Practices Act, alleging that the plaintiff disseminated misleading promotional materials and engaged in the unauthorized practice of law. *Francorp* at 968. The plaintiff requested that the federal court abstain from adjudicating that counterclaim, arguing that "federal jurisdiction over unauthorized practice claims would unduly interfere" with the Illinois administrative regime for the regulation of the practice of law. *Id.* at 970. The court acknowledged that the ARDC "is the body charged with regulating the practice of law" within Illinois. *Id.* However, the court noted that the "ARDC does not have jurisdiction over non-lawyers[,]" and thus the defendant's counterclaim "did not implicate that system." *Id.* ("[T]his is not an action directly invoking the state's power to regulate the bar."). Rather, the counterclaim constituted a "straightforward application of the DTPA to an allegedly deceptive trade practice." *Id.* Accordingly, the court declined to exercise *Burford* abstention.

This case does not involve a straightforward application of well-settled law to the facts of this case. Here, the attorney exemption in Regulation O specifically requires this Court to make determinations as to: (1) whether Defendants were engaged in the practice of law; and (2) whether Defendants complied with state laws and regulations governing their conduct. Again, the Illinois ARDC and Wisconsin OLR have already initiated proceedings to make exactly those determinations. Such determinations require the construction of state rules and regulations. For example, in the Illinois ARDC action, the ARDC has alleged that Macey and

Aleman were engaged in the unauthorized practice of law in connection with TMLG's representation of certain clients (a contention which Macey and Aleman strongly dispute). For Macey and Aleman to qualify for the attorney exemption in Regulation O, this Court must find that their conduct qualifies as the practice of law. Because the ARDC and OLR have already initiated that inquiry, this Court should abstain from hearing this matter until those inquiries are resolved.

## III. In The Alternative, This Court Should Abstain From Hearing This Matter Under The Doctrine Of Primary Jurisdiction.

The doctrine of primary jurisdiction is not jurisdictional, but rather, it presupposes that the court has jurisdiction over the case. *Baltimore & Ohio Chicago Terminal R.R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d 404, 411 (1998). Primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *U.S. v. Western Pac. R.R. Co.*, 352 U.S. 59, 63 (1956). The *Western Pacific* Court explained the distinction between exhaustion of administrative remedies and primary jurisdiction:

> Exhaustion applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. Primary jurisdiction, on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*Western Pacific* at 63-64.

There is no fixed formula for applying the doctrine of primary jurisdiction. *Id.* at 64. Rather, courts look at "whether the reasons for the existence of the doctrine are present and

whether the purposes it serves will be aided by its application in the particular litigation." *Id.* Earlier decisions emphasized "the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions." *Id.*; *see also Texas & Pac. R.R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (1907) (noting that if the power to hear an issue, which has been wholly reserved to an administrative body, was also with the courts, there may be an undesirable divergence between their respective decisions). More recently, courts have stressed the "expert and specialized knowledge of the agencies involved[.]" *Western Pacific* at 64; *see also Far East Conference v. U.S.*, 342 U.S. 570 (1952). Both factors relate to the same principle:

> In cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Western Pacific* at 64-65.

While primary jurisdiction usually involves a referral to a ***federal*** agency, courts may refer a matter to a state agency where the state agency "is exercising in effect delegated federal power." *Illinois Bell Telephone Co. v. Global Naps Illinois, Inc.*, 551 F.3d 587, 595 (7th Cir. 2008). In *Illinois Bell*, the court analyzed whether the *Burford* doctrine or primary jurisdiction would apply to stay litigation between a telecommunications carrier and a group of affiliated corporations for alleged violations of federal and state tariff laws and an interconnection agreement between the parties. The court declined to apply *Burford* abstention, noting that

*Burford* is limited to cases in which adjudication in a federal court would intrude on the processes of state government or intrude on the State's ability to maintain uniformity or its interests in maintaining uniformity over local issues. *Id.* at 595 ("[T]he doctrine of *Burford* … which requires federal district courts to decline to exercise federal jurisdiction over certain types of cases confided by state law to state administrative agencies does not fit this case."). The court noted that the regulatory issues that arise in cases under the federal Telecommunications Act are not "local in the *Burford* sense." *Id.*

Rather, the court noted that the Telecommunications Act carves out a role for states as "ancillary enforcers of the comprehensive scheme of federal telecommunications regulation[.]" *Id.* at 594-95 (Although the Telecommunications Act does not expressly authorize a state commission…"such authority is a sensible corollary to the allocation of state and federal responsibilities made by the Act."). The state telecommunications commissions "are not enforcing policies central to state government when they are regulating telecommunications; in that role they are deputized federal regulators." *Id.* at 595 (internal quotations omitted). The *Illinois Bell* court stated that:

> [W]e are at the heart of the doctrine of primary jurisdiction when in a suit involving a regulated firm but not brought under the regulatory statute itself, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve, although the agency's resolution of it will usually be subject to judicial review. When such an issue arises, the suit must stop and the issue must be referred to the agency for resolution. If the agency's resolution of the issue does not dispose of the entire case, the case can resume, subject to judicial review of that resolution along whatever path governs review of the agency's decisions, whether back to the court in which the original case is pending or, if the statute governing review of the agency's decisions designates another court, to that court.

*Id*. at 595-96. In cases where state regulatory agencies are acting as "deputized federal regulators," not all disputes need be referred to the state agency, only those where the dispute raises a genuine policy issue that has been confided to the state commissions. *Id.* at 596.[3]

If the Court declines to apply the *Burford* doctrine and abstain from hearing this matter, this Court should stay this matter until the Illinois ARDC and Wisconsin OLR resolves the pending charges. Respectfully, the attorney exemption provided within Regulation O carves out a role for state bar authorities (or, at a minimum, calls for this Court to allow ongoing proceedings to conclude). *See* 12 C.F.R. § 1015.7. To qualify for the attorney exemption, Defendants must: (1) be engaged in the practice of law; and (2) comply with state laws and regulations governing their conduct. Thus, the exemption does contemplate that certain determinations regarding Defendants' conduct be determined by the respective state bar authorities.

Moreover, as discussed above, the claims in this case raise genuine policy issues that have been confided to those state agencies. Specifically, the regulation of attorney conduct, the determination of what constitutes the practice of law, and the determination of whether Defendants have complied with state laws and regulations governing their conduct have been delegated to those state agencies. If this Court allows the proceedings in this case to move forward, the risk of inconsistent rulings on those issues is great.

WHEREFORE, for the reasons set forth herein, Defendants Consumer First Legal Group, LLC, Thomas G. Macey, Jeffrey J. Aleman, Jason E. Searns and Harold E. Stafford respectfully move this Court to abstain from adjudicating this case on the merits until the Illinois Attorney

[3] The *Illinois Bell* court ultimately did not abstain from the case or refer it to the Illinois Commerce Commission because it needed to resolve *alter ego* issues for purposes of personal jurisdiction over certain defendants before it could make a referral to a state commissions. *See id*. at 596.

Registration and Disciplinary Commission and Wisconsin Office of Lawyer Regulation have resolved certain matters pending before those agencies.

Dated: September 22, 2014.

Respectfully submitted,

*s/ Douglas M. Poland*
Douglas M. Poland
GODFREY & KAHN, S.C.
1 East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: 608-257-3911
Fax: 608-257-0609
dpoland@gklaw.com

Timothy D. Elliott (*Pro Hac Vice*)
RATHJE & WOODWARD, LLC
300 E. Roosevelt Rd., Suite 300
Wheaton, IL 60187
Phone: 630-668-8500
Fax: 630-668-9218

*Attorneys for Defendants Consumer First Legal Group, LLC, Thomas G. Macey, Jeffrey J. Aleman, Jason E. Stearns and Harold E. Stafford*