**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

CONSUMER FINANCIAL PROTECTION BUREAU,
Plaintiff,
v.

THE MORTGAGE LAW GROUP, LLP, (D/B/A THE LAW FIRM OF MACEY, ALEMAN & SEARNS), CONSUMER FIRST LEGAL GROUP, LLC, THOMAS G. MACEY, JEFFREY J. ALEMAN, JASON E. SEARNS, and HAROLD E. STAFFORD,
Defendants.

Case No. 3:14-cv-00513

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO ABSTAIN**

## INTRODUCTION

The Consumer Financial Protection Bureau ("Bureau") initiated this civil law enforcement action seeking redress for harm caused by violations of federal law committed by The Mortgage Law Group, LLP ("TMLG"), Consumer First Legal Group, LLC ("CFLG"), Thomas G. Macey ("Macey"), Jeffrey J. Aleman ("Aleman"), Jason E. Searns ("Searns"), and Harold E. Stafford ("Stafford"). The Complaint alleges that since 2011, the named defendants deceived at least 12,290 financially vulnerable consumers nationwide out of thousands of dollars for purported mortgage assistance relief services, bilking consumers out of an aggregated amount of at least $19.2 million. Specifically, the Bureau alleges that defendants took prohibited advance fees from consumers in violation of Regulation O and engaged in deceptive acts and practices in violation of both Regulation O and the Consumer Financial Protection Act ("CFPA"). The Bureau seeks permanent injunctive relief, restitution, disgorgement of ill-gotten revenues, rescission of consumer contracts, and civil money penalties.

In lieu of filing an answer to the Complaint, defendants CFLG, Stafford, Macey, Aleman, and Searns (collectively, "Defendants") filed "Defendants' Motion to Abstain" ("Defendants' Motion") seeking to have the Court stay the matter pending resolution of disciplinary actions against CFLG, Stafford, Macey, and Aleman by the Wisconsin Office of Lawyer Regulation ("Wisconsin OLR") and the Illinois Attorney Registration and Disciplinary Commission ("Illinois ARDC").[1] *See* Defendants' Memorandum of Law in Support of Their Motion to Abstain ("Defendants' Memorandum") at 1. Defendants base their motion on the *Burford* doctrine or, alternatively, on the doctrine of primary jurisdiction.

It is notable that there has been an increase in the prevalence of "lawyer-model" mortgage assistance relief providers in recent years (no doubt, in an attempt to evade state and federal regulations) and this has led to increasing numbers of law enforcement actions against such providers.[2] Yet, Defendants are unable to cite to a single instance of a court abstaining under the *Burford* doctrine or primary jurisdiction in a Regulation O and CFPA case in order for an office of lawyer regulation (or any other agency) to review matters pertinent to the case. For the reasons set forth below, the Court should deny Defendants' Motion.

## I. The *Burford* Doctrine Does Not Provide A Basis Upon Which The Court Should Abstain From Hearing This Matter

### A. Legal Standard Governing Defendants' Motion To Abstain Under *Burford*

With reliance on the *Burford* abstention doctrine, Defendants ask the Court to abstain from adjudicating the Bureau's claims pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)").

[1] As is discussed further below, Searns is not the subject of any state attorney regulation proceedings, and the Wisconsin OLR inquiry of Stafford does not include the issue of the unauthorized practice of law which Defendants (incorrectly) claim is at issue here. Further, TMLG is not a party to Defendants' Motion.

[2] In publishing Regulation O as a final rule, the Federal Trade Commission ("FTC") noted that numerous attorneys continued to engage in unfair or deceptive practices in the provision of mortgage assistance relief services, with states – for a variety of reasons – not taking action against them. 75 Fed. Reg. 75092, 75128, 75132 (Dec. 1 2010).

Defendants' Motion at 2 (¶ 3). Rather than moving the Court to dismiss the matter altogether for lack of subject matter jurisdiction, Defendants instead ask the Court to *abstain* from hearing the matter until the Wisconsin OLR and the Illinois ARDC have completed inquiries into (1) whether Defendants were engaged in the practice of law; and (2) whether Defendants complied with state laws and regulations governing their conduct.[3]

In *National Collegiate Athletic Ass'n v. Corbett*, No. 1:13-cv-00457, 2014 WL 2619288 (M.D. Pa. June 12, 2014), a Pennsylvania district court discussed the distinction between a request for dismissal for want of subject matter jurisdiction under Rule 12(b)(1) and a request for abstention under the *Burford* doctrine:

> [S]ome courts have found that "abstention is a prudential rather than a jurisdictional ground for dismissal" and, therefore, do "not rely upon the pleading or burden requirements of either Rule 12(b)(1) or Rule 12(b)(6). . . .Here, the relevant facts in the case are not in dispute, and the parties do not dispute the Court's ability to consider exhibits and court filings attached to Plaintiff's complaint and Defendants' motions. Accordingly, the applicability of Rule 12(b)(1) or Rule 12(b)(6) is not significant to the Court's resolution of Defendants' motion.

Id. at *4 (citing *Christian Action Network v. Maine*, 679 F. Supp. 2d 140, 143 n. 2 (D. Me. 2010)). Similarly, in the instant action, Defendants do not appear to question the Court's subject matter jurisdiction or ability to grant the relief sought but rather are simply using Rule 12(b)(1) as a procedural vehicle to seek abstention under *Burford*.

As Defendants themselves admit, a party seeking to have a federal court abstain under the *Burford* doctrine faces a high burden. The Seventh Circuit definitively describes abstention as "the exception, not the *rule*." *Gen. Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 708 (7th Cir. 1991)) (emphasis added) (citations omitted). The *Burford* doctrine of abstention is "'an

[3] Although Section I of Defendants' Memorandum is titled: "This Court Should Dismiss This Matter Or Abstain From Hearing This Matter Pending Resolution Of The Disciplinary Proceedings Under The *Burford* Doctrine," neither Defendants' Motion nor Defendants' Memorandum makes any other mention of dismissal. Instead, Defendants contend the Court should "abstain from hearing the matter" until a future time. Defendants' Memorandum at 15. The Bureau primarily responds to the abstention argument, although there also would be no basis for the Court to dismiss the action.

extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and may be invoked only in those 'exceptional circumstances' in which surrendering jurisdiction 'would clearly serve an important countervailing interest.'" *International College of Surgeons v. City of Chicago,* 153 F.3d 356, 359 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)). A party requesting abstention under the *Burford* doctrine bears the heavy burden of showing that abstention is warranted. *Seay v. Dodge,* No. 95 C 3643, 1995 WL 557361, at *6 (N.D. Ill. Sept. 18, 1995); *Illinois Pub. Interest Research Group v. PMC, Inc.,* 835 F. Supp. 1070, 1077 (N.D. Ill. 1993). The decision of whether to abstain is committed to the sound discretion of the district court. *See Int'l. Coll. of Surgeons*, 153 F.3d at 360.

In *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), the plaintiffs sought review by a federal court of the reasonableness of a state agency's order issuing an oil drilling permit under state law. Plaintiffs sought to have the court enjoin enforcement of the agency's order. The Circuit Court of Appeals reversed the lower court's dismissal of the claim, but on appeal, the Supreme Court reversed, reinstating the original dismissal on the grounds that "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Burford*, 319 U.S. at 334. The Court held that the Burford suit was rightly dismissed by the lower court because, where the state had its own review system regarding the geological complexities at issue, federal court review would have had an impermissibly disruptive effect on state policy. *Id.* at 323-25, 327-28.

In a later case, *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350 (1989), the Supreme Court set forth the most important aspects of the Burford doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state

> administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Id*. at 361 (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814 (1976)).

Accordingly, the Seventh Circuit applies the *Burford* doctrine narrowly. *See Illinois Bell Telephone Co., Inc. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 595 (7th Cir. 2008).

> [The doctrine] is limited to cases in which "adjudication in federal court would 'unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity,'" or invade "the State's interests in maintaining 'uniformity in the treatment of an essentially local problem' . . . and [in] retaining local control over 'difficult questions of state law bearing on policy problems of substantial public import.'"

*Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996).

### B. The *Burford* Doctrine Does Not Apply In The Instant Case

Defendants argue that, despite the high burden, the Court should abstain from hearing this case under the *Burford* doctrine because: (1) the issues before the Court present important state interests; (2) the issues before the Court involve a difficult question of state law; and (3) allowing the Wisconsin OLR and Illinois ARDC to resolve the charges would foster state efforts to create coherent policy with respect to attorney conduct. Defendants' Memorandum at 8-15. Defendants argue that the exercise of federal jurisdiction would be disruptive of state efforts to establish a coherent policy on a matter of substantial public concern. *Id*. However, while attorney conduct is a matter of strong state interest, the instant case falls far short of meeting this circuit's exacting requirements for abstention.

As a preliminary matter, defendant Searns is not the subject of any state attorney regulation proceedings. *Id.* at 1. To the extent that a pending state disciplinary proceeding might be given any consideration at all as the basis for the Court to abstain, such a proceeding is not pending for Searns. In addition, TMLG is not a party to Defendants' Motion. At least with respect to these parties, then, there is no basis for this case to be dismissed or stayed.

Also, according to Defendants, the Wisconsin OLR inquiry of Stafford does not include the issue of the unauthorized practice of law, the alleged conduct that Defendants' Motion contends is a key basis for abstention. *See* Defendants' Memorandum at 4. To the extent that a pending state disciplinary proceeding related to the unauthorized practice of law might be given any consideration at all as the basis for the Court to abstain, such a proceeding has no applicability to Stafford. Therefore, with respect to Stafford, on that basis alone, this case should not be dismissed or stayed. Further, as a matter of judicial economy, the fact that this case should proceed at least with respect to Searns, TMLG, and Stafford is an initial basis for the case as a whole to proceed.

### 1. Defendants' Argument For Abstention Misstates The Nature Of The Bureau's Action And Its Legal Claims Under Regulation O

Defendants assert that abstention is warranted because the Bureau's lawsuit involves issues of "state interest" and "difficult questions of state law," but in making these arguments Defendants misstate the nature of the Bureau's action under Regulation O and the CFPA.

The Bureau's action alleges Defendants violated Regulation O and the CFPA in the course of providing or arranging for others to provide purported mortgage assistance relief services to thousands of consumers. Specifically, the Bureau alleges Defendants took prohibited advance fees from consumers, in violation of Regulation O, 12 C.F.R. § 1015.5(a); encouraged consumers to not communicate with their lenders, in violation of Regulation O, 12 C.F.R. §

1015.3(a); failed to disclose to consumers that the consumers can stop doing business with Defendants at any time and would not be obliged to pay, in violation of Regulation O, 12 C.F.R. § 1015.4(b)(1); and made misrepresentations about the likelihood of success of Defendants' services, the amount of time such services would take, and that the consumer would receive legal representation, all in violation of Regulation O, 12 C.F.R. § 1015.3(b) and the CFPA.

These claims are not issues of "state interest" or "difficult questions of state law." To the contrary, they are legal issues confided to the Bureau by federal law to be heard by federal courts. The *Burford* and *New Orleans Public Service, Inc*. cases involved actions where plaintiffs asked federal courts to review matters that had been before *state* agencies. In contrast, the Bureau does not ask the Court to review any matter before the Wisconsin OLR and Illinois ARDC, or any state orders or actions whatsoever, and the pendency of the Wisconsin OLR and Illinois ARDC proceedings against Defendants has no bearing on the Bureau's claims under federal law. Regulating, policing, and adjudicating mortgage assistance relief services conduct under Regulation O and the CFPA – *federal consumer financial protection laws* – are entirely separate matters from state agency enforcement of *state rules of professional conduct* in connection with attorneys who engage in mortgage assistance relief services.

Nonetheless, Defendants contend that the factual and legal issues raised in the pending state attorney disciplinary proceedings are central to the issues before the Court in the instant case. This contention is simply not true. To prove one or more of the alleged violations of Regulation O, the Bureau does not need to establish that Defendants were not engaged in the practice of law. Nor does the Bureau need to establish that Defendants were engaged in the unauthorized practice of law. That issue is not before the Court.

Regulation O does include two types of exemptions for attorneys. First, attorneys who provide mortgage assistance relief services are exempt from all of the regulation's provisions other than the regulation's advance fee ban if the attorneys: (1) provide mortgage assistance relief services as part of the practice of law; (2) are licensed to practice law in the state where their clients or their clients' dwellings are located; and (3) comply with state laws and regulations covering the same type of conduct that Regulation O requires (e.g., competent and diligent legal services, communication with clients, charging and receipt of fees, promotion of services, and not engaging in fraudulent conduct). 12 C.F.R. 1015.7(a); 75 Fed. Reg. 75092, 75128 (Dec. 1, 2010).

Second, attorneys will also be exempt from the advance fee ban if they: (1) deposit into a client trust account advance fees received from their clients before performing legal services; and (2) comply with all state laws and regulations applicable to client trust accounts. 12 C.F.R. 1015.7(b). Importantly, these exemptions are a matter of standards established under *federal* law, not *state* law.

However, the attorney exemptions are not part of the Bureau's burden of proof. Rather, they provide potential defenses that a defendant may raise in an action brought under Regulation O. It then becomes the Defendants' burden to establish all of the requisite elements.[4] In the instant case, Defendants have not filed answers and, therefore, have not even pled the attorney

[4] Although the courts have not yet addressed the burden of proof in asserting Regulation O's exemptions, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, may provide a useful guide. In defining the term "debt collector," the FDCPA lists a number of exemptions. 15 U.S.C. § 1692a(6)(A)-(F). In that context, "[i]t is defendant's burden to prove that it qualifies for one of these exemptions." *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1130 (W.D. Wis. 2004). Additional cases suggest that a defendant has the burden to assert and prove that it falls within an FDCPA exemption. *See, e.g., Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1041-42 (W.D. Wis. 2002); *Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1073 (N.D. Cal. 2011). In summarizing the parties' arguments in those cases, the courts stated that the defendants argued that they fall under certain FDCPA exemptions. In *Fox v. Citicorp Credit Servs., Inc.*, the court found that because the defendant did not raise an FDCPA exemption issue as a defense before the district court, a conclusion on that issue could not be reached on appeal. 15 F.3d 1507, 1514-15 (9th Cir. 1994).

exemption as a defense. Therefore, consideration of the exemption's elements and the associated facts is premature.[5]

Additionally, Defendants' Motion attempts to conflate the Wisconsin OLR and Illinois ARDC responsibilities (*e.g.*, regulating the practice of law) with the Bureau's responsibilities in enforcing Regulation O (*e.g.*, regulating and policing mortgage assistance relief services). Defendants assert that the Wisconsin OLR and Illinois ARDC are much better equipped and are the more appropriate bodies to decide issues of attorney conduct and regulation than the Court. Defendants' Memorandum at 2.

The Bureau has the responsibility for enforcing Regulation O, and to a certain extent that responsibility may require the Bureau to address Regulation O's attorney exemption and related conduct. In that limited context, the Court may be asked to adjudicate those attorney conduct issues. The Wisconsin OLR and Illinois ARDC, on the other hand, will not be enforcing Regulation O or the CFPA's prohibition on deceptive acts, and they will have no authority or reason to investigate most of the elements and issues associated with the instant action.

The Wisconsin OLR and Illinois ARDC have their own interests, responsibilities, and expertise in attorney regulation and enforcement of the rules of professional conduct, with associated attorney punishments as warranted. Similarly, the Bureau has its own interests, responsibilities, and expertise in the regulation of mortgage assistance relief services and the enforcement of Regulation O and the CFPA, with associated remedies that the Bureau may seek to impose.

---

[5] The attorney exemption contains three to five requirements (depending on the scope of the exemption sought), all of which would require ascertaining and assessing relevant facts. *See* 12 C.F.R. 1015.7. If a defendant asserts the exemption as a defense, the Bureau will conduct appropriate discovery, the Bureau will present the relevant evidence and legal arguments, and the Court can adjudicate the exemption issues as appropriate at that time, including whether the defendant complied with state laws and regulations that cover the same type of conduct that Regulation O requires. *See* 12 C.F.R. 1015.7(a)(3).

Notably, the remedies that the Bureau seeks in this case include injunctive relief, restitution for consumers, disgorgement of ill-gotten revenues, rescission or reformation of contracts with consumers, and civil money penalties. None of these remedies will result from the state proceedings. Adjudicating claims that could result in significant help for injured consumers need not – and should not – be delayed because of entirely separate attorney disciplinary actions. In addition, the state disciplinary actions will not be hampered or delayed by these federal proceedings. In short, not only are none of the Bureau's claims the type confided by state law to state administrative agencies, but even if they were, the instant case does not present any of the circumstances that would support *Burford* abstention, including impacts on state or local processes or interests. *See Ill. Bell Tel. Co., Inc.*, 551 F.3d at 595.

**2. Proceeding In This Case Will Not Interfere With The Development Of State Policy**

Defendants' final argument in favor of abstention under *Burford* is that "allowing the Wisconsin OLR and Illinois ARDC to resolve the charges would foster state efforts to create coherent policy with respect to attorney conduct." Defendants' Memorandum at 11. This, too, comes up short in justifying a *Burford* abstention. Adjudication of the government's federal claims in federal court would not intrude in any way into Wisconsin and Illinois's role of governing attorney conduct, let alone undermine the states' abilities to maintain desired uniformity in regulating attorney conduct.

Nonetheless, Defendants assert that "the possibility of duplicative proceedings and inconsistent rulings looms large." Defendants' Memorandum at 2. However, as explained above, the attorney exemption is a potential defense that has not yet been raised. More importantly, while it is possible that, if the defense is asserted, there will be some overlap with Wisconsin OLR and Illinois ARDC proceedings in the factual and legal issues relating to that

defense, "the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction." *Colo. River Water Conservation Dist.*, 424 U.S. at 816 (citations omitted). Further, there are significant areas at issue that do not overlap including the conduct of some Defendants, the substantive elements of the Regulation O and CFPA claims, and the remedies sought.

## II. This Matter Does Not Warrant A Stay Under The Doctrine Of Primary Jurisdiction

Defendants also argue that, should the Court deny their motion under *Burford*, it should alternatively abstain under the doctrine of primary jurisdiction pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").[6] This too should be denied.

### A. Legal Standard Governing Defendants' Motion To Abstain Under Primary Jurisdiction

To prevail on a motion to dismiss pursuant to Rule 12(b)(6), a party "bears a weighty burden." *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, Inc.*, 161 F. Supp. 2d 948, 950 (S.D. Ind. 2001). It must show that the pleadings themselves fail to provide a basis for any claim for relief under any set of facts. *Id.* (citing *Ed Miniat, Inc. v. Globe Life Ins. Group Inc*., 805 F.2d 732, 733 (7th Cir. 1986)). With respect to Rule 12(b)(6) motions, courts treat all well-pleaded factual allegations as true and construe all inferences that reasonably may be drawn from those facts in a light most favorable to the party opposing the motion. *Id.* at 951 (citing *Szumny v. American General Finance*, 246 F.3d 1065, 1067 (7th Cir.2001); *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001)).

The doctrine of primary jurisdiction is "very closely related to *Burford* abstention and is based on judicial deference to agency expertise and adjudicatory powers and removes plaintiffs

[6] As with their motion under the *Burford* doctrine, Defendants are not seeking dismissal under the doctrine of primary jurisdiction, but rather abstention.

from the courts to an agency hearing in the first, and often last resort." *Spillane v. Commonwealth Edison Co.*, 291 F. Supp. 2d 728, 734 (N.D. Ill. 2003) (citations omitted). Much of the Bureau's analysis related to the *Burford* doctrine above can be applied to the question of primary jurisdiction as well.

There is no fixed formula for applying the doctrine of primary jurisdiction, but courts have weighed the following three-factor test in considering whether to invoke the doctrine: (1) whether the question at issue is one within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; and (3) whether there exists a substantial danger of inconsistent ruling.[7] *United States v. DISH Network, L.L.C.*, 09-3073, 2011 WL 475067, at *2 (C.D. Ill. Feb. 4, 2011) (citations omitted). Additionally, courts frequently "balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in administrative proceedings." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) (quoting *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995).

### B. Primary Jurisdiction Is Not Proper In This Matter

As an initial matter, as with the *Burford* analysis, Defendants' motion for abstention under primary jurisdiction is not timely. Defendants' sole basis for arguing in favor of primary jurisdiction is that "the attorney exemption provided within Regulation O carves out a role for state bar authorities" and "the claims in this case raise genuine policy issues that have been confided to [state bar authorities]." Defendants' Memorandum at 18. But this interpretation of Regulation O and the claims set forth in the Bureau's case is misapplied at best.

[7] There often is a fourth factor, whether a prior application to the agency has been made, that is inapplicable here. *United States v. DISH Network, L.L.C.*, 09-3073, 2011 WL 475067, at *2 (C.D. Ill. Feb. 4, 2011) (citations omitted).

An analysis of whether to invoke primary jurisdiction requires there to be "issues" before the Court which may or may not warrant agency review. This is evident in the three-factor test discussed in Section II(A), above, which considers, among other things, whether issues presented are within the conventional experience of courts or whether the issues presented are particularly within the purview of an agency's discretion. In the present case, there are no such issues before the Court, although Defendants attempt to portray the questions of whether Defendants were engaged in the "practice of law" and whether Defendants were in compliance with state law as being within the purview of state agencies. However, as discussed at length above, these issues are not part of the Bureau's case but are part of the attorney exemption of Regulation O which Defendants have not yet raised as a defense.

Even assuming these two issues *were* properly presented before the Court, they still would not warrant abstention under the doctrine primary jurisdiction. Applying the three-factor test set forth above weighs against the invocation of primary jurisdiction and there are no other articulable advantages to having the Court defer to the Wisconsin OLR and Illinois ARDC proceedings.

### 1. The Issues In This Case And The Issues Raised By Defendants In Their Motion Are Well Within The Conventional Experience Of The Court

First, the issues raised in this case are well within the conventional experience of the Court. In cases where there are no issues requiring specialized expertise beyond a court's scope, courts have refused to invoke primary jurisdiction. *See Natural Res. Def. Council, Inc. v. Outboard Marine Corp.*, 692 F. Supp. 801, 809 (N.D. Ill. 1988) (doctrine of primary jurisdiction inapplicable where court was not faced with complex technical issues and was able to determine whether defendant had violated regulations at issue); *Trident Inv. Mgmt., Inc.-Meyer Inv. Properties, Inc. v. Bhambra*, 95 C 4260, 1995 WL 736940, at *2 (N.D. Ill. Dec. 11, 1995)

(refusing to invoke primary jurisdiction where court was competent to rule on whether plaintiff satisfied the notice requirements of the law at issue; deference to agency expertise not warranted).

The Bureau's Complaint alleges Defendants violated Regulation O and the CFPA – federal consumer financial protection laws – by taking advance fees and making various misrepresentations in the course of providing or arranging for others to provide mortgage assistance relief services to consumers. It is indisputable that these issues are well within the conventional experience of the Court, and Defendants do not appear to suggest otherwise in their motion.

Although not properly before the Court, the two issues Defendants raise in their motion – whether Defendants are engaged in the practice of law and whether Defendants have complied with state law – are also within the conventional experience of the Court. To be sure, these issues have been heard by courts in this circuit before. For example, courts have reviewed whether attorneys were engaged in the practice of law under the Illinois Consumer Fraud Act ("ICFA"), a state consumer protection statute that has an attorney exemption. In *Shalabi v. Huntington Nat. Bank*, the Northern District of Illinois held that the plaintiff's allegations "make clear that [defendant] acted as attorneys in the practice of law in the foreclosure proceeding against him, such that its attorneys were, by necessity, required to be licensed and were subject to discipline by the Illinois Supreme Court and the ARDC. Accordingly, [plaintiff] has no chance of success against [defendant] under his current complaint." 01 C 2959, 2001 WL 777055, at *3 (N.D. Ill. July 11, 2001). *See also Collins v. Sparacio*, 03 C 0064, 2003 WL 21254256, at *3 (N.D. Ill. May 30, 2003) ("There is no question based on the allegations of the

Complaint that [defendant] acted as an attorney in the practice of law when he filed the collection action against [plaintiff].")

In these cases involving laws with attorney exemptions the courts not only ruled on the question of whether parties were exempt, they also recognized the important policy considerations of having state agencies regulate attorneys and the business of law – yet in none of these cases do the courts turn to those agencies under *Burford* or the doctrine of primary jurisdiction to weigh in on the matters in the case. In *Collins*, for example, the district court went so far as to analyze state court rulings recognizing the attorney exemption of the ICFA as a reflection of the supremacy of state regulatory bodies in policing licensed attorneys ("' . . .the nature of law as a business [is] historically regulated by the Illinois Supreme Court, not the Illinois legislature.'"). *Id.* (citation omitted). The court did not, however, abstain to the Illinois Supreme Court to rule on whether the defendant acted as an attorney in the practice of law.

Courts have also considered whether parties have acted in compliance with state laws, such as in cases where possible state law violations would be relevant to whether a party was in compliance with federal law. *See Joseph v. Wright*, 90 C 6601, 1991 WL 34644, at *3, n.6 (N.D. Ill. Mar. 12, 1991) ("Although defendant cannot be ordered to comply with state law, the requirements of state law may still be relevant to whether there is a federal due process violation and compliance with minimum federal due process standards may be consistent with the requirements of state law.") (citing *Bennett v. Tucker*, 827 F.2d 63, 71, n.3 (7th Cir. 1987)).

**2. The Issues In This Case And That Defendants Raise Are Not Within The Wisconsin OLR And Illinois ARDC's Jurisdiction**

Defendants have also failed to demonstrate that the attorney exemption or any other part of Regulation O and the CFPA is "particularly within the discretion" of the Wisconsin OLR and Illinois ARDC. It clearly is not. Cases where primary jurisdiction has been invoked involved

administrative agencies with explicit concurrent jurisdiction over the laws and issues or, at a minimum, demonstrated expertise on the issues and laws, warranting deference to the agencies by the courts.

For example, in *United States v. DISH Network, L.L.C.*, the court invoked primary jurisdiction and sought guidance from the FCC on certain language in the Telephone Consumer Protection Act because Congress had explicitly bestowed the FCC with the role of implementing and interpreting the TCPA; the court determined the FCC therefore had comparatively greater expertise for interpreting the meaning and bounds of the statute's language. 2011 WL 475067, at *2. *See also, e.g., Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 467 (6th Cir. 2010). In *Rutherford v. Am. Med. Ass'n*, the Seventh Circuit invoked the primary jurisdiction of the FDA because an essential element of the case required a showing that the drug in question would have been approved or exempted by that agency. 379 F.2d 641 (7th Cir. 1967). The court noted "jurisdiction for judicial review of administrative action is statutory in this case . . . initial approval or exemption of a drug is within the primary jurisdiction of the FDA. . . only after action by the FDA is court review appropriate and provided for by statute." *Id.* at 643. *See also, e.g., Lifschultz Fast Freight v. JBS Warehousing, Inc.*, 809 F. Supp. 51, 52 (N.D. Ill. 1992) (doctrine of primary jurisdiction, which applies to issues that fall within the special competence of an administrative agency pursuant to an extensive regulatory scheme, mandates a referral to the ICC for it to exercise its expertise).

In stark contrast, there is nothing in the regulatory scheme of Regulation O or the CFPA that bestows authority on the Wisconsin OLR and Illinois ARDC to interpret the regulations or any issues related to the regulations, nor is there any indication that courts have otherwise come

to rely on state attorney regulators for expertise and guidance on the laws or issues that arise under the laws.

As Defendants admit, primary jurisdiction almost always involves referral to a federal agency. Defendants' Memorandum at 16. Defendants argue that courts can also abstain to state agencies, however. They cite *Illinois Bell Tel. Co. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, (7th Cir. 2008) to support their argument, but the facts in that case are distinguishable from those presented here. *Illinois Bell* involved claims under the Telecommunications Act, a federal law that explicitly assigns a role to state regulatory commissions for approving, rejecting, or imposing agreements between local telecommunications companies. *Id.* at 594. The matter involved a dispute related to interconnection agreements which, pursuant to the Telecommunications Act, had been filed and approved by a state regulatory commission, the Illinois Commerce Commission (ICC). *Id.* at 591. The court explained that "interconnection agreements are complex and have to be approved by [the ICC] and disputes over their meaning are very likely to present issues related to the commission's federal statutory authority" under Section 252. *Id.* at 594. The court noted, however, that it need not refer all disputes over an interconnection agreement to the ICC, but "only those where the dispute raises a genuine policy issue the resolution of which has been confided by the Telecommunications Act to the state commissions." *Id.* at 596.

Here, the laws at issue – Regulation O and the CFPA – do not carve out roles for the Wisconsin OLR and Illinois ARDC, and there are no issues in the case that are subject to approval by these administrative state agencies.

### 3. There Is No Danger Of Inconsistent Results Between This Matter And The Illinois ARDC And Wisconsin OLR Proceedings

In considering whether to invoke primary jurisdiction, courts consider whether deferring to agency discretion will serve to avoid inconsistent rulings and achieve a "desirable uniformity" in decision making. *See Frydman v. Portfolio Recovery Associates, LLC*, 11 CV 524, 2011 WL 2560221, *2 (N.D. Ill. June 28, 2011) (citing *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956)). In this matter, there is no danger posed by the possibility of inconsistent rulings – the Court is not bound by any conclusions made by the two state regulatory agencies (and vice versa). The risk of a lack of uniformity presupposes a relationship between a court and agency, or at a minimum a relationship between the agency and the law at issue, whereby differing decisions could cause conflict in future cases. *See, e.g., Total Telecommunications Servs., Inc. v. Am. Tel. & Tel. Co.*, 919 F. Supp. 472, 478 (D.D.C. 1996) ("The powers granted to the FCC are a reflection of Congress' intention that one governmental entity be vested with the responsibility of developing, coordinating and enforcing a uniform telecommunications policy").

Here, there is no such risk. Since determinations by the Wisconsin OLR and Illinois ARDC have no precedential value in federal courts regarding Regulation O, their rulings on Defendants' actions will neither cause nor endanger uniformity under the law. The Bureau's case involves thousands of transactions that took place nationwide, whereas the Wisconsin OLR and Illinois ARDC matters involve investigations into single complaints. As it stands, there is no risk of uncertainty if the Court hears and rules on the issues before it.

### 4. Defendants Fail To Articulate Any Other Advantage To Abstaining

Finally, in deciding whether to invoke the doctrine of primary jurisdiction, courts consider whether, on balance, invocation of the doctrine will unduly burden the parties through prejudice or delay. *Frydman*, 2011 WL 2560221, at *2; *Jamison*, 290 F.R.D. 92 at 100-01.

Courts have refused to invoke the doctrine where doing so would add expense and delay to the parties. *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Jewel Tea Co.*, 381 U.S. 676, 686 (1965) (holding the doctrine of primary jurisdiction is not "a doctrine of futility" and should not lead to "an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency.") (citing *Federal Maritime Board v. Isbrandtsen Co.*, 356 U.S. 481, 521); *see also DISH Network*, 2011 WL 475067, at *2 ("The doctrine should be invoked sparingly since it often results in added expense and delay to the litigants.") (citing *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir.1984)); *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 419 (5th Cir.1976)).

The question of burden is closely tied to the three-factor test discussed above – for example, where an agency can provide expertise to a court, the doctrine of primary jurisdiction can "serv[e] judicial economy because the dispute may be decided within the agency, thus obviating the need for the courts to intervene." *MCI Telecommunications Corp. v. Ameri-Tel, Inc.*, 852 F. Supp. 659, 662 (N.D. Ill. 1994) (citing *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991)). Here, the Wisconsin OLR and Illinois ARDC can offer no such expertise and will not be able to resolve the issues presented before the Court, so invoking primary jurisdiction will not offer judicial efficiency to this matter but instead will run the risk of complicating and delaying matters further. There is no way to ascertain how long it will take the agencies to resolve the complaints related to Defendants – the Wisconsin OLR proceeding has been ongoing since at least August 2013. The risk of delay would be unduly prejudicial to the Bureau and frustrate its statutory mandate to enforce Regulation O and the CFPA.

## CONCLUSION

For the above-stated reasons, the Bureau respectfully requests that the Court deny Defendants' Motion to in its entirety.

Dated: October 14, 2014

Respectfully Submitted,

Anthony Alexis, DC Bar #384545
*Acting Enforcement Director*

Ori Lev, DC Bar #452565
*Deputy Enforcement Director*

Laurel Loomis Rimon, CA Bar #166148
*Assistant Deputy Enforcement Director*

_/s/ *Nelle Rohlich*__________
Nelle Rohlich, WI Bar #1047522
(Email: nelle.rohlich@cfpb.gov)
(Phone: 202-435-7280)
Seth Popkin, DC Bar #417365
(Email: seth.popkin@cfpb.gov)
(Phone: (202) 435-9496)
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552