**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>THE MORTGAGE LAW GROUP, LLP, CONSUMER FIRST LEGAL GROUP, LLC, THOMAS G. MACEY, JEFFREY J. ALEMAN, JASON E. SEARNS and HAROLD E. STAFFORD,<br><br>Defendants. | ) | Case No. 3:14-cv-00513 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO ABSTAIN**

**INTRODUCTION**

As a threshold matter, Defendants wish to apprise the Court of a recent development. When Defendants filed their motion to abstain, four of the Defendants (Macey, Aleman, Stafford and CFLG) were the subject of pending bar inquiries in their respective states of Wisconsin and Illinois.[1] In their motion, Defendants asked this Court to stay this case pending the completion of Wisconsin and Illinois disciplinary proceedings. However, on September 22, 2014 (*i.e.*, the same day that Defendants filed their motion), the Wisconsin Office of Lawyer Regulation ("OLR") concluded its investigation of Harold Stafford and CFLG and determined there was no "clear, satisfactory and convincing evidence" of misconduct. Accordingly, the only remaining

[1] In its response, the CFPB notes that there are no ongoing proceedings with respect to Defendant Jason Searns. That is because Mr. Searns was already the subject of a disciplinary investigation in the State of Colorado in 2012, relating to the same (or very similar) conduct at issue here. The Colorado bar authorities closed that investigation after concluding that there was no "clear and convincing evidence of a violation of the Colorado Rules of Professional Conduct. *See* Exhibit A hereto.

pending state bar action is the Illinois Attorney Registration and Disciplinary Commission ("ARDC") matter against Thomas Macey and Jeffrey Aleman. Defendants respectfully amend their prayer for relief to seek a stay of this case pending completion of that ARDC matter.

A stay is necessary in this case to avoid Defendants facing liability for the same conduct under conflicting theories. In the ARDC action, it is alleged that Macey and Aleman were engaged in the practice of law when they conducted business through TMLG, thus subjecting them to discipline from the ARDC. (The now-concluded investigations of Stafford, CFLG and Searns were similarly premised on the notion that they were engaged in the practice of law.) In this action, the CFPB cannot prevail unless Macey and Aleman were ***not*** engaged in the practice of law in their activities with TMLG, thus removing them from the protection of Regulation O's attorney exemption. If the actions proceed simultaneously, the possibility of conflicting rulings looms large. Staying this action will allow for consistent results in both matters, which is necessary as a matter of fairness to Defendants.

A stay is also appropriate as a matter of comity and respect for state agencies. With respect, the question of whether an attorney is engaged in the "practice of law" is a question that should be addressed in the first instance by the bar authorities in the attorneys' respective states. Indeed, the CFPB does not dispute that the regulation of the practice of law has been expressly and exclusively reserved to the states, that Illinois has a well-developed regime for such regulation, and that Illinois has a strong interest in the cohesive application of its rules and regulations governing attorney conduct. Thus, this Court should defer to the ARDC on the issue of whether Defendants' conduct complied with Illinois regulations governing attorneys.

Notably, the CFPB has not identified any prejudice that will result from such a stay. Accordingly, this Court should abstain from this matter pending the outcome of the ARDC Action under the *Burford* or primary jurisdiction doctrine.

## ARGUMENT

### I. As A Threshold Matter, The CFPB's Argument That The Case Should Proceed Against TMLG, Searns And Stafford Is Flawed.

In its response, the CFPB argues that there is no basis to stay or dismiss the case against TMLG, Searns and Stafford, and thus, the entire matter should proceed in the interest of judicial economy. The CFPB is wrong.

***First,*** TMLG is the subject of an involuntary Chapter 7 bankruptcy proceeding that is currently pending before the United States Bankruptcy Court for the Southern District of New York. Accordingly, the automatic stay provided for in 11 U.S.C. § 362 applies, and this matter ***cannot*** proceed against TMLG.

***Second,*** the CFPB suggests that because Stafford was not investigated for the unauthorized practice of law, Defendants' arguments to stay this matter are moot. The investigation of Stafford and CFLG was conducted by the Office of ***Lawyer*** Regulation. The fact that OLR was the investigating authority demonstrates that authority believed the conduct at issue arose from the practice of law. Moreover, Stafford and CFLG were investigated for their conduct relating to fees collected from clients and for certain communications made to clients regarding the nature of the services to be rendered by CFLG. That inquiry has now concluded, and the OLR has determined that there was insufficient evidence of any misconduct under the applicable Wisconsin rules.

***Third,*** the only remaining state regulatory inquiry is the ARDC Action against Macey and Aleman. Thus, the uncertainty and delay that the CFPB complains of are now far more limited in scope. There is no possible efficiency to be gained by allowing both matters to proceed simultaneously, or by staying the proceedings against Macey and Aleman and permitting them to proceed against the other Defendants. The former involves duplicative litigation and the possibility of conflicting rulings. The latter involves the possibility of prejudice to Macey and Aleman as a result of not being parties to discovery and motion practice in this Court. The CFPB's suggestion that this matter should proceed before the conclusion of the ARDC Action does not comport with the interests of judicial economy and efficiency. Resolution of the ARDC Action will narrow the issues before this Court, in particular, those that pertain to Regulation O's attorney exemption.

## II. Defendants' Motion Is Not Premature.

The thrust of the CFPB's response is that because Defendants have yet to answer (and thus, have yet to plead an affirmative defense of statutory exemption), Defendants' motion is premature and must be denied. (Resp. at 8-9) The CFPB cites no authority for the proposition that a party seeking abstention under the *Burford* or primary jurisdiction doctrine must first answer the complaint or raise affirmative defenses giving rise to the abstention request. That is because the opposite is true. A party seeking abstention must do so in a Rule 12(b) motion, which must be made ***prior*** to filing a responsive pleading. Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."); *see also Allstate Ins. Co. v. Elzanaty*, 916 F.Supp. 3d 273, 286 (E.D.N.Y. 2013) (Motion based on the abstention doctrine is also considered as a motion to dismiss made pursuant to Rule 12(b)(1)); *Spillane v. Commonwealth Edison Co.,* 291 F.Supp. 2d 728 (N.D. Ill.

2003) (same); *Davel Comm., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1087-88 (9th Cir. 2006) (Motion based on primary jurisdiction must be brought pursuant to Rule 12(b)(6)).

Moreover, while generally a statutory exemption is an affirmative defense that is not considered on a Rule 12(b) motion, courts may consider such a defense where the basis for the defense is disclosed on the face of the complaint. *See, e.g.*, *Independent Tr. Corp. v. Stewart Info. Serv. Corp.*, 665 F. 3d 930, 935 (7th Cir. 2012). In this case, Defendants are alleged to have violated certain provisions of the Mortgage Assistance Relief Services Code, 12 C.F.R. § 1015.1, *et seq.* ("Regulation O") by making certain representations to and collecting certain fees from TMLG and CFLG clients and by failing to make certain disclosures. However, Regulation O also contains two attorney exemptions. An attorney is exempt from all provisions of Regulation O (except Section 1015.5) if the attorney:

> (1) Provides mortgage assistance relief services ***as part of the practice of law***;
>
> (2) Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located; and
>
> (3) ***Complies with state laws and regulations*** that cover the same type of conduct the rule requires.

12 C.F.R. § 1015.7(a) (emphasis added). With respect to Section 1015.5, an attorney is exempt if the attorney meets the requirements of Section 1015.7(a) and the following requirements:

> (1) Deposits any funds received from the consumer prior to performing legal services in a client trust account; and
>
> (2) ***Complies with all state laws and regulations***, including licensing regulations, applicable to client trust accounts.

12 C.F.R. § 1015.7(b) (emphasis added).

Here, the CFPB has alleged that: (1) Macey, Aleman, Searns and Stafford are licensed attorneys; (2) Macey, Aleman, Searns and Stafford directed and controlled the operations of TMLG and CFLG; (3) TMLG and CFLG represented to their clients that they would receive the services of an attorney; (4) TMLG held itself out as a full service law firm focused on resolving mortgage issues; (5) CFLG represented that it was one of the most sophisticated consumer protection law firms in the country; and (6) TMLG and CFLG clients were assigned attorneys, but that they did not have substantive communications with those attorneys. (Compl., Dkt. No. 1 at ¶¶ 14-18, 20, 23, 32, 34-35, 37-38, 40, 48) Because the CFPB has alleged that Defendants were engaged in the practice of law, the basis for the attorney exemption is clear from the face of the complaint. Accordingly, this Court can (and should) consider the exemption in ruling on the instant motion.

## III. This Court Should Abstain From This Matter Under *Burford*.

*Burford* abstention is appropriate in cases: (1) where a federal court is faced with "difficult questions of state law" that implicate significant state policies; or (2) where the exercise of federal jurisdiction would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996); *Int'l College of Surgeons v. City of Chicago*, 153 F.3d 356 (7th Cir. 1998). In its response, the CFPB does not dispute that regulation of the practice of law is exclusively reserved to the states and that Illinois has enacted specialized regimes for such regulation. *People ex rel. Brazen v. Finley*, 519 N.E.2d 898, 901-902 (Ill. 1988) ("[O]ur court possesses the inherent and exclusive power to regulate the practice of law in this State and to sanction or discipline the unprofessional conduct of attorneys admitted to practice before it."). Nor does CFPB dispute that the regulation of the practice of law is an important state interest

that requires cohesive application. *Middlesex Co. Ethics Committee v. Garden St. Bar Assoc.*, 457 U.S. 423, 434 (1982) (A state has an "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses."); *see also Adams v. Attorney Registration & Disciplinary Commission*, 600 F.Supp. 390, 393-94 (N.D. Ill. 1984) ("The regulation of attorneys is essential to the primary governmental function of administering justice and at the core of the state's power to protect the public.").

Rather, the CFPB contends that Defendants misstate the nature of its claims and that the claims asserted do not require deference to state agencies because the interests served by the state regulatory action and the instant lawsuit differ. Despite the CFPB's contention, the general nature of the claims in this case is not in dispute. The CFPB has alleged that Defendants violated various provisions of Regulation O in connection with their provision of mortgage relief services, including the collection of advance fee payments and making certain representations to TMLG and CFLG clients. Rather, the parties dispute what impact, if any, the ARDC Action has on Defendants' liability on those claims and the application of Regulation O's exemptions in this case. Defendants submit that the outcome of the ARDC Action will have a direct impact on the claims and defenses in this case, and the state regulatory authorities are in the best position to adjudicate those issues.

***First,*** as set forth above, it is undisputed that Illinois has a substantial interest in the cohesive application of its attorney regulations, and that the power to regulate attorneys has been exclusively reserved to the states. The issues raised by the attorney exemption in this case do not involve the straightforward application of simple state law (for example, contract law) to the CFPB's claims. Rather, the application of the attorney exemption in this case requires a determination that Defendants were engaged in the practice of law and that they complied with

state rules and regulations governing their conduct. That is a specialized area of state law that has been expressly delegated to the ARDC, and the ARDC has a well-developed body of decisions and expertise from which to make such determinations. Thus, this Court should defer to the ARDC with respect to such issues.

***Second,*** the conduct alleged by the CFPB is substantively similar to the conduct alleged in the Illinois ARDC Action. In this case, the CFPB has alleged that Macey and Aleman improperly charged advance fees to TMLG clients and made a number of misrepresentations to those clients, including representations regarding its partnerships with attorneys and the nature of the services to be rendered by TMLG. In the ARDC Action, the ARDC has alleged that Macey and Aleman engaged in the unauthorized practice of law with respect to TMLG's representation of various clients, made certain misrepresentations to those clients regarding the nature of TMLG's services, and failed to refund unearned fees to those clients, in violation of Illinois Rules of Professional Conduct. Thus, the appropriate state regulatory agency has already undertaken the factual and legal inquiries that are raised by the attorney exemptions in this case.

***Third,*** the CFPB complains that the interests to be protected by the instant lawsuit differ from the interests to be protected via the ARDC Action, and thus this Court should allow all proceedings to go forward simultaneously. While it may be true that the various actions serve different interests and purposes, that is not a basis to deny abstention. The CFPB has not cited to any authority whatsoever that stands for the proposition that the interests to be served in both the state and federal actions must be identical. That is because no such authority exists. Rather, in abstaining under the *Burford* doctrine, courts do so where they are faced with "difficult questions of state law" that implicate significant state policies or where the exercise of federal jurisdiction would "be disruptive of state efforts to establish a coherent policy with respect to a matter of

substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996); *Int'l College of Surgeons v. City of Chicago*, 153 F.3d 356 (7th Cir. 1998). Here, the various actions involve the same issues – issues of state law that implicate significant state policies and matters of public concern (*i.e.*, the regulation of attorneys).

***Fourth,*** Defendants are not seeking to permanently dismiss this matter and bar the CFPB's claims *in toto*. Rather, Defendants are merely asking this Court to allow the appropriate state regulatory bodies to assess and opine on Defendants' business model and conduct (*i.e.*, whether such model and conduct constitute the practice of law and comply with state rules and regulations) before allowing the CFPB's claims to go forward. Doing so will: (1) promote efficiency in this litigation, as it will resolve issues relating to the attorney exemption; (2) allow the states to exercise their powers to regulate attorney conduct in a cohesive matter; and (3) avoid inconsistent results among the various pending actions.

The CFPB attempts to differentiate its claims in this lawsuit from the conduct alleged in ARDC and OLR Actions, arguing (without any support) that those proceedings have "no bearing on the [CFPB]'s claims" under Regulation O, and that its regulation of mortgage assistance relief services under a federal law constitutes "entirely separate matters" from state enforcement of state rules of professional conduct. (Resp. at 7) That position might be well-taken if not for the attorney exemptions of Regulation O. Those exemptions specifically provide that Regulation O does ***not*** apply to attorneys engaged in the practice of law who comply with state rules and regulations governing their conduct. As discussed above, the allegations of the complaint raise the issue of whether the attorney exemptions apply to Defendants' conduct in this case. Here, the Illinois ARDC has already undertaken the inquiry of: (1) whether Defendants were engaged in the practice of law; and (2) whether Defendants complied with state laws and regulations

governing their conduct.[2] Such an inquiry clearly implicates state laws and regulations, and this Court should abstain from this matter until such time as the Illinois ARDC Action has concluded.

## IV. In The Alternative, This Court Should Abstain From Hearing This Matter Under The Doctrine Of Primary Jurisdiction.

### A. Defendants' Primary Jurisdiction Motion Is Timely.

In response to Defendants' motion to abstain pursuant to the primary jurisdiction doctrine, the CFPB largely asserts the same arguments as those asserted in response to the *Burford* portion of Defendants' motion (*i.e.*, that Defendants have not yet raised the attorney exemption as a defense in its responsive pleading). For the reasons set forth above, the CFPB's arguments fail.

### B. Abstention Based On Primary Jurisdiction Is Appropriate In This Case.

There is no fixed formula for applying the doctrine of primary jurisdiction. *U.S. v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Rather, courts look at "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* To that end, courts have enunciated several factors and policy issues that should be considered when determining to stay a case pursuant to the primary jurisdiction doctrine: (1) whether the question at issue is within the conventional experience of judges; (2) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (3) whether a determination would involve the exercise of agency discretion; (4) the need for a consistent and uniform rule; (5) the likelihood of inconsistent rulings if not referred to the agency; (6) whether the issue has already been before

---

[2] The CFPB misconstrues Defendants' position that the only relevant inquiry before the ARDC is whether Defendants are engaged in the authorized practice of law. However, it is Defendants' position that all of the conduct before those agencies is relevant to the issue of whether Regulation O's exemption applies in this case.

the agency; (7) whether judicial economy is served by having the agency resolve the issue; and (8) whether the referral will result in substantial delay and added expense. *See, e.g., Espejo v. Santander Consumer USA, Inc.*, 2014 WL 4347185 (N.D. Ill. Aug. 28, 2014). Consideration of those factors and policy concerns strongly weighs in favor of abstention.

***First,*** while generally the question of whether someone has held themselves out as an attorney is a factual issue within the conventional experience of the Court, the issues raised by the attorney exemption and those that are currently pending before the ARDC (*i.e.*, whether particular conduct constitutes the practice of law and whether an attorney is complying with Illinois state regulations governing attorneys) are not within the experience of this Court. Rather, those issues are within the experience of the state attorney regulatory authorities. The claims in this case raise genuine policy issues that have been confided to and are clearly within the purview and expertise of the ARDC. Specifically, the regulation of attorney conduct, the determination of what constitutes the practice of law, and the determination of whether Defendants have complied with state laws and regulations governing their conduct have been delegated to the ARDC, and the ARDC has a well-developed body of decisions and expertise from which to make such determinations. The CFPB does not seriously dispute that point. Thus, the ARDC is better equipped to make determinations regarding the propriety of an attorney's conduct in light of the rules of professional conduct than is this Court.

The two unreported decisions cited by the CFPB, *Shalabi v. Huntington Nat'l Bank*, 2001 WL 777055 (N.D. Ill. July 11, 2001) and *Collins v. Sparacio*, 2003 WL 21254256 (N.D. Ill. May 30, 2003) do not stand for the cited proposition. Neither of those cases considered the application of the primary jurisdiction doctrine. Nor did they involve the application of a statutory attorney exemption that required the courts to determine whether the attorney was in

compliance with state rules and regulations governing the attorneys' conduct. Rather, the courts assessed whether a judicially-created attorney exemption to the Illinois Consumer Fraud Act applied so as to provide a basis for the dismissal of the plaintiffs' claims. *See Shalabi* at * 2; *Collins* at * 3; *Cripe v. Leiter*, 703 N.E.2d 100, 106 (holding that "the attorney-client relationship in this state…is already subject to extensive regulation by this court. The legislature did not, in the language of the Consumer Fraud Act, specify that it intended the Act's provisions to apply to the conduct of attorneys in relation to their clients."). Notably, both the *Shalabi* and the *Collins* courts noted that the regulation of attorneys was reserved to the Illinois Supreme Court.

***Second,*** despite the CFPB's contention, it is not a requirement for the application of primary jurisdiction that the agency's determination have precedential force on this Court. Rather, the proper inquiry is whether the dispute raises a genuine policy issue that has been confided to the state or federal agency. *Illinois Bell Telephone Co., Inc. v. Global Naps Illinois, Inc.*, 551 F.3d 587, 596 (7th Cir. 2008) (applying primary jurisdiction and noting that "the agency's resolution of [an issue] will usually be subject to judicial review" in the appropriate state or federal channels). Here, Regulation O's attorney exemption raises a policy issue (*i.e.*, whether an attorney's conduct complies with state regulations) that has been specifically and exclusively confided to a state regulatory authority. Thus, at a minimum, Regulation O contemplates the guidance of state bar authorities and their rules and decisions in the application of the attorney exemption.

***Third,*** the need for a consistent rule regarding what constitutes permissible conduct by attorneys in the mortgage relief sector is great. The law with respect to the central issues (*i.e.*, whether Defendants' conduct constitutes the practice of law and whether their conduct complies with the rules of professional conduct) appears to be unsettled. To Defendants' knowledge, the

Illinois ARDC and the Illinois state courts have not previously considered the TMLG and CFLG business models and whether Defendants' conduct complies with local regulations regarding the practice of law. A guiding decision promulgated by the administrative body charged with regulating the practice of law will guide the conduct of others going forward.

That inquiry is already pending before the ARDC, and the likelihood of inconsistent rulings is great if this case proceeds simultaneously.[3] Here, the attorney exemption in Regulation O specifically requires this Court to make determinations as to: (1) whether Defendants were engaged in the practice of law; and (2) whether Defendants complied with state laws and regulations governing their conduct. Such determinations require the construction of state rules and regulations. In the Illinois ARDC action, the ARDC has alleged that Macey and Aleman did not comply with state rules and regulations governing the conduct of attorneys in connection with their activities on behalf of TMLG (contentions which Macey and Aleman strongly dispute). Thus, it is possible that the ARDC may find that Macey and Aleman were engaged in the practice of law and did not comply with the rules of professional conduct, thus subjecting them to disciplinary action and penalties from the ARDC. It is also possible that this Court may simultaneously find (for purposes of the attorney exemption) that Macey and Aleman were not engaged in the practice of law, thus subjecting them to penalties in this action. Such a result is fundamentally unfair.

[3] The CFPB contends that there is no threat of inconsistent results because the ARDC Action involves three specific clients, and this case involves "thousands of transactions" nationwide. That argument is a red herring. Both the CFPB's complaint and the ARDC Action allege that certain courses of conduct (*i.e.*, making certain representations and collecting advance fee payments) constitute violations of various rules and statutes. Thus, the overarching issues are the same in both actions.

***Fourth,*** judicial economy will be served by allowing the ARDC to resolve the claims brought against Macey and Aleman. The Colorado and Wisconsin proceedings against Searns, Stafford and CFLG have already concluded, and the respective agencies' decisions regarding those Defendants' conduct are helpful in narrowing the issues before this Court. Those agencies found that there was no evidence of any misconduct in connection with those Defendants' practice of law. Those findings (and the findings of the ARDC with respect to Macey and Aleman) will guide this Court in assessing the applicability of the attorney exemption of Regulation O to Defendants' alleged conduct in this case.

***Fifth,*** allowing the ARDC to conclude its proceedings will not result in substantial delay and expense. While doing so may delay the instant matter at the outset, the ARDC proceedings will resolve important questions of state policy that will ultimately narrow the issues in this case. Moreover, the CFPB is not a participant in the ARDC proceedings, and thus it will incur no additional expense if this Court abstains while the ARDC proceedings go forward. Indeed, the CFPB has not identified any prejudice or additional expense that will result if this Court abstains during the pendency of the ARDC proceedings. Accordingly, in the event this Court declines to abstain under *Burford*, this Court should abstain from this matter pursuant to the primary jurisdiction doctrine.

WHEREFORE, for the reasons set forth herein, Defendants Thomas G. Macey and Jeffrey J. Aleman respectfully move this Court to abstain from adjudicating this case on the merits until the Illinois Attorney Registration and Disciplinary Commission has resolved the matters currently pending before it.

Dated: October 23, 2014.

Respectfully submitted,

*s/ Douglas M. Poland*
Douglas M. Poland
GODFREY & KAHN, S.C.
1 East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: 608-257-3911
Fax: 608-257-0609
dpoland@gklaw.com

Timothy D. Elliott (*Pro Hac Vice*)
RATHJE & WOODWARD, LLC
300 E. Roosevelt Rd., Suite 300
Wheaton, IL 60187
Phone: 630-668-8500
Fax: 630-668-9218

*Attorneys for Defendants Consumer First Legal Group, LLC, Thomas G. Macey, Jeffrey J. Aleman, Jason E. Stearns and Harold E. Stafford*

12394243.1