## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:14-cv-00513 |
| THE MORTGAGE LAW GROUP, LLP, CONSUMER FIRST LEGAL GROUP, LLC, THOMAS G. MACEY, JEFFREY J. ALEMAN, JASON E. SEARNS and HAROLD E. STAFFORD, | ) ) ) ) ) ) ) | Hon. Barbara B. Crabb |
| Defendants. | ) | |

## HAROLD STAFFORD'S AMENDED ANSWER TO COMPLAINT

Defendant Harold Stafford ("Defendant") states as follows as his Amended Answer to Plaintiff Consumer Financial Protection Bureau's ("CFPB") Complaint:

## INTRODUCTION

1.  The Consumer Financial Protection Bureau (Bureau) brings this action under sections 1031, 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, 5565, and under section 626 of the Omnibus Appropriations Act, 2009 (as amended by section 1097 of the CFPA), 12 U.S.C. § 5538, and its implementing regulation, the Mortgage Assistance Relief Services Rule (MARS Rule, or Regulation O), 12 C.F.R. pt. 1015 (2011), in connection with Defendants' marketing and sale of purported mortgage assistance relief services.

**ANSWER:**   Defendant admits that the CFPB has brought claims against Defendant under the CFPA and Regulation O.  Defendant denies that the CFPA or Regulation O apply in any way to Defendant's conduct.

## JURISDICTION AND VENUE

2.  This Court has subject-matter jurisdiction over this action because it is brought under federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal

question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

**ANSWER:**  Defendant admits that the Court has subject-matter jurisdiction over claims brought under federal consumer financial law, present a federal question, and are brought by an agency of the United States, but denies that this Court has subject matter jurisdiction over this action.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 12 U.S.C. § 5564(f) because a substantial part of the events or omissions and course of conduct giving rise to the claims set forth in this Complaint occurred in this judicial district.

**ANSWER:**  Defendant admits the allegations in this paragraph.

## PARTIES

4.  The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer financial products or services under federal consumer financial laws, including the CFPA and Regulation O.   12 U.S.C. §§ 5481 (12)(Q), (14), 5491(a), 5531, 5538.

**ANSWER:**  Defendant admits that the CFPB purports to regulate federal consumer financial laws as described in this paragraph.  Defendant denies that the CFPB is a lawful agency.

5.  The Bureau is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the CFPA and Regulation O, and to secure such relief as may be appropriate in each case.  12 U.S.C. §§ 5564(a)-(b), 5565.  This includes the rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, and civil money penalties.  *Id*. § 5565(a)(2).

**ANSWER:**  Defendant admits that the CFPB purports to have the authority described in this paragraph.  Defendant denies that the CFPB has any lawful authority.

6.  At all times relevant to this complaint, Defendant The Mortgage Law Group (d/b/a The Law Firm of Macey, Aleman & Searns) (TMLG) was a Nevada limited liability partnership with a principal place of business at 233 S. Wacker Drive, Suite 5150, Chicago, Illinois.  TMLG contracted with consumers nationwide, including within the State of Wisconsin.

2

**ANSWER:**   Defendant lacks knowledge sufficient either to admit or deny the allegations in

this paragraph.   To the extent any allegations in this paragraph are made against Defendant,

Defendant denies such allegations.

       7.     At all times relevant to this complaint, Defendant Consumer First Legal Group (CFLG) was a Wisconsin limited liability company with a principal place of business located at 2810 Crossroads Drive, Suite 4000, Madison, Wisconsin.

**ANSWER:**   Defendant admits the allegations in this paragraph.

       8.     At all times relevant to this complaint, Defendant Thomas G. Macey (Macey) was a partner with 76.6 percent interest in TMLG and, since July 2012, a partner with approximately 17 percent interest in CFLG.

**ANSWER:**   Defendant lacks knowledge sufficient either to admit or deny the allegations with

respect to TMLG.   Defendant denies the remaining allegations in this paragraph.

       9.     At all times relevant to this complaint, Defendant Jeffrey J. Aleman (Aleman) was a partner with 14.3 percent interest in TMLG and, since July 2012, a partner with approximately 17 percent interest in CFLG.

**ANSWER:**   Defendant lacks knowledge sufficient either to admit or deny the allegations with

respect to TMLG.   Defendant denies the remaining allegations in this paragraph.

      10.     At all times relevant to this complaint Defendant Jason E. Searns (Searns) was a partner with 9.1 percent interest in TMLG.

**ANSWER:**   Defendant lacks knowledge sufficient either to admit or deny the allegations in

this paragraph.   To the extent any allegations in this paragraph are made against Defendant,

Defendant denies such allegations.

      11.     At all times relevant to this complaint Defendant Harold E. Stafford (Stafford) was a partner of CFLG.  Stafford was the sole owner of CFLG from at least 2011 until July 2012 when he sold 95% of his interest to Macey and Aleman, retaining 5% interest.

**ANSWER:**     Defendant admits he was the sole owner of CFLG until mid-2012, and that he retained a 5% membership interest after that point.  Defendant denies the remaining allegations in this paragraph.

>    12.   Defendants TMLG, CFLG, Macey, Aleman, Searns, and Stafford, each acting alone or in concert with others, offered, provided, or arranged for others to provide, "mortgage assistance relief services," as defined in Regulation O (12 C.F.R. § 1015.2 (2011)), and provided "financial advisory services" within the meaning of the CFPA, 12 U.S.C. § 5481(15)(A)(viii), including, but not limited to, providing or offering to provide loan modification and foreclosure relief services. At all times material to this Complaint, Defendants have transacted business in this District.

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny any allegations related to TMLG, Macey, Aleman or Searns.   Defendant admits that the term "mortgage assistance relief services" is defined in Regulation O and that the term "financial advisory services" is defined in the CFPA.   Defendant denies that those defined terms apply to Defendant's actions.   Defendant admits that CFLG provided certain services in the Western District of Wisconsin.  Defendant denies all remaining allegations in this paragraph.

## SUMMARY OF COMPLAINT

>    13.   Since at least 2011, Defendants have marketed and sold purported mortgage assistance relief services to consumers.   Defendants attracted financially distressed homeowners through various marketing methods, deceptively promising that they would assist homeowners in obtaining loan modifications and foreclosure relief in exchange for the payment of advance fees.  Defendants also promised that they would obtain such results within a certain period of time and misled consumers into believing an attorney would represent them in negotiations with their mortgage lenders or servicers.  In the end, consumers routinely paid thousands of dollars each in advance fees, while receiving none of the promised services or relief.  Since 2011, Defendants TMLG and CFLG have collectively enrolled at least 12,290 consumers in their programs and collected at least 19.2 million from consumers nationwide.

**ANSWER:**     Defendant lacks knowledge sufficient to admit or deny the allegations regarding TMLG.  Defendant admits that CFLG offered and provided certain legal services that included

mortgage loan modification services, and received certain fees for services rendered.  Defendant

denies the remaining allegations in this paragraph.

## TMLG'S BUSINESS PRACTICES

      14.    At all times relevant to this complaint, Macey was an attorney licensed in Illinois.

**ANSWER:**    Defendant admits the allegations in this paragraph.

      15.    At all times relevant to this complaint, Aleman was an attorney licensed in Illinois and Wisconsin.

**ANSWER:**    Defendant admits the allegations in this paragraph.

      16.    At all times relevant to this complaint, Searns was an attorney licensed in Colorado.

**ANSWER:**    Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

      17.    Macey, Aleman, and Searns have had managerial responsibility for TMLG and have materially participated in the conduct of its affairs, including the development and approval of the purported mortgage assistance relief services complained of herein by, among other things: coordinating "partnerships" with local attorneys in states in which TMLG operated; contracting with entities or individuals who performed certain services for TMLG including, but not limited to, marketing, enrolling consumers in their programs, and providing client support services; responding to regulatory inquiries; and setting fees, controlling collection of consumer payments, and controlling TMLG's finances.

**ANSWER:**    Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

      18.    Macey, Aleman, and Searns are intimately familiar with and direct TMLG's operations.  Macey, Aleman, and Searns knew of and approved all of TMLG's practices described in this Complaint.

**ANSWER:**    Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

19.     TMLG's loan modification services were marketed using a variety of methods including, but not limited to, television and internet advertisements, and telephone and direct mail solicitations.  The advertisements were directed to consumers who were in financial distress behind on their mortgage loans, or in danger of losing their homes to foreclosure.

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in

this paragraph.

20.     Consumers who contacted TMLG were connected with a company representative to discuss their mortgage and financial situations.  The representative made statements aimed at convincing consumers that they were eligible for a loan modification, and that they would obtain a mortgage modification if they hired TMLG.  TMLG staff also indicated to consumers during the intake call that they would be receiving the services of an attorney.

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in

this paragraph.

21.     In some instances, TMLG instructed consumers through these practices.

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in

this paragraph.

22.     TMLG enrolled over 10,200 consumers through these practices.

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in

this paragraph.

23.     After the initial call, TMLG would send consumers a welcome packet with a cover letter and Retainer Agreement.  These documents misleadingly suggested to consumers that they would be receiving the services of an attorney. For example, the cover letter begins by thanking the consumers for "entrusting their home to TMLG… a full service law firm that focuses on resolving all mortgage related issues."

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in

this paragraph.

24.     TMLG's cover letter including a warning to consumers: "[w]hile we will not tell you not to speak to your servicer, we must advise you that to do so is risky.  We have seen several clients hurt by deceptive practices when their servicer calls."

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

25.     The cover letter also states "[c]urrently we are seeing many workouts take anywhere from 90-120 days; however, every case is unique…f]ortunately by using an attorney you have a significant advantage because we are familiar with the process and expedite it through our contacts."

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

26.     Under the terms of its Retainer Agreement, TMLG charged consumers an "Initial Flat Fee Retainer," the amount of which varied but which typically was around $1,195.  This fee was purportedly for an initial review and analysis of the consumer's financial situation such as a "preliminary underwriting" analysis. Thereafter, TMLG collected a "Monthly Flat Fee Retainer" of around $795, purportedly for continued underwriting analysis, transmission of the loan modification package to the lender, and continued monitoring of the loan modification package review with the lender.

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

27.     Consumers routinely paid all such fees before any written agreement was reached with the consumer's lender or servicer or before any other mortgage assistance relief was obtained.

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

28.     After consumers paid TMLG's advance fees, TMLG routinely failed to answer or return consumers' telephone calls and emails and failed to provide updates about the status of consumers' loan modification applications.

**ANSWER:**     Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

29.    After consumers paid TLMG's advance fees, TMLG routinely failed to obtain loan modifications or foreclosure relief for consumers.

**ANSWER:**    Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

30.    Many consumers report that they did not receive representation by an attorney. Although they may have been assigned an attorney in a nominal sense, they never met or consulted with any attorney, including any attorney licensed in the state where they reside.  In some instances, TMLG closed consumers' accounts after advance fees had been paid by informing consumers that they were not eligible for particular programs or other assistance after all, or by telling consumers that their accounts were being closed because they had not provided sufficient paperwork.

**ANSWER:**    Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

31.    In some instances, TMLG refused to refund money to consumers, taking the position that it had done sufficient work to be entitled to the payments received or that the terms of agreements signed by consumers allowed it to keep the money paid.

**ANSWER:**    Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

### CFLG'S BUSINESS PRACTICES

32.    From at least 2011 until July 2012, Defendant Stafford, an attorney licensed in Wisconsin, was the sole owner and operator of CFLG.

**ANSWER:**    Defendant admits that from at least 2011 until July 2012, he was an attorney licensed in Wisconsin, was the manager of CFLG, and no other parties held an interest in CFLG. Defendant denies the remaining allegations in this paragraph.

33.    In July 2012, Macey and Aleman together purchased a 95% interest in CFLG.

**ANSWER:**    Defendant admits that Macey and Aleman became members of CFLG in approximately July 2012 and denies the remaining allegations in this paragraph.

34.    Macey, Aleman, and Stafford have had managerial responsibility for CFLG and have materially participated in the conduct of its affairs, including the development and approval of the purported mortgage assistance relief services complained of herein by, among other things: coordinating "partnerships" with local attorneys in states in which CFLG operated; contracting with entities or individuals who performed certain services for CFLG including, but not limited to, marketing, enrolling consumers in their programs, and providing client support services; responding to regulatory inquiries and consumer complaints; and setting fees, controlling collection of consumer payments, and controlling CFLG's finances.

**ANSWER:**    Defendant admits that Macey, Aleman and Stafford each had managerial responsibility for various aspects of the operations of CFLG, but Defendant denies that any of them had managerial responsibility for all aspects of CFLG's operations.  Defendant denies the remaining allegations in this paragraph.

35.    Macey, Aleman, and Stafford are intimately familiar with and direct CFLG's operations.  Macey, Aleman, and Stafford knew of and approved all of CFLG's practices described in this Complaint.

**ANSWER:**    Defendant lacks information sufficient either to admit or deny the allegations with respect to Macey and Aleman.  Defendant admits that he had managerial responsibility for various aspects of the operations of CFLG, but Defendant denies that he had managerial responsibility for all aspects of CFLG's operations.  Defendant denies the remaining allegations in this paragraph.

36.    CFLG's loan modification services were marketed in a variety of ways including, but not limited to, television and internet advertisements.  The advertisements were directed to consumers who were in financial distress, behind on their mortgage loans, or in danger of losing their homes to foreclosure.

**ANSWER:**    Defendant admits that CFLG maintained a website and denies the remaining allegations in this paragraph.

37.    CFLG's advertisements deceptively suggested that CFLG enjoyed high rates of success in obtaining loan modifications and other foreclosure relief, and misled consumers into believing that they would receive the services of an attorney.  For

example, CFLG's website described CFLG as "one of the most sophisticated consumer protection law firms in the country" with over 100 associate attorneys "insuring the best possible outcome during uncertain times."

**ANSWER:**   Defendant admits that the quoted language appeared on CFLG's website at one time, but denies that the quoted language completely or accurately reflects the information provided to potential clients by CFLG, and denies that its representations were deceptive or misleading.   Defendant denies that any advertising was deceptive.   Defendant denies the remaining allegations in this paragraph.

38.   The website also made representations about the quality of services CFLG would provide, such as: "[w]hile foreclosure scams are rampant, our mortgage relief specialists are some of the highest rated professionals in the field;" and "[CFLG attorneys] have years of experience keeping people in their homes and have a long list of testimonials from people who were on the brink of disaster."

**ANSWER:**   Defendant admits that the quoted language appeared on CFLG's website at one time, but denies that the quoted language completely or accurately reflects the information provided to potential clients by CFLG. Defendant denies the remaining allegations in this paragraph.

39.   CFLG's website also warned consumers about working with the government or non-profit certified housing counselors – which offer free services to distressed homeowners.   The website stated: "[t]here may be non-profit organizations that can assist you in your quest to stop foreclosure proceedings, but that kind of mortgage relief might involve a long wait.   In addition, by not paying you may not have any leverage when something goes wrong or the process drags on for a dangerously long time."

**ANSWER:**   Defendant admits that the quoted language appeared on CFLG's website at one time, but denies that the quoted language completely or accurately reflects the information provided to potential clients by CFLG.   Defendant denies the remaining allegations in this paragraph.

10

40.    Consumers who contacted CFLG were connected with a company representative to discuss their mortgage and financial situation.  The representative made statements aimed at convincing consumers that they were eligible for a loan modification, and that they would obtain a mortgage modification if they hired CFLG.  CFLG staff also indicated to consumers during the intake call that they would be receiving the services of an attorney and that the firm had a high success rate and a special relationship with various lenders.

**ANSWER:**    Defendant lacks knowledge sufficient either to admit or deny the allegations with respect to any other person.  Defendant admits that clients who contacted CFLG were connected with a company representative.  Defendant denies the remaining allegations in this paragraph.

41.    CFLG enrolled at least 2,090 consumers through these practices.

**ANSWER:**    Defendant admits that CFLG accepted clients.  Defendant denies the remaining allegations in this paragraph.

42.    Following the initial intake call, CFLG would send consumers a welcome packet with a cover letter and a Retainer Agreement.

**ANSWER:**    Defendant admits the allegations in this paragraph reflect CFLG's typical practice with respect to its clients.  Defendant denies the remaining allegations in this paragraph.

43.    CFLG's cover letter included a warning to consumers: "[w]hile we will not tell you not to speak to your servicer, we must advise you that to do so is risky.  We have seen several clients hurt by deceptive practices when their servicer calls."

**ANSWER:**    Defendant admits that the quoted language appeared on a CFLG cover letter at one time, but denies that the quoted language completely or accurately reflects the information provided to clients by CFLG.  Defendant denies the remaining allegations in this paragraph.

44.    The cover letter also states "[c]urrently we are seeing many workouts take anywhere from 90-120 days; however, every case is unique…[f]ortunately by using an attorney you have a significant advantage because we are familiar with the process and expedite it through our contacts."

11

**ANSWER:**   Defendant admits that the quoted language appeared on a CFLG cover letter at one time, but denies that the quoted language completely or accurately reflects the information provided to clients by CFLG.  Defendant denies the remaining allegations in this paragraph.

> 45.   Under the terms of its Retainer Agreement, CFLG charged consumers an "Initial Flat Fee Retainer," the amount of which varied but which typically was around $1,195.  This fee was purportedly for an initial review and analysis of the consumer's financial situation, such as a "preliminary underwriting" analysis. Thereafter, CFLG collected a "Monthly Flat Fee Retainer" of around $895, purportedly for continued underwriting analysis, transmission of the loan modification package to the lender, and continued monitoring of the loan modification package review with the lender.

**ANSWER:**   Defendant admits that CFLG frequently collected an initial retainer and charged monthly fees for services rendered in amounts that approximate those alleged.  Defendant denies the remaining allegations in this paragraph.

> 46.   Consumers routinely paid all such fees before any written agreement was reached with the consumer's lender or servicer or before any other mortgage assistance relief was obtained.  After consumers paid CFLG's advance fees, CFLG failed to answer or return consumers' telephone calls and emails and failed to provide updates about the status of consumers' loan modification applications.

**ANSWER:**   Defendant admits that CFLG collected reasonable fees for services rendered. Defendant denies the remaining allegation in this paragraph.

> 47.   After consumers paid CFLG's advance fees, CFLG failed to obtain loan modifications or foreclosure relief for consumers.

**ANSWER:**   Defendant denies the allegations in this paragraph.

> 48.   Consumers report that they did not receive representation by an attorney. Although they may have been assigned an attorney in a nominal sense, they never met with or consulted with any attorney, including any attorney licensed in the state were they reside.

**ANSWER:**   Defendant lacks knowledge sufficient either to admit or deny the allegations in this paragraph.

49.    In some instances, CFLG closed consumers' accounts after advance fees had been paid by informing consumers that they were not eligible for particular programs or other assistance after all, or by telling consumers their accounts were being closed because they had not provided sufficient paperwork.

**ANSWER:**    Defendant admits that not every client proved to be eligible for particular programs or assistance and that some clients failed to provide sufficient paperwork to CFLG. Defendant denies the remaining allegations in this paragraph.

50.    In some instances, CFLG refused to refund money to consumers, taking the position that it had done sufficient work to be entitled to the payments received or that the terms of agreements signed by consumers allowed it to keep the money.

**ANSWER:**    Defendant admits that CFLG accepted reasonable fees for services rendered and expenses.  Defendant denies the remaining allegations in this paragraph.

51.    Since 2012, in the course of conducting business CFLG transferred funds related to loan modification services to TMLG accounts.

**ANSWER:**    Defendant denies the allegations in this paragraph.

## REGULATION O

52.    In 2010, the Federal Trade Commission promulgated the MARS Rule to prohibit unfair and deceptive acts or practices with respect to mortgage loan modification or foreclosure relief services. 16 C.F.R. Part 322.  In the CFPA, Congress transferred rulemaking authority over to the MARS Rule to the Bureau, which recodified the Rule as 12 C.F.R. Part 1015 and designated it "Regulation O."  The Bureau has authority to enforce Regulation O pursuant to 12 U.S.C. §§ 5538(a), 5564.  (References below to "Regulation O" encompass both Regulation O and the MARS Rule.)

**ANSWER:**    Defendant admits that the FTC promulgated the MARS Rule and such rule was re-codified as Regulation O under the CFPA.  Defendant lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.  Defendant denies that the allegations in this paragraph fully or accurately describe the regulation of mortgage loan modification and

foreclosure relief services.  Defendant denies that the MARS Rule or Regulation O apply in any way to Defendant's conduct.  Defendant denies any remaining allegations in this paragraph.

> 53.   Regulation O defines "mortgage assistance relief service" as "any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with …[n]egotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees." 12 C.F.R. § 1015.2 (2011).

**ANSWER:**   Defendant admits that the quoted language appears in Regulation O.  Defendant denies that the quoted language fully or accurately defines the provisions of Regulation O. Defendant lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.  Defendant denies that Regulation O applies in any way to Defendant's conduct.

> 54.   Regulation O defines "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service," other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity.  12 C.F.R. § 1015.2 (2011).

**ANSWER:**   Defendant admits that the quoted language appears in Regulation O.  Defendant denies that the quoted language fully or accurately defines the provisions of Regulation O. Defendant lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.  Defendant denies that Regulation O applies in any way to Defendant's conduct.

> 55.   Defendants are "mortgage assistance relief provider[s]" engaged in the provision of "mortgage assistance relief services" as those terms are defined in Regulation O.  12 C.F.R. § 1015.2 (2011).

**ANSWER:**   Defendant admits that the quoted language appears in Regulation O.  Defendant denies that the quoted language fully or accurately defines the provisions of Regulation O. Defendant lacks knowledge sufficient either to admit or deny any allegations requiring a legal

conclusion.  Defendant denies that Regulation O applies in any way to Defendant's conduct or that Defendant is a "mortgage assistance relief provider" thereunder.

      56.    Regulation O prohibits any mortgage assistance relief service provider from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer that incorporates the offer that the provider obtained from the consumer's dwelling loan holder or servicer.  12 C.F.R. § 1015.5(a) (2011).

**ANSWER:**    Defendant admits that Regulation O contains provisions similar to the allegations in this paragraph.  Defendant denies that the allegations in this paragraph fully or accurately define the provisions of Regulation O.  Defendant lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.  Defendant denies that Regulation O applies in any way to Defendant's conduct.

      57.    Regulation O further prohibits any mortgage assistance relief service provider from representing, expressly or by implication, in connection with the offering or performance of such a services, that a consumer should not contact or communicate with his or her lender or servicer.

**ANSWER:**    Defendant admits that Regulation O contains provisions similar to the allegations in this paragraph.  Defendant denies that the allegations in this paragraph fully or accurately define the provisions of Regulation O.  Defendant lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.  Defendant denies that Regulation O applies in any way to Defendant's conduct.

      58.    Regulation O further prohibits any mortgage assistance relief service provider from misrepresenting, expressly or by implication: (1) the likelihood of negotiating, obtaining, or arranging any represented service or result; (2) the amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result; (3) a consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan; (4) that the consumer will receive legal representation; or (5) the availability, performance, cost, or characteristics of any alternative to for profit mortgage assistance relief services through which the consumer can

15

obtain mortgage assistance relief, including negotiating directly with the dwelling loan holder or servicer, or using any nonprofit housing counselor agency or program. 12 C.F.R. §§ 1015.3(1), (b) (1), (2), (4), (8), (9) (2011).

**ANSWER:**   Defendant admits that Regulation O contains provisions similar to the allegations in this paragraph.  Defendant denies that the allegations in this paragraph fully or accurately define the provisions of Regulation O.  Defendant lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.  Defendant denies that Regulation O applies in any way to Defendant's conduct.

59.   Regulation O further requires any mortgage assistance relief service provider in every consumer-specific commercial communication as defined by 12 C.F.R. § 1015.2 to disclose that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services.  12 C.F.R. 1015.4(b)(1) (2011).

**ANSWER:**   Defendant admits that Regulation O contains provisions similar to the allegations in this paragraph.  Defendant denies that the allegations in this paragraph fully or accurately define the provisions of Regulation O.  Defendant lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.  Defendant denies that Regulation O applies in any way to Defendant's conduct.

60.   Regulation O further provides that it is a violation "for a person to provide substantial assistance or support to any mortgage assistance relief service provider when that person knows or consciously avoids knowing that the provider is engaged in any act or practice that violates" the rule. 12 C.F.R. § 1015.6 (2011).

**ANSWER:**   Defendant admits that the quoted language appears in Regulation O.  Defendant denies that the quoted language fully or accurately defines the provisions of Regulation O.  Defendant lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.  Defendant denies that Regulation O applies in any way to Defendant's conduct.

16

61.     Under section 1097 of the CFPA, 12 U.S.C. § 5538, a violation of Regulation O constitutes an unfair, deceptive, or abusive act or practice under the CFPA, in violation of sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536.

**ANSWER:**     Defendant admits that a violation of Regulation O may constitute a violation of

the CFPA.   Defendant lacks knowledge sufficient either to admit or deny any allegations

requiring a legal conclusion.   Defendant denies that either Regulation O or the CFPA applies in

any way to Defendant's conduct.

### THE CFPA

62.     Sections 1031 and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1)(B), prohibit "covered person[s]" or "service provider[s]" from engaging in any "unfair, deceptive, or abusive act or practice." Section 1036(a)(1)(A) also prohibits "covered person[s]" or "service provider[s]" from "offer[ing] or provid[ing] to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit[ting] any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

**ANSWER:**     Defendant admits that the quoted language appears in the CFPA.   Defendant

denies that quoted language fully or accurately defines the provisions of the CFPA.   Defendant

lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.

Defendant denies that the CFPA applies in any way to Defendant's conduct.

63.     Section 1036(a)(3) of the CFPA further prohibits any person from "knowingly or recklessly provid[ing] substantial assistance to a covered person or service provider in violation of the provisions of section 1031… and notwithstanding any provision of [the CFPA], the provider of such substantial assistance shall be deemed to be in violatin of that section to the same extent as the person to whom such assistance is provided." 12 U.S.C. § 5536(a)(3).

**ANSWER:**     Defendant admits that the quoted language appears in the CFPA.   Defendant

denies that quoted language fully or accurately defines the provisions of the CFPA.   Defendant

lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.

Defendant denies that the CFPA applies in any way to Defendant's conduct.

17

64.     Section 1002(25) defines the term "related person" to mean "any director, officer, or employee charged with managerial responsibility for, or controlling shareholder of," or "any shareholder…or other person… who materially participates in the conduct of the affairs of "a non-bank provider of a consumer financial product or service. 12 U.S.C. § 5481(25)(C). Section 1002(25) further provides that a "related person" shall be "deemed to mean a covered person for all purposes of any provision of Federal consumer financial law." 12 U.S.C. § 5481(25)(B).

**ANSWER:**   Defendant admits that the quoted language appears in the CFPA. Defendant

denies that quoted language fully or accurately defines the provisions of the CFPA. Defendant

lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.

Defendant denies that the CFPA applies in any way to Defendant's conduct.

65.     Defendants are "covered person[s]," service provider[s]" and/or "related person[s]" within the meaning of the CFPA. 12 U.S.C. §§ 5481 (6), 25), (26).

**ANSWER:**   Defendant admits that the quoted language appears in the CFPA. Defendant

denies that quoted language fully or accurately defines the provisions of the CFPA. Defendant

lacks knowledge sufficient either to admit or deny any allegations requiring a legal conclusion.

Defendant denies that the CFPA applies in any way to Defendant's conduct or that Defendant is

a "covered person," "service provider" and/or "related person" thereunder.

## COUNT I

### (Advance Fees in Violation of Regulation O)
### (Defendants TMLG, Macey, Aleman, and Searns)

66.     The allegations in paragraph 1 to 65 are incorporated here by reference.

**ANSWER:**   This Count is not directed against Defendant. To the extent any answer is

required, Defendant incorporates his answers to paragraphs 1 to 65 herein by reference.

67.     In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants TMLG, Macey, Aleman, and Searns have requested or received payment from consumers before those consumers have executed a written agreement with their loan holder or servicer

18

that incorporates any offer obtained by TMLG from the loan holder or servicer, in violation of Regulation O, 12 C.F.R. § 1015.5(a) (2011).

**ANSWER:**   This Count is not directed against Defendant.   To the extent any answer is required, Defendant denies the allegations in this paragraph.

## COUNT II

### (Advance Fees in Violation of Regulation O)
### (Defendants CFLG, Macey, Aleman, and Stafford)

68.   The allegations in paragraph 1 to 65 are incorporated here by reference.

**ANSWER:**   Defendant incorporates his answers to paragraphs 1 to 65 herein by reference.

69.   In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants CFLG, Macey, Aleman and Stafford have requested or received payment from consumers before those consumers have executed a written agreement with their loan holder or servicer that incorporates any offer obtained by CFLG, in violation of Regulation O, 12 C.F.R. § 1015.5(a) (2011).

**ANSWER:**   Defendant denies the allegations in this paragraph.

## COUNT III

### (Representations in Violation of Regulation O)
### (Defendants TMLG, Macey, Aleman, and Searns)

70.   The allegations in paragraph 1 to 65 are incorporated here by reference.

**ANSWER:**   This Count is not directed against Defendant.   To the extent any answer is required, Defendant incorporates his answers to paragraphs 1 to 65 herein by reference.

71.   In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants TMLG, Macey, Aleman and Searns have engaged in making, expressly or by implication, representations that a consumer should not contact or communicate with his or her lender or servicer, in violation of Regulation O, 12 C.F.R. § 1015.3(a) (2011).

**ANSWER:**   This Count is not directed against Defendant.   To the extent any answer is required, Defendant denies the allegations in this paragraph.

## COUNT IV

### (Representations in Violation of Regulation O)
### (Defendants CFLG, Macey, Aleman, and Stafford)

72.     The allegations in paragraphs 1 to 65 are incorporated here by reference.

**ANSWER:**   Defendant incorporates his answers to paragraph 1 to 65 herein by reference.

73.     In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants CFLG, Macey, Aleman, and Stafford have engaged in making, expressly or by implication, representations that a consumer should not contact or communicate with his or her lender or servicer, in violation of Regulation O, 12 C.F.R. § 1015.3(a) (2011).

**ANSWER:**   Defendant denies the allegations in this paragraph.

## COUNT V

### (Misrepresentations in Violation of Regulation O)
### (Defendants TMLG, Macey, Aleman, and Searns)

74.     The allegations in paragraph 1 to 65 are incorporated here by reference.

**ANSWER:**   This Count is not directed against Defendant.   To the extent any answer is required, Defendant incorporates his answers to paragraphs 1 to 65 herein by reference.

75.     In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants TMLG, Macey, Aleman, and Searns have engaged in misrepresenting, expressly or by implication, material aspects of their services, including but not limited to:

    a.     The likelihood of obtaining mortgage loan modifications or accomplishing any other represented service or result, in violation of Regulation O, 12 C.F.R. § 1015.3(b)(1);

    b.     The amount of time it would take to obtain mortgage loan modifications or accomplish any other represented service or result, in violation of Regulation O 12 C.F.R. § 1015.3(b)(2);

    c.     A consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan, in violation of Regulation O, 12 C.F.R. § 1015.3(b)(4); and

    d.     That consumers will receive legal representation, in violation of Regulation O, 12 C.F.R. § 1015.3(b)(8).

20

**ANSWER:**   This Count is not directed against Defendant.   To the extent any answer is required, Defendant denies the allegations in this paragraph and in all subparts thereof.

## COUNT VI

**(Misrepresentations in Violation of Regulation O)**
**(Defendants CFLG, Macey, Aleman, and Stafford)**

76.   The allegations in paragraph 1 to 65 are incorporated here by reference.

**ANSWER:**   Defendant incorporates his answers to paragraphs 1 to 65 herein by reference.

77.   In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants CFLG, Macey, Aleman, and Stafford have engaged in misrepresenting, expressly or by implication, material aspects of their services, including but not limited to:

   a.   The likelihood of obtaining mortgage loan modifications or accomplishing any other represented service or result, in violation of Regulation O, 12 C.F.R. § 1015.3(b)(1);
   b.   The amount of time it would take to obtain mortgage loan modifications or accomplish any other represented service or result, in violation of Regulation O 12 C.F.R. § 1015.3(b)(2);
   c.   A consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan, in violation of Regulation O, 12 C.F.R. § 1015.3(b)(4); and
   d.   That consumers will receive legal representation, in violation of Regulation O, 12 C.F.R. § 1015.3(b)(8).

**ANSWER:**   Defendant denies the allegations in this paragraph and in all subparts thereof.

## COUNT VII

**(Failure to Make Certain Disclosures in Violation of Regulation O)**
**(Defendants TMLG, Macey, Aleman, and Searns)**

78.   The allegations in paragraphs 1 to 65 are incorporated here by reference.

**ANSWER:**   This Count is not directed against Defendant.   To the extent any answer is required, Defendant incorporates his answers to paragraphs 1 to 65 herein by reference.

79.   In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants TMLG, Macey, Aleman and

21

Searns have failed to make the following disclosure in all consumer-specific commercial communications in a clear and prominent manner: "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us (insert amount or method for calculating the amount) for services," in violation of Regulation O, 12 C.F.R. § 1015.4(b)(1).

**ANSWER:**    This Count is not directed against Defendant.   To the extent any answer is required, Defendant denies the allegations in this paragraph.

## COUNT VIII

### (Failure to Make Certain Disclosures in Violation of Regulation O)
### (Defendants CFLG, Macey, Aleman, and Stafford)

80.    The allegations in paragraphs 1 to 65 are incorporated here by reference.

**ANSWER:**    Defendant incorporates his answers to paragraphs 1 to 65 herein by reference.

81.    In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants CFLG, Macey, Aleman and Stafford have failed to make the following disclosure in all consumer-specific commercial communications in a clear and prominent manner: "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us (insert amount or method for calculating the amount) for services," in violation of Regulation O, 12 C.F.R. § 1015.4(b)(1).

**ANSWER:**    Defendant denies the allegations in this paragraph.

## COUNT IX

### (Deceptive Acts and Practices in Violation of CFPA)
### (Defendants TMLG, Macey, Aleman, and Searns)

82.    The allegations in paragraphs 1 to 65 are incorporated here by reference.

**ANSWER:**    This Count is not directed against Defendant.   To the extent any answer is required, Defendant incorporates his answers to paragraphs 1 to 65 herein by reference.

22

83.     In numerous instances in connection with the offering or provision of mortgage assistance relief services, Defendants TMLG, Macey, Aleman, and Searns have engaged in representing, expressly or by implication, that:

    a.     They generally will obtain mortgage loan modifications for consumers or will help them avoid foreclosure;

    b.     They generally will obtain such mortgage assistance relief within a certain time, such as 90 to 120 days; and

    c.     They will provide consumers legal representation.

**ANSWER:**   This Count is not directed against Defendant.   To the extent any answer is required, Defendant denies the allegations in this paragraph and in all subparts thereof.

84.     In truth and in fact, Defendants TMLG, Macey, Aleman, and Searns generally do not obtain mortgage loan modifications for consumers, generally do not help them avoid foreclosure, generally provide no actual mortgage assistance relief within the represented time, and generally do not provide lawyers to provide legal representation for consumers.   These representations are material and likely to mislead a reasonable consumer at the time they were made.

**ANSWER:**   This Count is not directed against Defendant.   To the extent any answer is required, Defendant denies the allegations in this paragraph.

85.     Therefore, Defendants TMLG, Macey, Aleman, and Searns' representations as set forth in Paragraph 83 constitute deceptive acts and practices in violation of sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531,5536.

**ANSWER:**   This Count is not directed against Defendant.   To the extent any answer is required, Defendant denies the allegations in this paragraph.

## COUNT X

### (Deceptive Acts and Practices in Violation of CFPA)
### (Defendants CFLG, Macey, Aleman, and Stafford)

86.     The allegations in paragraphs 1 to 65 are incorporated here by reference.

**ANSWER:**   Defendant incorporates his answers to paragraphs 1 to 65 herein by reference.

87.     In numerous instances in connection with the offering or provision of mortgage assistance relief services, Defendants CFLG, Macey, Aleman, and Stafford have engaged in representing, expressly or by implication, that:

23

      a.     They generally will obtain mortgage loan modifications for consumers or will help them avoid foreclosure;

      b.     They generally will obtain such mortgage assistance relief within a certain time, such as 90 to 120 days; and

      c.     They will provide consumers legal representation.

**ANSWER:**    Defendant denies the allegations in this paragraphs and in all subparts thereof.

88.     In truth and in fact, Defendants CFLG, Macey, Aleman, and Stafford generally do not obtain mortgage loan modifications for consumers, generally do not help them avoid foreclosure, generally provide no actual mortgage assistance relief within the represented time, and generally do not provide lawyers to provide legal representation for consumers.  These representations are material and likely to mislead a reasonable consumer at the time they were made.

**ANSWER:**    Defendant denies the allegations in this paragraph.

89.     Therefore, Defendants CFLG, Macey, Aleman, and Stafford's representations as set forth in Paragraph 83 constitute deceptive acts and practices in violation of sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531,5536.

**ANSWER:**    Defendant denies the allegations in this paragraph.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant Harold Stafford respectfully asks the Court to:  (1) enter judgment in favor of Defendant on each and every count against him; (2) award Defendant his attorneys' fees and costs pursuant to any statutes, contracts, rules and common law; and (3) award Defendant such other relief as is appropriate and just.

## AMENDED AFFIRMATIVE DEFENSES

Pending further investigation and discovery, Defendant Harold Stafford ("Stafford" or "Defendant"), states as follows as his Amended Affirmative Defenses to Plaintiff's Complaint, without assuming the burden of proof where such burden is otherwise placed on Plaintiff pursuant to applicable law.  Defendant's investigation continues, and Defendant reserves the

24

right to amend or supplement its Answer to add any additional affirmative defenses or other defenses as additional information is obtained.

### First Affirmative Defense: 12 C.F.R § 1015.7 Exemption

1.      Defendant is, and at all times relevant to this matter has been, an attorney engaged in the practice of law.

2.      With respect to any and all mortgage assistance relief services provided by him, Defendant provided same as part of his practice of law.

3.      Defendant provided such legal services as a member of a law firm (*i.e.*, CFLG) which complied with all applicable state laws and regulations.

4.      Defendant did not receive any funds from clients prior to performing legal services.

5.      Defendant and his law firm complied with all states laws and regulations applicable to client trust accounts.

6.      Defendant is exempt from the provisions of Regulation O pursuant to 12 C.F.R. 1015.7.

### Second Affirmative Defense: 12 U.S.C. § 5517(e) Exemption

7.      Defendant is, and at all times relevant to this matter has been, an attorney engaged in the practice of law.

8.      With respect to any and all mortgage assistance relief services provided by him, Defendant provided same as part of his practice of law under the laws of Wisconsin, in which state he is licensed to practice law.

9.      The provision of such services was entirely part of, or incidental to, his practice of law.

25

10.     Defendant provided such legal services as a member of a law firm (*i.e.*, CFLG) and he did not provide such services outside of an attorney-client relationship.

11.     Defendant is exempt from the provisions of the CFPA by 12 U.S.C. § 5517(e).

### Third Affirmative Defense: Lack Of Jurisdiction

12.     Defendant is an attorney member in a law firm with member-attorneys located and licensed in every state in which the firm performed legal services and engaged in the practice of law.

13.     Whether their provision of services constituted the practice of law is an issue that must be decided by the authorities empowered to define and regulate the practice of law in each relevant jurisdiction.

14.     Those authorities are, almost always, the states' highest courts, which have exclusive jurisdiction (except as delegated by them) to define and regulate the practice of law.

15.     As such, Defendant respectfully submits this Court does not have jurisdiction (or, as a matter of comity, should decline to exercise jurisdiction) to adjudicate whether Defendant was engaged in the valid practice of law.

### Fourth Affirmative Defense: Statute Of Limitations

16.     Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation, including the limitation provision of 12 U.S.C. § 5564(g)(1).

### Fifth Affirmative Defense: Failure To State A Claim

17.     The claims set forth in the Complaint fail to state a claim upon which relief can be granted.

26

**Sixth Affirmative Defense: Invalid Regulations**

18.     To the extent Regulation O purports to narrow the attorney exemption under 12 U.S.C. § 5517(e), or purports to increase the scope of personal liability for corporate officers, directors, employees, or agents beyond that contemplated in the CFPA, such regulation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and exceeds the scope of authority conferred upon the CFPB by Congress and the regulation should be declared unlawful and invalid and set aside under 5 U.S.C. § 706.

**Seventh Affirmative Defense: Consumers' Failure To Mitigate**

19.     To the extent consumers may have suffered any pecuniary loses, a fact which Defendant denies, Plaintiff's request for restitution on behalf of such consumers is barred in whole or in part by the consumers' failure to mitigate their alleged damages.

**Eighth Affirmative Defense: Superseding Cause For Consumer Damages**

20.     If consumers suffered damages, which Defendant denies, those alleged damages were the result of some superseding cause and have no causal relationship or connection with any act or omission by Defendant.

**Ninth Affirmative Defense: Waiver**

21.     To the extent consumers (or states of regulatory bodies on behalf of consumers) have already entered into settlement agreements, releases, and/or waiver of claims agreements with respect to Defendant's provision of services, such consumers have waived their right to receive the restitution Plaintiff seeks on their behalf.

**Tenth Affirmative Defense: Satisfaction Of Consumers' Claims**

22.     To the extent consumers have already entered into settlement agreements, received judgments, or received refunds or payments in full or partial satisfaction of any claims

27

they may have against Defendants, such consumers are not entitled to receive the restitution Plaintiff seeks on their behalf.

### Eleventh Affirmative Defense: The CFPB Is Unconstitutional

23.     The CFPB as a federal agency is unconstitutional and therefore cannot sustain this action and lacks standing.   The CFPB does not have constitutionally required political accountability through presidential removal or Congressional appropriations.  For example, the CFPB's Director is protected from the President's at-will removal powers and the CFPB's operating budget is not subject to Congressional oversight or budget appropriations.  Further, the statutes creating the CFPB limit judicial review over CFPB actions.  Accordingly, the underlying statutory and regulatory authority upon which the complaint has been filed and the current action as prosecuted, is illegal, unconstitutional, and a violation of Defendant's procedural and substantive due process rights.

### Twelfth Affirmative Defense: Estoppel And Waiver

24.     To the extent the CFPB's claims allege statements, representations, or omissions that are not contained in consumers' retention agreements, the CFPB is barred and estopped from brining such claims (or such claims are waived) because those retention agreements are fully integrated and disclaim any extra-contractual representations.

**WHEREFORE**, Defendant Harold Stafford, respectfully asks the Court to:  (1) enter judgment in favor of Defendant on each and every count against him; (2) award Defendant his attorneys' fees and costs pursuant to any statutes, contracts, rules and common law; and (3) award Defendant such other relief as is appropriate and just.

Dated: December 31, 2014                              Respectfully submitted,

                                                                              /s/ Kaitlyn Anne Wild

Douglas M. Poland
Godfrey & Kahn, S.C.
1 East Main St., Suite 500
Madison, WI 53703
608-257-3911
dpoland@gklaw.com

Timothy D. Elliott (*Pro Hac Vice*)
Kaitlyn Anne Wild
Jordan R. Franklin (*Pro Hac Vice*)
Rathje & Woodward, LLC
300 E. Roosevelt Rd., Suite 300
Wheaton, IL 60187
630-668-8500
telliott@rathjewoodward.com
kwild@rathjewoodward.com
jfranklin@rathjewoodward.com

## CERTIFICATE OF FILING & SERVICE VIA CM/ECF

I, Kaitlyn Anne Wild, an attorney, do hereby certify that on December 31, 2014, I electronically filed the above document with the clerk of the court by using the CM/ECF system. I further certify that a notice of electronic filing related to the above document was sent to all counsel of record.

Dated:  December 31, 2014                    /s/ Kaitlyn Anne Wild