IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CONSUMER FINANCE
PROTECTION BUREAU,                                            OPINION AND ORDER

                    Plaintiff,                                              14-cv-513-bbc

          v.

THE MORTGAGE LAW GROUP, LLP,
CONSUMER FIRST LEGAL GROUP, LLC,
THOMAS G. MACEY, JEFFREY J. ALEMAN,
JASON E. SEARNS and HAROLD E. STAFFORD,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

          Plaintiff Consumer Finance Protection Bureau brought this action against two defunct

firms and four lawyers associated with those firms, alleging violations of the Consumer

Financial Protection Act of 2010 and 12 C.F.R. part 215, which is commonly called

Regulation O.  Specifically, plaintiff alleges that while providing mortgage relief services to

more than 6,000 consumers in 39 states, defendants The Mortgage Legal Group, LLP and

Consumer First Legal Group, LLC made misrepresentations about their services, in violation

of Regulation O and the Consumer Financial Protection Act; failed to make certain

disclosures required by Regulation O; and collected advance fees in violation of Regulation

O.  Plaintiff contends that defendants Thomas G. Macey, Jeffrey J. Aleman, Jason E. Searns

and Harold E. Stafford are liable because they either participated directly in the illegal acts

or had the authority to control the actions of the corporate defendants.  Before the court are

1

the cross motions for summary judgment filed by plaintiff and defendants Consumer First Legal Group, LLC, Thomas G. Macey, Jeffrey J. Aleman, Jason E. Searns and Harold E. Stafford.  Dkt. ##83 and 96.  Defendant The Mortgage Law Group, LLC has not filed an answer to the complaint or taken any other action in its defense.  (Plaintiff explains that The Mortgage Law Group filed a voluntary Chapter 7 bankruptcy petition that is pending in the United States Bankruptcy Court for the Northern District of Illinois, but the automatic stay provision of the bankruptcy code, 11 U.S.C. §§ 362(a) and (b)(4), does not stay the bureau's action because it falls within the police and regulatory power exception to the stay.  Dkt. #118 at 10 n.1 (CM/ECF numbering).)  Therefore, unless I specify otherwise, I will use the term "defendants" in this opinion to refer only to defendants Consumer First Legal Group, Macey, Aleman, Searns and Stafford and not The Mortgage Law Group.

In their motion for summary judgment, defendants contend that Regulation O is invalid as applied to attorneys because (1) it authorizes plaintiff to determine whether particular attorneys are practicing law and complying with state laws and regulations governing attorney conduct and client  trust accounts as part of its determination whether the attorneys have violated Regulation O, although Congress did not give plaintiff the authority to regulate attorneys; and (2) the regulation is arbitrary and capricious under the Administrative Procedures Act, 5 U.S.C. § 706(2)(A).  In the alternative, defendants argue that they qualify for the exemption for attorneys in both Regulation O and the Consumer Financial Protection Act.  Finally, defendants contend that defendants Macey, Aleman, Searns and Stafford cannot be held liable as individuals for the acts of defendants Consumer

2

First Legal Group and The Mortgage Law Group.   Plaintiff has moved for summary judgment with respect to (1) all of their statutory and regulatory claims against defendants and (2) defendants' affirmative defense related to the attorney exemption.

Defendants' motion for summary judgment with respect to the validity of Regulation O will be granted in part.  Although I conclude that Regulation O as applied to licensed attorneys not engaged in the practice of law in subsections (a)(1) and (2) of 12 C.F.R. § 1015.7 is a valid exercise of plaintiff's rulemaking authority under the Consumer Protection Act, I find that plaintiff exceeded its rulemaking authority in promulgating subsections (a)(3) and (b) of § 1015.7.  Because the parties have not addressed the effect of partial invalidation of the regulation on the attorney exemption or the regulation as a whole, I will give them an opportunity to do so.

Although it is not possible to rule on most of the remaining issues raised in the parties' motions for summary judgment until I make a final decision on the validity of Regulation O, there is one issue that I can resolve.  In particular, the parties dispute who has the burden of proof with respect to whether defendants qualify for the attorney exemption in the Consumer Protection Act and any remaining exemption in Regulation O.  I conclude that this burden lies with defendants as proponents of the exemption and will grant plaintiff's motion for summary judgment solely with respect to the burden of proof issue. Because defendants assumed the burden was on plaintiff and did not analyze the application of the exemption under applicable state law, further briefing is required on this issue as well. The parties' motions for summary judgment with respect to all other issues will be denied

without prejudice.  After I determine whether Regulation O remains valid in whole or in part and whether defendants qualify for the attorney exemption under the Consumer Protection Act and possibly Regulation O, I will allow the parties to renew their motions for summary judgment on any issues that remain relevant in this case.

This decision to allow supplemental briefing makes the February 16, 2016 trial date unworkable.  Accordingly, I will strike the trial date and the deadlines with respect to Rule 26 disclosures and motions in limine.  After I resolve the parties' motions for summary judgment, I will set a new schedule for the remainder of the case.

OPINION

A.  <u>Background</u>

On June 21, 2010, in the wake of the 2008 financial crisis, Congress passed the Dodd–Frank Wall Street Reform and Consumer Financial Protection Act of 2010, Pub. L. 111–203, § 1097, 124 Stat. 1376 (July 21, 2010), to address the regulatory system's failure to protect consumers of financial services.  J. Martin Page, Tyler S. Gregg, Chris T.G. Trusk, "CFPB Enforcement Actions Against Law Firms," S.C. Law., November 2015, at 32.  During the period leading up to the crisis, "federal oversight of consumer finance was a patchwork spread out among seven different agencies" that did not have "the jurisdiction or tools necessary to ensure that consumer financial markets functioned well."  Leonard J. Kennedy, Patricia A. McCoy & Ethan Bernstein, "The Consumer Financial Protection Bureau: Financial Regulation for the Twenty-First Century," 97 Cornell L. Rev. 1141, 1145 (2012).

To help rectify this problem, Congress created the Consumer Financial Protection Bureau (the plaintiff in this case), 12 U.S.C. § 5491(a), and gave it rulemaking authority "with respect to mortgage loans" that "relate to unfair or deceptive acts or practices," including those "involving loan modification and foreclosure rescue services." 12 U.S.C. § 5538(a)(1). Effective July 21, 2011, the Consumer Protection Act transferred authority over several existing consumer laws from other agencies to plaintiff.  Designated Transfer Date, 75 FR 57252-02, 57253 (Sept. 20, 2010) ("[C]ertain authorities will transfer from other agencies to the CFPB, and the CFPB will be able to exercise certain additional, new authorities under the Act and other laws.").  One of the laws over which plaintiff gained authority is § 626 of the Omnibus Appropriations Act of 2009, Pub. L. No. 111-8, § 626, 123 Stat. 524 (Mar. 11, 2009), which directed the Federal Trade Commission to issue rules related to mortgage loans.  12 U.S.C. § 5481(12).  Plaintiff inherited many standards and regulatory concepts from the Federal Trade Commission and was given the power to enforce a number of its rules.  12 U.S.C. § 5581(b)(5); 1 The Law of Debtors and Creditors § 1:9 (Nov. 2015); Kennedy, McCoy & Bernstein, at 1149.

Before plaintiff's authority under the Consumer Protection Act became effective, the Federal Trade Commission exercised its rulemaking authority under the Omnibus Act and issued the Mortgage Assistance Relief Services rule, commonly known as the MARS rule. Final Rule, 75 Fed. Reg. 75092 (December 1, 2010) (to be codified at 16 C.F.R. part 322). In its notice of proposed rulemaking, the Federal Trade Commission explained that

> Many consumers who have been unable to obtain assistance have turned to
> MARS [mortgage assistance relief service] providers.  These for-profit

companies have widely promoted their ability to help consumers in negotiating with lenders or servicers and in taking other steps to prevent foreclosure.  Responding to consumer demand, these providers focus their advertising mainly on their capacity to obtain mortgage loan modifications as opposed to other forms of foreclosure relief, such as a short sale or loan forbearance. . . .

Typically, MARS providers charge consumers advance fees in the thousands of dollars.  Some providers collect their entire fee at the beginning of the transaction, and others request two to three large installment payments from consumers. . . .

Mortgage Assistance Relief Services, NPRM, 75 Fed. Reg. 10707-01, 10709-10711 (Mar. 9, 2010).  To address these concerns, the Commission issued a final MARS rule requiring mortgage relief service providers to make certain disclosures to consumers, barring them from making certain representations to consumers and preventing them from collecting advance fees until the consumer had executed a written agreement with his or her lender incorporating the offer of mortgage assistance relief.  Final Rule, 75 Fed. Reg. at 75128.

The Federal Trade Commission also noted in its proposed rulemaking that

[A] growing number of MARS providers are employing or affiliating with lawyers.  The providers often tout the expertise of these attorneys in negotiating with lenders and servicers. In some cases, MARS providers also offer "forensic audits," purported reviews of mortgage loans to determine lender and servicer compliance with federal and state law, thereby supposedly helping the consumer to acquire the leverage needed to obtain better loan modifications.  Providers also may use their relationship with attorneys to assert that they are not covered by state laws that prohibit non-attorneys from collecting advance fees for loan modification services. . . .

The FTC has extensive law enforcement experience with MARS providers.  In the past two years, the Commission has filed 28 law enforcement actions against providers of loan modification and foreclosure rescue services.  This extensive law enforcement experience, as well as the information received in response to the ANPR [advanced notice of proposed rulemaking], strongly suggests that the deceptive practices of MARS providers are widespread and

6

are causing substantial harm to consumers. MARS providers often misrepresent the services that they will perform and the results they will obtain for consumers. Indeed, providers frequently fail to perform even the most basic of promised services. As a result, consumers not only lose the thousands of dollars they pay to the providers, but may also lose their homes.

*   *   *

In addition, some MARS providers make the specific claim that they offer legal services, when, in fact, no attorneys are employed at the company or, even if there are, they do little or no legal work for consumers. The Commission's law enforcement experience, state law enforcement, the comments received in response to the ANPR, and state bar actions indicate that a growing number of attorneys themselves are engaged in deceptive and unfair practices in the marketing and sale of MARS.

NPRM, 75 Fed. Reg. at 10710-10712. However, the Commission also recognized that legal counsel may be valuable to some consumers. Id. at 10723. Therefore, after soliciting notice and comment, it published a final rule adopting a limited exemption from all provisions of the rule, except for the ban on advance fees, if the attorney:

(1) Provides mortgage assistance relief services as part of the practice of law;

(2) Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located; and

(3) Complies with state laws and regulations that cover the same type of conduct the rule requires.

Final Rule, 75 Fed. Reg. 75092-01, § 322.7(a). In addition, an attorney who met the above conditions was exempt from the ban on advance fees if the attorney:

(1) Deposits any funds received from the consumer prior to performing legal services in a client trust account; and

(2) Complies with all state laws and regulations, including licensing regulations, applicable to client trust accounts.

7

Id. at § 322.7(b).

Slightly more than a year later, on December 16, 2011, plaintiff republished the MARS rule as Regulation O at 12 C.F.R. part 1015.  16 C.F.R. § 322.1 (noting April 13, 2012 rescission of MARS rule).  Regulation O banned the same deceptive practices as the MARS rule and carved out the same limited exemption for attorneys.  12 C.F.R. §§ 1015.3 - 1015.7.

## B. Legal Standard

The parties agree that to determine an agency's rulemaking authority with respect to a statute that it administers, courts apply the familiar analysis set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  City of Arlington, Texas v. F.C.C., 133 S. Ct. 1863, 1871 (2013) (holding Chevron applies to question whether statutory text forecloses agency's assertion of authority); Food & Drug Administration v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000); CE Design, Ltd. v. Prism Business Media, Inc., 606 F.3d 443, 447 (7th Cir. 2010).  Under Chevron, a reviewing court must first ask "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842.  If Congress has done so, the inquiry is at an end and the court "must give effect to the unambiguously expressed intent of Congress."  Id. at 843.  However, "if the statute is silent or ambiguous with respect to the specific issue," the court looks to the agency's regulations to determine whether they are based on a reasonable construction of the statute.  CE Design, 606 F.3d at 447 (quoting Chevron, 467 U.S. at 842–43).

Under the second prong of the <u>Chevron</u> analysis, courts defer to the agency's interpretation unless it is arbitrary, capricious, an abuse of discretion or otherwise contrary to the statute. <u>United States v. Mead Corp.</u>, 533 U.S. 218, 228-29 (2001) (citing <u>Chevron</u>, 467 U.S. at 843-45); <u>Arnett v. C.I.R.</u>, 473 F.3d 790, 793 (7th Cir. 2007). The Administrative Procedures Act, 5 U.S.C. § 706(2)(A), provides a similar standard of review, requiring that a court "hold unlawful and set aside agency action" where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." <u>Judulang v. Holder</u>, 132 S. Ct. 476, 489 n.7 (2011) (noting that arbitrary and capricious analysis under Administrative Procedures Act is same as under <u>Chevron</u> step two). This is a narrow standard of review under which the court determines whether the agency considered the relevant factors or made a "clear error of judgment." <u>Id.</u>; <u>Black v. Educational Credit Management Corp.</u>, 459 F.3d 796, 799-800 (7th Cir. 2006) (internal citations omitted). "That task [under step two] involves examining the reasons for agency decisions—or, as the case may be, the absence of such reasons." <u>Judulang</u>, 132 S.Ct. at 484. "If the agency 'articulate[s] grounds indicating a rational connection between the facts and the agency's action, then our inquiry is at an end.'" <u>Black</u>, 459 F.3d at 799-800 (quoting <u>Head Start Family Education Program, Inc. v. Cooperative Educational Services Agency 11</u>, 46 F.3d 629, 633 (7th Cir. 1995)).

"Even under this deferential standard, however, 'agencies must operate within the bounds of reasonable interpretation.'" <u>Michigan v. Environmental Protection Agency</u>, 135 S. Ct. 2699, 2707 (2015) (<u>Utility Air Regulatory Group v. Environmental Protection Agency</u>, 134 S. Ct. 2427, 2442 (2014)). An agency action falls short of this standard where

it "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." United States v. P.H. Glatfelter Co., 768 F.3d 662, 670 (7th Cir. 2014) (internal quotations and citations omitted).

## C.  Source and Scope of Plaintiff's Authority

Defendants argue in a footnote that because the Consumer Protection Act "simply transferred pre-existing rules and rulemaking authority to plaintiff," Congressional authorization for the regulation of attorneys must be found in the Omnibus Act, which authorized the original MARS rule, and not in the Consumer Protection Act. Dkt. #113 at 18 n.3.  See also dkt. #130 at 9 n.2 (arguing that plaintiff adopted MARS rule verbatim, statutory authority is Omnibus Act and not Consumer Protection Act).   However, defendants have not developed this argument or cited any authority in support of it. Massuda v. Panda Express, Inc., 759 F.3d 779, 783 (7th Cir. 2014) (Court of Appeals for Seventh Circuit has held repeatedly that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").  Even if defendants had not waived their argument, I would not find it persuasive.  As explained in more detail below, I agree that the transfer of pre-existing authority in the Consumer Protection Act makes the Omnibus Act a source of plaintiff's rulemaking and enforcement authority. However, the Consumer Protection Act also expressly grants plaintiff general rulemaking

10

authority over mortgage loan modification services and places specific limits on that authority.  12 U.S.C. § 5538(a)(1).

In addition to giving plaintiff general rulemaking authority, the Consumer Protection Act contains a specific "exclusion for [the] practice of law":

> Except as provided under paragraph (2), the bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law.

12 U.S.C. § 5517(e)(1).  However, the Act identifies three exceptions or "rules of construction" that allow plaintiff to regulate attorneys under certain circumstances. § 5517(e)(2) and (3).

First, the Act provides that the limitation in § 5517(e)(1) "shall not be construed so as to limit the exercise by the Bureau of any supervisory, enforcement, or other authority regarding the offering or provision of a consumer financial product or service" that "is not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship." § 5517(e)(2)(A).  Therefore, as two other district courts have found, plaintiff could bring suit against a law firm engaged in the provision of financial products or services that are not part of its legal representation of its clients.  Consumer Financial Protection Bureau v. ITT Educational Services, Inc., 2015 WL 1013508, at *24 n.29 (S.D. Ind. Mar. 6, 2015).  For example, "an attorney who engages in pure debt collection activity, completely outside of the practice of law, would be susceptible to the Bureau's authority."  Consumer Financial Protection Bureau v. Frederick J. Hanna & Associates, P.C., __ F. Supp. 3d __, 2015 WL 4282252, at *5 (N.D. Ga. July 14, 2015).

11

Second, the limitation in § 5517(e)(1) does not apply to a consumer financial product or service "that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service." § 5517(e)(2)(B).  For example, in <u>Frederick J. Hanna</u>, the court found that the Act did not bar the bureau's claims against a creditor's rights law firm because the debt-collection acts of filing a breach of contract lawsuit and litigating that suit are acts the firm performed for its creditor clients "with respect to" consumers who themselves did "not receive[ ] legal advice or services from the attorney." 2015 WL 4282252, at *6.

Third, the Act provides that "[p]aragraph (1) shall not be construed to limit the authority of the Bureau with respect to any attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer laws or the authorities transferred under subtitle F or H." § 5517(e)(3).  As noted above, § 626 of the Omnibus Act of 2009 was one of the "enumerated consumer laws" transferred to plaintiff from the Federal Trade Commission.  Therefore, plaintiff's authority to regulate attorneys under this exception depends on the authority that the Federal Trade Commission had to regulate attorneys under the Omnibus Act.

It is within these exceptions that plaintiff seeks to find authority for the following requirements in Regulation O related to attorneys:

(a) An attorney is exempt from this part, with the exception of [the ban on advance fees in] § 1015.5, if the attorney:

(1)  Provides mortgage assistance relief services as part of the practice of law;

(2)  Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located; and

(3)  Complies with state laws and regulations that cover the same type of conduct the rule requires.

(b) An attorney who is exempt pursuant to paragraph (a) of this section is also exempt from § 1015.5 if the attorney:

(1)  Deposits any funds received from the consumer prior to performing legal services in a client trust account; and

(2)  Complies with all state laws and regulations, including licensing regulations, applicable to client trust accounts.

12 C.F.R. § 1015.7.  Thus, although plaintiff exempts many attorneys from the provisions of Regulation O, it seeks to regulate any attorney who (1) provides mortgage relief services outside the practice of law; (2) is not licensed in the state in which the consumer is located; (3) does not comply with state laws covering the same conduct as the regulation; or (4) requests and receives "advanced fees" from a consumer but fails to deposit the consumer funds in a trust account prior to performing legal services or fails to comply with state trust account laws and regulations.  (Section 1015.5(a) of Regulation O prohibits mortgage assistance relief service providers from requesting or receiving any compensation before the consumer has executed a written mortgage assistance relief agreement between the consumer and the consumer's loan holder or servicer.)

Because defendants do not develop a specific argument concerning plaintiff's authority with respect to the exemption's requirement that an attorney be licensed in the state in which the consumer is located, I will not address that provision and consider defendants to have waived any arguments concerning its validity.  I will discuss separately

the provisions of the exemption related to an attorney's provision of services outside the practice of law and compliance with state laws and regulations covering the same type of conduct the rule requires and applicable to client trust accounts.

### D.  Attorneys Not Practicing Law

The Consumer Protection Act grants plaintiff express authority to regulate attorneys providing mortgage assistance relief services outside the practice of law.  Section 5517(e)(2)(A) states that the general exemption for attorneys in § 5517(e)(1) "shall not be construed so as to limit" plaintiff's authority to regulate products or services "that [are] not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship."  Regulation O's requirement that attorneys be practicing law in order to qualify for an exemption is consistent with the statutory mandate.

Because defendants look to the Omnibus Act as the sole source of plaintiff's authority, they say very little about the Consumer Protection Act, noting only that the three "narrow" exceptions to the Act's broad exclusion for attorneys do not apply to the services they provided to consumers.  Dkt. #113 at 25-26 and n.4 (CM/ECF numbering).  However, in determining whether plaintiff has the authority to regulate the activities of attorneys outside the practice of law, it is not relevant whether defendants in this case were practicing law.

Defendants also contend that plaintiff overstepped its authority by creating a new federal common law standard for determining who is and who is not practicing law that

bears no rational relationship to the state rules of professional conduct that traditionally govern the practice of law.  E.g., dkt. #126 at 14-16 (CM/ECF numbering).  They point out that states have "an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses" and "traditionally have exercised extensive control over the professional conduct of attorneys."  Middlesex Ethics Commission v. Garden State Bar Association, 457 U.S. 423, 434 (1982).

Regulation O does not define any standard for the practice of law and refers to state licensing requirements.  In promulgating the original MARS rule, the Federal Trade Commission recognized that "activities that constitute the 'practice of law' . . . may vary based on state laws and licensing regulations, as interpreted by state courts and state bars" and stated that the "practice of law" would be "interpreted by the jurisdiction where the consumer or the consumer's dwelling is located."  Final Rule, 75 Fed. Reg. at 75130-31.  Defendants seem concerned that in interpreting and applying state law, federal courts will develop their own common law definition of the practice of law that is distinct from that developed by state courts and bar associations.  However, the fact that a federal court may have to interpret or apply state law in determining whether an attorney is subject to Regulation O does not mean that plaintiff has created "a new federal common law standard" for the practice of law.  Federal courts routinely apply and interpret state law in diversity cases without creating a federal standard that displaces state law.

E.  Compliance with State Laws and Regulations

As an initial matter, it is important to look at what the regulation requires with respect to state laws and regulations.  To be exempt from the regulation, attorneys otherwise engaged in the practice of law must comply with state laws and regulations "covering the same type of conduct the rule requires."  12 C.F.R. § 1015.7(a)(3).  Although the regulation seems to be referring to state requirements concerning prohibited misrepresentations and required disclosures in the provision of mortgage assistance relief services, both parties assume that it includes the requirement that attorneys comply with state rules of professional conduct.  Dfts.' Br., dkt. #113 at 29-31 (CM/ECF numbering); Pltf.'s Opp. Br., dkt. #118 at 49-50 (CM/ECF numbering).  Plaintiff states that the Federal Trade Commission "has explained what compliance with state laws and regulations means in the context of this provision" and "provided specific and concrete examples of potential violations."  Dkt. #118 at 49-50. Specifically, in promulgating the final MARS rule, the Commission explained that to qualify for the exemption, "attorneys must comply with all relevant state laws and licensing regulations governing their conduct," including those relating to "(1) [c]ompetent and diligent representation of clients; (2) disclosure of material information regarding their services to clients; (3) the accuracy of representations of material aspects of their legal services; (4) the request, receipt, handling, and distribution of fees from clients; and (5) prohibitions on fee-splitting with non-attorneys or aiding others in the unauthorized practice of law."  Final Rule, 75 Fed. Reg. 75092-01, 75131.  "Examples of activities that may be in violation of state laws and regulations, and thus would render attorneys ineligible for the exemption, include: (1) Failing to work diligently and competently on behalf of clients, i.e., not taking reasonable

16

efforts to obtain mortgage assistance relief; (2) neglecting to keep clients reasonably informed as to the status of their matters, including the potential for adverse outcomes; (3) misrepresenting any material aspect of the legal services, including the likelihood they will achieve a favorable result, an affiliation with a government agency, or the cost of their services; (4) sharing legal fees for MARS-related services with non-attorneys; (5) forming partnerships with non-attorneys in connection with offering MARS; and (6) aiding MARS providers in engaging in the unauthorized practice of law, i.e., providing legal services without a license to do so." Id. at 75132 (citing various Model Rules of Professional Conduct). As a result, both the Federal Trade Commission and plaintiff have construed "state laws and regulations covering the same type of conduct the rule requires" as including state rules of professional conduct for attorneys.

Section 1015.7(b) of Regulation O similarly requires attorneys seeking an exemption from the advance fee prohibition to comply with state laws, regulations and licensing requirements applicable to client trust accounts and to deposit advance fees in client trust accounts, even if they are not otherwise required to do so.

1. Chevron step one analysis: Congress's grant of authority

Defendants correctly note that Congress did not say anything about plaintiff having the authority to require licensed attorneys who are practicing law to comply with state laws regarding mortgage assistance relief services or client trust accounts. In fact, as a general rule, the Consumer Protection Act prohibits plaintiff from regulating any activities engaged in by an attorney as part of the practice of law—this would include an attorney's conduct in the

17

attorney-client relationship and the use of client trust fund accounts.  Plaintiff does not argue and it is clear from a review of the Consumer Protection Act that determining whether an attorney's *conduct* complies with state law is not related to determining whether the attorney is *practicing* law.  In other words, an attorney who is providing services as part of the practice of law may be violating state rules concerning client interactions or trust accounts.

Even though subsections (a)(3) and (b) of § 1015.7 are in direct conflict with the Consumer Protection Act's general prohibition against regulating attorneys engaged in the practice of law, 12 U.S.C. § 5517(e)(1), plaintiff seems to believe that it has authority for these requirements under the third exception listed in the Act that states that its authority is not limited "with respect to any attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer laws or the authorities transferred under subtitle F or H." § 5517(e)(3).  As mentioned above, § 626 of the Omnibus Act is one of the enumerated consumer laws under which plaintiff inherited authority from the Federal Trade Commission.

The Omnibus Act is silent with respect to the Commission's authority to regulate attorneys, but it authorized the Commission to promulgate a rule to address mortgage lending practices and provided that any violation of the rule would be treated as a violation of a rule under § 18 of the Federal Trade Commission Act, 15 U.S.C. § 57(a).  Pub. L. No. 111-8, § 626, 123 Stat. at 678.  A few months later, Congress clarified this provision in the Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111–24, § 511(a)(1)(B), 123 Stat. 1734 (May 22, 2009), by specifying that the rulemaking shall relate to unfair or deceptive practices regarding mortgage loans, including loan modification and foreclosure rescue services.  The Credit Card Act also states that § 626 of the Omnibus Act did

not authorize the Commission to promulgate a rule "with respect to any entity that is not subject to enforcement of the Federal Trade Commission Act (15 U.S.C. § 41 et seq.)." <u>Id.</u> at § 511(a)(1)(C), 123 Stat. at *1764.  The Federal Trade Commission Act empowers the Commission to prevent "persons, partnerships, or corporations" from using unfair or deceptive acts or practices in or affecting commerce.  15 U.S.C. § 45(a)(2).  Although the Federal Trade Commission Act expressly excludes certain entities (such as banks and credit unions) from the Commission's jurisdiction, the Act does not say anything regarding the Commission's jurisdiction over attorneys.  15 U.S.C. §§ 44 and 45(a)(2).

Thus, says plaintiff, it inherited the Federal Trade Commission's express and unlimited authority to regulate attorneys under the Omnibus Act, which presumably includes the authority to require attorneys to comply with state professional rules and trust account requirements in order to qualify for an exemption.  Plaintiff also points out that because Congress enacted the Consumer Protection Act after the Federal Trade Commission issued its notice of proposed rulemaking on the MARS rule, Congress's decision to classify the Omnibus Act as an enumerated consumer law suggests that Congress approved of the Commission's limited exemption for attorneys.

However, plaintiff fails to explain why Congress would prohibit plaintiff from regulating attorneys engaged in the practice of law and then create an exception that swallows that general prohibition.  It is clear from the Consumer Protection Act that Congress did not want plaintiff to regulate the activities of attorneys if those activities were part of the practice of law.  Interpreting the exception in § 5517(e)(3) as granting plaintiff authority to regulate an attorney's professional conduct violates the clear mandate against regulating attorneys engaged

in the practice of law.  The Supreme Court has emphasized that agencies "must operate within the bounds of reasonable interpretation" and "reasonable statutory interpretation must account for both the specific context in which . . . language is used and the broader context of the statute as a whole."  Utility Air Regulatory Group, 134 S. Ct. at 2442 (internal citations omitted).  "A statutory 'provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.'"  Id. (quoting United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371 (1988)).

2.  Arbitrary and capricious analysis under Chevron step two and Administrative Procedures Act

Even if the interplay between the prohibition in § 5517(e)(1) and the exception in (e)(3) can be considered ambiguous with respect to plaintiff's authority to regulate an attorney's compliance with state licensing and trust account requirements, I agree with defendants that plaintiff's decision to engage in this regulating is not subject to deference under step two of the Chevron analysis and the Administrative Procedures Act.  Utility Air Regulatory Group, 134 S. Ct. at 2442 ("[A]n agency interpretation that is 'inconsisten[t] with the design and structure of the statute as a whole' does not merit deference.") (quoting University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2529 (2013)).  As defendants point out, Congress never intended plaintiff to address attorney conduct within the attorney-client relationship.  Both the Consumer Protection Act and the Omnibus Act, as

clarified by the Credit Card Act, provide rulemaking authority only with respect to unfair or deceptive mortgage loan practices.  An attorney's violation of a state rule of professional conduct or regarding client trust accounts does not automatically equate to an unfair or deceptive mortgage loan practice.

In an attempt to show that requiring attorneys to comply with a broad range of state laws and regulations is related to the regulation of mortgage assistance relief services, plaintiff cites statements that the Federal Trade Commission made in promulgating the final MARS rule:

> The record in this proceeding demonstrates that many attorneys involved in the provision of MARS have engaged in practices that violate one or more aspects of the applicable state laws or licensing regulations.
>
> \*     \*     \*
>
> Some state bars have initiated an increasing number of investigations of attorneys who provide MARS and, in many instances, have brought misconduct cases against them.
>
> \*     \*     \*
>
> Nevertheless, many state bars have limited resources for investigating and taking action against unethical attorneys involved in providing MARS. State bars also typically respond only to client and competitor complaints rather than actively monitoring and investigating possible violations on their own initiative. As a result, as the record demonstrates, numerous attorneys have engaged and continue to engage in unfair or deceptive practices in the provision of MARS without states taking action against them. The Commission encourages all state courts and bars to follow the example of states like Florida and California and aggressively enforce their laws and regulations covering attorneys who provide MARS as part of the practice of law. The record demonstrates, however, that the threat of bar sanctions has not been a sufficient deterrent to attorney misconduct in the sale or provision of MARS, and thus it is necessary to cover certain conduct of attorneys under the Final Rule.

Final Rule, 75 Fed. Reg. at 75131-32.  The Commission also explained that "a blanket exemption from the advance fee ban for attorneys is unwarranted and would not adequately protect consumers" in light of "the frequency with which attorneys, and those affiliated with attorneys, have engaged in unfair and deceptive practices in connection with MARS." Id. at 75133.  Although the rationale for the rule is well-meaning, plaintiff has not shown that Congress intended either plaintiff or the Commission to act as a federal version of the state bar authorities.  It would not be reasonable to assume that either agency could or should perform that function.  Neither the Federal Trade Commission nor plaintiff has special expertise in regulating the general professional conduct of attorneys.  It is a task that has been reserved traditionally for state authorities.

Even assuming, as the Commission represents, that many attorneys providing mortgage assistance relief services have engaged in practices that violate state licensing regulations, plaintiff has failed to explain why that correlation would justify the Commission's authority to regulate attorney conduct under state law.  If attorneys who provide mortgage assistance relief services were more likely to fail to pay their state income tax, it would not be reasonable for the Commission or plaintiff to seek to enforce state tax laws against those attorneys under the authority granted by Congress regarding mortgage loans.  Further, plaintiff has not offered any specific rationale for regulating attorneys' administration of client trust fund accounts.

## F.  Validity of Regulation O

Although I conclude that the regulation of attorneys not engaged in the practice of law in subsections (a)(1) and (2) of 12 C.F.R. § 1015.7 is a proper exercise of plaintiff's

rulemaking authority under the Consumer Protection Act, I find that plaintiff exceeded its rulemaking authority in promulgating subsections (a)(3) and (b) of § 1015.7, related to attorneys' compliance with various state laws and regulations.  Because the parties have not addressed what effect, if any, this partial invalidation of the attorney exemption will have on the exemption or the regulation as a whole, I will give them an opportunity to address the matter in supplemental briefing.  As the moving party, defendants will have until February 5, 2016 to file a supplemental brief in support of their motion for summary judgment to address this issue.  Plaintiff will have until February 19, 2016 to file a response, and defendants will have until February 26, 2016 to reply.

### G.  Burden of Proof Regarding Attorney Exemption

In their motion for summary judgment, defendants contend that plaintiff cannot enforce Regulation O or the Consumer Protection Act against them because defendants Mortgage Law Group and Consumer First Legal Group were national law firms that provided mortgage assistance relief services as part of the practice of law.  Plaintiff says that defendants were not practicing law because they contracted with local attorneys to "duplicate ministerial tasks and basic financial review already performed by the Companies' non-legal staff."  Dkt. #118 at 13 (CM/ECF numbering).  Plaintiff points out that defendants have not shown that they or their local attorneys were licensed to practice law in the states where defendants were operating.

As mentioned previously, the Consumer Protection Act refers to the practice of law "under the laws of the state in which the attorney is licensed," and the parties seem to agree

23

that court must look to state law to define the practice of law.  In this case, defendants allegedly practiced law in 39 states, meaning that the court must analyze whether defendants offered or provided mortgage assistance relief services as part of, or incidental to, the practice of law in each of those states.  However, neither party undertakes this analysis or identifies the state laws and regulations at issue.  At most, the parties list *examples* of how some states have defined the practice of law and generally discuss the types of services that defendants provided without discussing how those services fell outside the practice of law in any particular state. Both sides contend that the opposing party should have the burden of proof with respect to qualifying for the exemption(s).

Plaintiff is the only party that develops a persuasive argument with respect to the burden of proof.  It contends that even though courts have not yet addressed the burden of proof with respect to the attorney exemption, it is typical for the party seeking to qualify for a statutory exemption to carry the burden of proof.  Berndt v. Fairfield Resorts, Inc., 337 F. Supp. 2d 1120, 1130 (W.D. Wis.) on reconsideration, 339 F. Supp. 2d 1064 (W.D. Wis. 2004) (burden to proof on defendant to show it qualifies for exemption under Fair Debt Collection Practices Act).  In addition, plaintiff says that because defendants have asserted the exemption as an affirmative defense in this case, they have the burden of identifying evidence from on which a jury could find in its favor on each element of an affirmative defense.  C & N Corp. v. Kane, 953 F. Supp. 2d 903, 911 (E.D. Wis. 2013) aff'd sub nom. C & N Corp. v. Gregory Kane & Illinois River Winery, Inc., 756 F.3d 1024 (7th Cir. 2014).  See also Schmidt v. Eagle Waste & Recycling, Inc., 598 F. Supp. 2d 928, 934 (W.D. Wis. 2009) aff'd, 599 F.3d 626 (7th Cir. 2010) (because overtime exemptions from Fair Labor Standards Act are

affirmative defenses, defendant bears burden of establishing their application). Defendants have not disputed this reasoning and argues only that plaintiff would place "an insurmountable burden on individuals asserting the attorney exemption to conclusively prove that they have never violated a state law or regulation." Dkt. #130 at 19-20 (CM/ECF numbering). However, I have found that the exemption's provisions related to compliance with state laws and regulations are invalid. Defendants do not argue, and I do not find, that it is too burdensome for defendants to show that they were engaged in the practice of law while providing the allegedly unfair or deceptive mortgage assistance relief services. The information required to make this showing is within defendants' control and possession.

Accordingly, defendants will have until February 5, 2016 to show cause why they should not be found subject to the Consumer Financial Protection Act, 12 U.S.C. §§ 5531 and 5536, and Regulation O, 12 C.F.R. SS § 1015.3(a) and (b), 1015.4(b)(1) and 1015.5(a), to the extent that the regulation remains valid. This means that defendants should identify the applicable state legal standards and support with admissible evidence their contention that they offered or provided mortgage assistance relief services as part of, or incidental to, the practice of law in each state in which they provided such services. Defendants also should show that they satisfy any other applicable requirements in the attorney exemption provisions of the Act and regulation. E.g., 12 U.S.C. §§ 5517(e)(2)(B) and (3); 12 C.F.R. § 1015.7(a)(2). In doing so, defendants may refer to arguments, evidence or proposed findings of fact that they submitted previously in connection with their motion for summary judgment, as long as they make clear where such information may be found in the record. Plaintiff will have until

February 19, 2016 to file a response, and defendants will have until February 26, 2016 to reply.


ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants Consumer First Legal Group, LLC, Thomas G. Macey, Jeffrey J. Aleman, Jason E. Searns and Harold E. Stafford , dkt. #96, is GRANTED IN PART only to the extent that I find 12 C.F.R. §§ 1015.7(a)(3) and (b) to be invalid.  The motion is DENIED WITHOUT PREJUDICE in all other respects.

2.  Plaintiff Consumer Financial Protection Bureau's motion for summary judgment, dkt. #83, is GRANTED IN PART only to the extent that defendants have the burden of proving that they qualify for the attorney exemption in the Consumer Financial Protection Act, 12 U.S.C. § 5517(e), and Regulation O, 12 C.F.R. § 1015.7, to the extent that the exemption in the regulation remains valid.  The motion is DENIED WITHOUT PREJUDICE in all other respects.

3.  Defendants shall have until February 5, 2016 to:  (a) file a supplemental brief in support of their motion for summary judgment to address what effect, if any, that partial invalidation of the attorney exemption in Regulation O will have on the exemption or the regulation as a whole; and (b) show cause why they should not be found subject to the Consumer Financial Protection Act, 12 U.S.C. §§ 5531 and 5536, and Regulation O, 12 C.F.R. §§ 1015.3(a) and (b), 1015.4(b)(1) and 1015.5(a), to the extent that the regulation

remains valid.  Plaintiff may have until February 19, 2016 to file a response, and defendants may have until February 26, 2016 to reply.

4.  The deadlines for Rule 26(a)(3) disclosures and motions in limine, the February 4, 2016 final pretrial conference and the February 16, 2016 trial date are stricken.  The court will set new deadlines for the remainder of this case, including the parties' renewed motions for summary judgment, after it resolves the outstanding issues concerning the validity of Regulation O.

Entered this 14th day of January, 2016.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge