## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>                         Plaintiff,<br><br>     v.<br><br><br>THE MORTGAGE LAW GROUP, LLP, (D/B/A THE LAW FIRM OF MACEY, ALEMAN & SEARNS), CONSUMER FIRST LEGAL GROUP, LLC, THOMAS G. MACEY, JEFFREY J. ALEMAN, JASON E. SEARNS, and HAROLD E. STAFFORD,<br><br>                         Defendants. | Case No. 3:14-cv-00513 |

## CERTAIN DEFENDANTS' SUPPLEMENTAL BRIEF
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................2

ARGUMENT ................................................................................................................2

I.  Regulation O Is Not Invalid In Its Entirety.  However, To Avoid An Absurd Result, An Additional Portion Of Regulations O's Attorney Exemption Should Also Be Found Invalid ....................................................................................................2

    A.  Legal Standards.....................................................................................2

    B.  This Court's Ruling Requires Invalidation Of Additional Portions Of The Attorney Exemption ..............................................................................3

II.  Defendants Qualify For The Attorney Exemptions Under The CFPA and Regulation O ..........................................................................................................7

    A.  The CFPB Does Not Contend That The Individual Defendants Personally Engaged In Any Conduct That Violates Regulation O Or The CFPA ..................7

    B.  The Undisputed Evidence Shows That Regulation O's Attorney Exemption Is Satisfied................................................................................8

        1.  TMLG And CFLG Attorneys Were Licensed In The States In Which The Firms' Clients Resided And/Or The Client's Home Was Located ................8

        2.  Law Firms That Represent Clients In Renegotiating Mortgage Loans, And Provide In-Court Representation *Vis-à-Vis* Their Mortgage Lenders Are Engaged In The Practice Of Law ............................................ 11

    C.  Defendants Meet The CFPA's Attorney Exemption ............................................ 19

CONCLUSION.............................................................................................................. 20

## TABLE OF AUTHORITIES

<u>CASES</u>

*[Anonymous] v. Federal Deposit Ins. Corp.*, 617 F.Supp. 509 (D.D.C.1985) ............................... 3

*Addison v. Holly Hill Fruit Prods., Inc.*, 322 U.S. 607 (1944) ...................................................... 3

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987) ..................................................................... 3

*Ariz. Pub. Serv. Co. v. United States Environmental Protection Agency*, 562 F.3d 1116 (10th Cir.
 2009) ................................................................................................................................... 2

*Ark. Bar Ass'n v. Union Nat. Bank of Little Rock*, 273 S.W.2d 408 (Ark. 1954) ........................ 12

*Ass'n of Private Sector Colleges & Universities v. Duncan*, 110 F. Supp. 3d 176 (D.D.C. 2015). 3

*Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320 (2006) ..................................... 3

*Bd. of Overseers of the Bar v. Mangan*, 763 A.2d 1189 (Me. 2001) ........................................... 12

*Cincinnati Ins. Co. v. Wills*, 717 N.E.2d 151 (Ind. 1999) ........................................................... 12

*Crawford v. Cent. Mortgage Co.,* 744 S.E.2d 538 (S.C. 2013)………………………………...12

*Davis Cty. Solid Waste Mgmt. v. United States Environmental Prot. Agency*, 108 F.3d 1454 (D.C.
 Cir. 1997) ............................................................................................................................ 2

*Dressel v. Ameribank*, N.W.2d 151 (Mich. 2003) ...................................................................... 12

*Federal Power Comm'n v. Idaho Power Co.*, 344 U.S. 17 (1952) ................................................ 3

*Fitchette v. Taylor*, 254 N.W. 910 (Minn. 1934) ....................................................................... 12

*Fought & Co. v. Steel Eng'g & Erection, Inc.,* 951 P.2d 487 (Haw. 1998) .................................. 12

*Gmerek v. State Ethics Comm'n,* 751 A.2d 1241, 1255 (Pa. Commw. Ct. 2000)........................ 12

*Grafner v. Dep't of Emp't Sec.*, 393 Ill. App. 3d 791 (Ill. App. Ct. 2009) ................................. 12

*Harmon v. Thornburg*, 878 F. 2d 484 (D.C. Cir. 1989)................................................................ 3

*High Country Conservation Advocates v. United States Forest Serv.*, 67 F. Supp. 3d 1262 (D. Colo. 2014)............................................................................................................................................ 3

*Hu v. Fang,* 104 Cal. App. 4th 61 (2002) ................................................................................... 16

*In re Discipline of Lerner*, 197 P.3d 1067 (Nev. 2008)................................................................ 12

*In re Ebel*, 371 B.R. 866 (S.D. Ill. 2007) ..................................................................................... 13

*In re Matter of Huang*, No. 242193, 2014 WL 232686, at *8-9 (Jan. 16, 2014, Review Dept. State Bar Cal.) .............................................................................................................................. 14

*In re UPL Advisory Opinion 2003-1*, 623 S.E.2d 464 (Ga. 2005)................................................. 14

*In re Welch*, 185 A.2d 458 (Vt. 1962) ......................................................................................... 12

*Iowa Supreme Court Comm'n on Unauthorized Practice of Law v. Sturgeon*, 635 N.W.2d 679 (Iowa 2001) ........................................................................................................................ 12

*Land Title Abstract & Trust Co. v. Dworken*, 193 N.E. 650 (Ohio 1934).................................... 12

*Mass. Conveyancers Ass'n, Inc. v. Colonial Title & Escrow, Inc*., 2001 WL 669280, at *5 (Mass. Super. June 5, 2001) .............................................................................................................. 12

*Matter of Rowe*, 604 N.E.2d 728 (N.Y. 1992) ............................................................................. 12

*Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999) .................................... 3

*Miss. Comm'n on Judicial Performance v. Jenkins*, 725 So. 2d 162 (Miss. 1998) ...................... 13

*North Carolina v. Fed. Energy Reg. Comm'n*, 730 F.2d 790, 795-96 (D.C. Cir. 1984) ............... 2

*Ohio State Bar Assn. v. Kolodner*, 817 N.E.2d 25 (Ohio 2004) ................................................... 14

*Or. State Bar v. Smith*, 942 P.2d 793 (Ore. 1997) ....................................................................... 12

*People v. Landlords Prof'l Servs.,* 215 Cal. App. 3d 1599 (1989) ............................................... 12

*R.J. Edwards, Inc. v. Hert,* 504 P.2d 407 (Okla. 1972) ............................................................... 12

*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007) ................................................... 13

2

*Sheet Metal Workers, Local Union No. 91 v. NLRB*, 905 F.2d 417 (D.C. Cir. 1990) .................... 3

*Spindell v. State*, 530 P.2d 168 (Cal. 1975) ........................................................................ 16

*State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.,* 514 P.2d 40 (N.M. 1973) .............. 12

*State ex rel. Stephan v. Williams*, 793 P.2d 234 (Kan. 1990) ........................................... 12

*State v. Foster*, 674 So. 2d 747 (Fla. Dist. Ct. App. 1996) .......................................... 12

*State v. Foster*, 674 So. 2d 747 (Fla. Dist. Ct. App. 1996) .......................................... 13

*State v. Niska*, 380 N.W.2d 646 (N.D. 1986) ............................................................... 12

*State v. Rogers*, 705 A.2d 397 (N.J. Super. Ct. 1998) ................................................. 12

*State v. Wees*, 58 P.3d 103 (Id. Ct. App. 2002) ........................................................ 12

*Steele v. Bonner*, 782 N.W.2d 379 (S.D. 2010) ......................................................... 12

*Sussman v. Grado*, 746 N.Y.S.2d 548 (N.Y. Dist. Ct. 2002) ...................................... 12

*Vaughn v. State Bar*, 494 P.2d 1257 (Cal. 1972) ....................................................... 16

## STATUTES

5 U.S.C. § 701 *et seq.*.......................................................................................... 3

12 U.S.C. § 5517(e)(1)................................................................................... 6, 19

12 U.S.C. § 5517(e)(2)................................................................................... 6, 19

12 U.S.C. § 5517(e)(3)....................................................................................... 20

GA. CODE ANN. § 15-19-50 ........................................................................... 13

TENN. CODE ANN. § 23-3-101(3) ................................................................... 13

## REGULATIONS

12 C.F.R. § 1015.11 ........................................................................................ 3

12 C.F.R. § 1015.7 ........................................................................................... 5

12 C.F.R. § 1015.7(a)(3) and (b) ................................................................... 3

## COURT RULES

NEB. SUP. CT. R. §3-1001(D) .......................................................................................... 13

WIS. SUP. CT. R. 23.01 .................................................................................................... 13

Various Rules Defining "Practice of Law"………………………………………………12

Various Versions of Model Rule of Professional Conduct 5.3…………………………………16

Versions Versions of Model Rule of Professional Conduct 5.5…………………………………..18

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>                    Plaintiff,<br><br>    v.<br><br><br>THE MORTGAGE LAW GROUP, LLP, (D/B/A THE LAW FIRM OF MACEY, ALEMAN & SEARNS), CONSUMER FIRST LEGAL GROUP, LLC, THOMAS G. MACEY, JEFFREY J. ALEMAN, JASON E. SEARNS, and HAROLD E. STAFFORD,<br><br>                    Defendants. | Case No. 3:14-cv-00513 |

## CERTAIN DEFENDANTS' SUPPLEMENTAL BRIEF
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Consumer First Legal Group, LLC, Thomas G. Macey, Jeffrey J. Aleman, Jason E. Searns, and Harold E. Stafford (collectively, "Defendants") state as follows as their supplemental brief in support of their motion for summary judgment, pursuant to this Court's January 14, 2016 Order:

## INTRODUCTION

In its January 14, 2016 Order (hereinafter, the "Order"), this Court ordered Defendants to address two issues: (1) what effect, if any, the Court's partial invalidation of the attorney exemption in Regulation O, 12 C.F.R. § 1015.7, has on the exemption or the regulation as a whole; and (2) whether Defendants can establish that they fall within the attorney exemptions in the Consumer Financial Protection Act ("CFPA") and Regulation O (as modified by the Court's Order). Both issues are addressed herein.

## ARGUMENT

I.   **Regulation O Is Not Invalid In Its Entirety.  However, To Avoid An Absurd Result, An Additional Portion Of Regulation O's Attorney Exemption Should Also Be Found Invalid.**

   A.   **Legal Standards.**

This Court has found that a discrete part of Regulation O (*i.e.*, 12 C.F.R. § 1015.7(a)(3) and (b)) is invalid.  The Court has asked Defendants to brief the issue of what impact, if any, that finding has on the remainder of Regulation O.

In assessing this issue, the Court must look to whether the portion of Regulation O that is invalid is severable from the remainder of Regulation O.  A court may "partially set aside a regulation if the invalid portion is severable.  A regulation is severable if the severed parts operate entirely independently of one another and the circumstances indicate the agency would have adopted the regulation even without the faulty provision." *Ariz. Pub. Serv. Co. v. United States Environmental Protection Agency*, 562 F.3d 1116, 1122 (10th Cir. 2009) (internal quotes omitted) "Whether an administrative agency's order or regulation is severable, permitting a court to affirm it in part and reverse it in part, depends on the issuing agency's intent." *Davis Cty. Solid Waste Mgmt. v. United States Environmental Prot. Agency*, 108 F.3d 1454, 1459 (D.C. Cir. 1997).

"Severance and affirmance of a portion of an administrative regulation is improper if there is 'substantial doubt' that the agency would have adopted the severed portion on its own." *Id.* (internal cites omitted).  In the absence of "substantial doubt," the Court may partially invalidate an administrative regulation.  If such "substantial doubt" exists, the Court may order a remand to the issuing agency. *North Carolina v. Fed. Energy Reg. Comm'n*, 730 F.2d 790, 795-96 (D.C. Cir. 1984).  "Such a remand is often in the best interest of justice in that it allows the agency to reconsider the residue of its original regulation and keeps judges out of the business of

2

administrators."[1]  *See Federal Power Comm'n v. Idaho Power Co.*, 344 U.S. 17 (1952) (overturning judicial severance of license conditions, remanding instead to FPC for new license determination in light of invalid provisions); *Addison v. Holly Hill Fruit Prods., Inc.*, 322 U.S. 607, 618-23 (1944) (overturning judicial construction of act and requiring instead Administrator to decide challenged definition anew in light of partial invalidation); *Sheet Metal Workers, Local Union No. 91 v. NLRB*, 905 F.2d 417, 422-24 (D.C.Cir.1990) (remanding case to NLRB to consider severability of unlawful clause in labor contract); *[Anonymous] v. Federal Deposit Ins. Corp.*, 617 F.Supp. 509, 518 (D.D.C.1985) (permitting agency to reconsider order in its entirety, giving it "the maximum possible freedom to tailor precisely any ... order necessary").  In addition, the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, "does not [] deprive reviewing courts of traditional equitable powers when fashioning a remedy."  *High Country Conservation Advocates v. United States Forest Serv.*, 67 F. Supp. 3d 1262, 1263 (D. Colo. 2014).

### B.      This Court's Ruling Requires Invalidation Of Additional Portions Of The Attorney Exemption.

In this case, it seems clear that the invalidation of Sections (a)(3) and (b) of Regulation O's attorney exemption, 12 C.F.R. § 1015.7(a)(3) and (b), does not warrant the wholesale invalidation of Regulation O.  For starters, Regulation O contains a severability clause. 12 C.F.R. § 1015.11.

---

[1] The severability doctrine with respect to agency regulations is essentially the same in the statutory arena.  *See*, *e.g.*, *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006); *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (recognizing that the legislature could not have intended a flawed provision "to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently."); *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999); *Harmon v. Thornburg*, 878 F. 2d 484, 494 (D.C. Cir. 1989) ("When a court finds that an agency regulation is invalid in substantial part, and that the invalid portion cannot be severed from the rest of the rule, its typical response is to vacate the rule and remand to the agency"); *see also Ass'n of Private Sector Colleges & Universities v. Duncan*, 110 F. Supp. 3d 176, 192, n. 7 (D.D.C. 2015) (applying severability doctrine to Department of Education policy).

Moreover, the remaining provisions of Regulation O, *i.e.*, the provisions that detail prohibited conduct, can easily stand on their own, even if the attorney exemption is expanded.  Indeed, there is no hint or suggestion in the administrative record that the CFPB (or the FTC, which promulgated the original MARS Rule) would have opted for different prohibitions on conduct if the scope of the attorney exemption were narrowed or expanded.  In short, this does not appear to be a case in which there is "substantial doubt" regarding the agency's intent with respect to the rest of Regulation O.  Accordingly, remand is not necessary, and this Court should vacate 12 C.F.R. § 1015.7(a)(3) and (b).

However, if the Court simply stopped there, it would create an incongruous and absurd result.  Defendants respectfully submit that this Court should exercise its equitable powers to strike an additional clause in Regulation O's attorney exemption.  Prior to the Order, Regulation O's attorney exemption stated as follows:

> (a) An attorney is exempt from this part, with the exception of § 1015.5, if the attorney:
>
> (1) Provides mortgage assistance relief services as part of the practice of law;
>
> (2) Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located; and
>
> (3) Complies with state laws and regulations that cover the same type of conduct the rule requires.
>
> (b) An attorney who is exempt pursuant to paragraph (a) of this section is also exempt from § 1015.5 if the attorney:
>
> (1) Deposits any funds received from the consumer prior to performing legal services in a client trust account; and
>
> (2) Complies with all state laws and regulations, including licensing regulations, applicable to client trust accounts.

12 C.F.R. § 1015.7 (emphasis added).  Subpart (a) thus established criteria that, if met, allowed attorneys to obtain exemption from all of Regulation O except for section 1015.5, which attorneys could obtain exemption from if they satisfied the additional criteria set forth in subpart (b). Following the Order, Regulation O's attorney exemption provides:

> (a) An attorney is exempt from this part, ***with the exception of § 1015.5***, if the attorney:
>
> (1) Provides mortgage assistance relief services as part of the practice of law;
>
> (2) Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located; and

(Dkt. 144) (emphasis added)  Hence, in the wake of this Court's Order, the attorney exemption no longer contains *any* mechanism through which attorneys can obtain exemption from Section 1015.5.   In short, this Court's Order has the unintended effect of eliminating the attorney exemption for Section 1015.5.

This is a concern.  Without an exemption for attorneys, Section 1015.5 would give the CFPB co-authority to regulate certain aspects of the practice of law that have heretofore always fallen within the sole jurisdiction of the states.  Section 1015.5 essentially does two things:  (1) it limits the ability of a mortgage assistance relief services provider to obtain advanced payments, 12 C.F.R. § 1015.5(a); and (2) it requires that the service provider make certain disclosures to the consumer.  § 1015.5(b)–(c).  Consistent with these provisions, section 1015.5 would, for example, allow the CFPB to prosecute an attorney for accepting a retainer in exchange for entering into an agreement with a client to provide mortgage assistance relief services as part of the practice of law.  It also would allow the CFPB to prosecute an attorney for accepting fees for the attorney's provision of legal services pursuant to an attorney-client relationship before the client signs the sort of written agreement described in section 1015.5(a).  In addition, the Order would allow the

5

CFPB to prosecute attorneys who fail to give their clients certain notices required by section 1015.5(b), even when services are provided in the scope of the attorney-client relationship.

Granting the CFPB co-extensive authority to regulate attorney conduct in these areas runs afoul of the Consumer Protection Act's specific "exclusion for [the] practice of law,"[2] which provides:

> Except as provided under paragraph (2), the bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law.

12 U.S.C. § 5517(e)(1).  The states already regulate how attorneys shall handle client funds and what disclosures they need to make in the course of legal representation, which is precisely why Regulation O previously allowed attorneys to obtain exemption from section 1015.5 provided that they met the criteria established by the states.  *See e.g.*, WI SCR 20: 1.0(f) (requiring that a lawyer make certain disclosures in order to obtain a clients' informed consent), 1.15; IL. R. S. CT. RPC 1.0(6)(same), 1.15.  For the reasons set forth in Defendants' summary judgment memorandum, the CFPB cannot usurp the states' authority to regulate these common activities, which are, at the very least, "incidental to…the practice of law."  12 U.S.C. § 5517(e)(2)(A).

Fortunately, there is a simple solution.   In addition to the Court's invalidation of subsections (a)(3) and (b) of section 1015.7, the Court should further invalidate the clause in subsection (a) of section 1015.7 that reads, "with the exception of § 1015.5."  That way, the Court can maintain attorneys' ability to obtain exemption from section 1015.5 – as Congress intended – by modifying the attorney exemption to read as follows:

(a) An attorney is exempt from this part if the attorney:

---

[2] In the Order, the Court holds that the Consumer Protection Act places limits on the CFPB's authority to regulate mortgage loan modification services. (Dkt. 144 at 10-11)

(1) Provides mortgage assistance relief services as part of the practice of law;

(2) Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located.

In other words, attorneys would have to meet the same criteria to qualify for the exemption that they already do under the Court's Order, but the exemption would also include exemption from section 1015.5. This would allow the CFPB to enforce Regulation O without infringing on the states' exclusive authority to regulate the practice of law within their borders.

## II.   Defendants Qualify For The Attorney Exemptions Under The CFPA And Regulation O.

This Court has also ordered Defendants to show why they are not subject to the CFPA and Regulation O. (Dkt. 144 at 25) Specifically, this Court has ordered Defendants to identify the applicable state legal standards and put forth admissible evidence to demonstrate that "they offered or provided mortgage assistance relief services as part of, or incidental to, the practice of law in each state in which they provided services." (*Id.*) Defendants are also required to show that they satisfy any other requirements in the attorney exemption provisions of the CFPA and Regulation O.

### A.   The CFPB Does Not Contend That The Individual Defendants Personally Engaged In Any Conduct That Violates Regulation O Or The CFPA.

The Individual Defendants in this case are all attorneys who were, during the relevant time period, properly admitted to practice law in their respective states. (Pl. Resp. Def. Prop. Findings of Fact ("Resp. Def. PFOF") (Dkt. 119) at ¶¶ 8-11) However, as a threshold matter, it is important to note that the CFPB does not contend that Tom Macey, Jeff Aleman, Jason Searns or Harold Stafford personally engaged in any conduct that is prohibited under Regulation O or the CFPA. The CFPB, for example, does not contend that any of the Individual Defendants personally

represented clients in Wisconsin, Illinois, Colorado, Florida or any other state.  Rather, the CFPB

is claiming that the Individual Defendants face liability because the law firms at issue, TMLG and

CFLG, allegedly violated Regulation O and the CFPA.  Thus, in assessing the applicability of the

attorney exemption, the focus is not on the Individual Defendants, but rather on whether *the law

firms* (TMLG and CFLG) had attorneys licensed to practice in the states in which the firms had

clients, and whether the *law firms* were engaged in the practice of law.

**B.     The Undisputed Evidence Shows That Regulation O's Attorney Exemption Is Satisfied.**

After this Court's ruling on the motion for summary judgment, which struck Subsections

(a)(3) and (b), Regulation O's attorney exemption reads as follows:

> (a) An attorney is exempt from this part, with the exception of § 1015.5, if the attorney:
>
> (1) Provides mortgage assistance relief services as part of the practice of law;
>
> (2) Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located; and

(Dkt. 144)  Defendants can easily satisfy the attorney exemption under Regulation O.

**1.     TMLG And CFLG Attorneys Were Licensed In The States In Which The Firms' Clients Resided And/Or The Client's Home Was Located.**

The second part of Regulation O's attorney exemption requires that Defendants establish

that TMLG and CFLG attorneys were licensed in the states in which the client resided and/or the

client's home was located.  That is easily established.  In connection with their summary judgment

motion, Defendants submitted two spreadsheets that listed the names and addresses of all of

TMLG's and CFLG's clients.  (Feb. 5, 2016 Aleman Decl. (Dkt. 168) at ¶ 5)  As those spreadsheets

show, TMLG represented clients in approximately 39 states, and CFLG represented clients in

8

approximately 37 states.  With respect to those states, TMLG and CFLG, respectively, had in-state attorneys who meet the necessary criteria.

**First**, Defendants have submitted the declarations of a number of TMLG and CFLG Class B attorneys.  Those attorneys all confirm that they were Class B attorneys or otherwise affiliated with those firms, that they were licensed and in good standing at all times relevant, and that they provided legal services to clients in the state in which they were licensed and designated as the Class B attorney.  (Decl. Frier (Dkt. 145) ¶¶ 2-3; Decl. Trebbe (Dkt. 146) ¶ 2; Aff. Gustafson (Dkt. 147) ¶¶ 2-3; Aff. Tannenbaum (Dkt. 148) ¶ 2; Aff. Fears (Dkt. 149) ¶¶ 2-4; Aff. Ruggiero (Dkt. 150) ¶¶ 2-4; Rumunno (Dkt. 151) ¶¶ 2-4; Decl. Hermosillo (Dkt. 152) ¶¶ 2-3; Decl. C. Banyon (Dkt. 153) ¶¶ 2-3; Decl. Sibert (Dkt. 154) ¶¶ 2-3; Decl. K. Banyon (Dkt. 155) ¶¶ 2-3; Decl. Reiff (Dkt. 156) ¶¶ 2-3; Decl. Windsor (Dkt. 157) ¶¶ 2-4; Decl. Powell (Dkt. 158) ¶¶ 2-4; Decl. Rammell (Dkt. 159) ¶ 2-3; Decl. Harrington (Dkt. 160) ¶ 2-4; Decl. Terry (Dkt. 161) ¶¶ 2-3; Decl. Hyslip (Dkt. 162) ¶ 2; Decl. Daines (Dkt. 163) ¶¶ 2-3; Decl. Murdock (Dkt. 164) ¶¶ 2-3; Decl. Moore (Dkt. 165) ¶¶ 2-3; Decl. Gray (Dkt. 166) ¶¶ 2-4; Decl. Straub (Dkt. 167) ¶¶ 2-4)

**Second**, Defendants have submitted the declaration of Jeffrey Aleman.  Mr. Aleman was responsible for the daily operations of the firms.  Mr. Aleman is familiar with TMLG and CFLG's operations and attorney networks.  He personally spoke with and/or met many of the Class B attorneys during his tenure with TMLG and CFLG, and he performed due diligence to ensure that the Class B attorneys were duly licensed and in good standing with their respective state bars.[3]

---

[3] Due to the passage of time since the firms ceased operations and the short time frame in which this Court required this supplemental brief, Defendants were not able to obtain affidavits from *all* Class B member attorneys.  In addition, TMLG filed for bankruptcy in March 2014 (prior to the filing of this lawsuit).  At that time, the bankruptcy trustee took possession of TMLG's records.  Accordingly, many of the Class B member agreements are also not available to Defendants.

***Third***, where available, Defendants have submitted Class B Member agreements for Class B attorneys.  (*See* Aleman Decl. (Dkt. 168) at ¶¶ 8-16, Exs. B-J thereto; Fears Decl. (Dkt. 149) at Ex. A; Ruggiero Decl. (Dkt. 150) at Ex. A; Hermosillo Decl. (Dkt. 152) at Ex. A; Sibert Decl. (Dkt. 154) at Ex. A; Harrington Decl. (Dkt. 160) at Exs. A, B; Gray Decl. (Dkt. 166) at Ex. A; Straub Decl. (Dkt. 167) at Ex. A)   Those agreements, which are signed by the subject Class B attorney, specifically provide that:

> 9.   <u>Licensed and in Good Standing</u>.  You hereby further confirm to us that you are licensed in good standing to practice law in the State, and that there are no pending disciplinary, ethical or other similar complaints or proceedings against you before any court, agency or governmental authority.

(TMLG Class B Agreement (Dkt. 101-12) at ¶ 9)

> 9(d)   <u>Licensed to Practice Law</u>.  Member is duly licensed in good standing to practice law in the State, and, except for illness, accident, time spent in the armed services, on vacations, and on leaves of absence not exceeding one year, is actively engaged in the practice of law in the State.  Member has never been subject to any disciplinary, ethical or other similar complaints or proceedings, and no such complaints or proceedings are currently pending against Member before any court, agency or governmental authority.

(CFLG Class B Agreement (Dkt. 101-18) at ¶9(d))

***Fourth***, Defendants have submitted the declaration of Nicole Winters.  Ms. Winters obtained information from the Class B attorneys' respective state bars confirming that nearly all of the Class B attorneys are currently in good standing with those state bars and have no disciplinary history.  (Aff. Winters (Dkt. 169) at Exs. 1-43)  Of the Class B attorneys who are not currently in good standing, many of them are so designated for non-payment of dues or voluntarily becoming inactive, and not because of any misconduct during the time they were active with TMLG and CFLG.  (*See, e.g.,* Aff. Winters (Dkt. 169) at Exs. 2, 3)

In sum, TMLG and CFLG provided legal services (through in-state licensed attorneys) in the states where their clients resided.

     **2.**      **Law Firms That Represent Clients In Renegotiating Mortgage Loans, And Provide In-Court Representation *Vis-A-Vis* Their Mortgage Lenders Are Engaged In The Practice Of Law.**

The regulation and definition of the practice of law is a matter of state law.  Each state has crafted its own definition of the "practice of law."  Those state law Supreme Court Rules, statutes and bar opinions differ slightly from state to state.  However, ***every*** state's definition[4] includes the type of representation that is at issue in this case, *i.e.*, representing clients in settling or compromising debts and accounts, in-court representation, and negotiation and drafting of papers

---

[4] Attached as Exhibit A is a state-by-state appendix of the rules, statutes and case authority relevant to the practice of law, multijurisdictional law practice, and supervision of work by non-lawyers.

11

affecting a client's rights.[5]  Some states expressly provide that re-negotiating mortgage loans are

the practice of law:

- "The practice of law shall include the following activities…(v) negotiating or transacting any matter for or on behalf of a client with third parties."  LA. RULES OF PROF'L CONDUCT R. 5.5 (e)(3); *see* Ex. A at 35.

- "The practice of law means and includes: (2)   For a consideration, reward,  or pecuniary benefit, present or anticipated, direct or indirect…(d) Certifying or giving opinions…as it relates to title to immovable property[.]" LA. STAT. ANN. § 37:212; *see* Ex. A at 35-36.

---

[5] *See* ALA. CODE § 34-3-6(b); ALA. BAR R. 15; ALASKA BAR R. 63; ARIZ. SUP. CT. R. 31; *Ark. Bar Ass'n v. Union Nat. Bank of Little Rock,* 273 S.W.2d 408, 411-12 (Ark. 1954); *People v. Landlords Prof'l Servs.,* 215 Cal. App. 3d 1599, 1604-05 (1989); COLO. REV. STAT. ANN. § 203.2; CONN. GEN. STAT. ANN. § 2-44A; *Del. State Bar Ass'n v. Alexander,* 386 A.2d 652, 661 (Del. 1978); *State v. Foster*, 674 So. 2d 747, 752 (Fla. Dist. Ct. App. 1996); GA. CODE ANN. § 15-19-50; *Fought & Co. v. Steel Eng'g & Erection, Inc.,* 951 P.2d 487, 495 (Haw. 1998); *State v. Wees*, 58 P.3d 103, 106 (Id. Ct. App. 2002); *Grafner v. Dep't of Emp't Sec*., 393 Ill. App. 3d 791, 798, (Ill. App. Ct. 2009); *Cincinnati Ins. Co. v. Wills*, 717 N.E.2d 151, 166-67 (Ind. 1999); *Iowa Supreme Court Comm'n on Unauthorized Practice of Law v. Sturgeon*, 635 N.W.2d 679, 681-82 (Iowa 2001); *State ex rel. Stephan v. Williams*, 793 P.2d 234, 240 (Kan. 1990); KY. SUP. CT. R. 3.020; LA. RULES OF PROF'L CONDUCT R. 5.5 (e)(3); LA. STAT. ANN. § 37:212; *Bd. of Overseers of the Bar v. Mangan*, 763 A.2d 1189, 1193 (Me. 2001); MD. CODE ANN., BUS. OCC. & PROF. § 10-101; *Mass. Conveyancers Ass'n, Inc. v. Colonial Title & Escrow, Inc*., 2001 WL 669280, at *5 (Mass. Super. June 5, 2001); *Dressel v. Ameribank*, N.W.2d 151, 157 (Mich. 2003); *Fitchette v. Taylor*, 254 N.W. 910, 911 (Minn. 1934); *Miss. Comm'n on Judicial Performance v. Jenkins*, 725 So. 2d 162, 167 (Miss. 1998); MO. ANN. STAT. § 484.010; MONT. CODE ANN. § 37-61-201; NEB. SUP. CT. R. §  3-1001; *In re Discipline of Lerner*, 197 P.3d 1067, 1078 (Nev. 2008); N.H. SUP. CT. R. 35, cmt.; *State v. Rogers*, 705 A.2d 397, 400 (N.J. Super. Ct. App. Div. 1998); *State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.,* 514 P.2d 40, 45 (N.M. 1973); *Matter of Rowe*, 604 N.E.2d 728, 731 (N.Y. 1992); *Sussman v. Grado*, 746 N.Y.S.2d 548, 552 (Dist. Ct. 2002); N.C. GEN. STAT. ANN. § 84-2.1; *State v. Niska*, 380 N.W.2d 646, 648 (N.D. 1986); *Land Title Abstract & Trust Co. v. Dworken*, 193 N.E. 650, 652 (Ohio 1934); *R.J. Edwards, Inc. v. Hert,* 504 P.2d 407, 416 (Okla. 1972); *Or. State Bar v. Smith*, 942 P.2d 793, 800 (Ore. 1997); *Gmerek v. State Ethics Comm'n,* 751 A.2d 1241, 1255 (Pa. Commw. Ct. 2000) *aff'd,* 807 A.2d 812 (Pa. 2002); 11 R.I. GEN. LAWS ANN. § 11-27-2; *Crawford v. Cent. Mortgage Co*., 744 S.E.2d 538, 541 (S.C. 2013); *Steele v. Bonner*, 782 N.W.2d 379, 386 (S.D. 2010); TENN. CODE ANN. § 23-3-101; TEX. GOV'T CODE ANN. § 81.101; UTAH BAR R. SPECIAL PRACTICE 14-802; *In re Welch*, 185 A.2d 458, 459 (Vt. 1962); VA. SUP. CT. R. PT. 6 SEC. 1 (B); WASH. GENERAL RULE 24; W. VA. ST. CT. R.: Definition of the Practice of Law; WIS. SUP. CT. R. 23.01; RULES GOVERNING THE WYOMING STATE BAR AND THE AUTHORIZED PRACTICE OF LAW: R. 7(b); D.C. CT. APP. R. 49.

- "The practice of law includes…(4) Negotiation of legal rights or responsibilities on behalf of another entity or person." WIS. SUP. CT. R. 23.01; NEB. SUP. CT. R. § 3-1001(D) (substantively identical).

- "'Practice of law' means the appearance of an advocate in a representative capacity…or having authority to settle controversies[.]" TENN. CODE ANN. § 23-3-101(3).

In other states, the definitions clearly encompass negotiation of mortgage loans, and representation

vis-à-vis a client's mortgage lender:

- "[A]ny exercise of intelligent choice in advising another of his legal rights and duties brings the activity within the practice of the legal profession." *Miss. Comm'n on Judicial Performance v. Jenkins*, 725 So. 2d 162, 167 (Miss. 1998) (internal citations omitted); Ex. A at 47.

- "The practice of law is any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services." KY. SUP. CT. R. 3.020; Ex. A at 33.

- "The practice of law in this state is defined as…(6) Any action taken for others in any matter connected with the law." GA. CODE ANN. § 15-19-50; Ex. A at 20.

- "[I]f the giving of such advice and performance of such services affect[s] important rights of a person under the law, and if the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitute the practice of law." *State v. Foster*, 674 So. 2d 747, 752 (Fla. Dist. Ct. App. 1996); Ex. A at 18.

Thus, an attorney's representation of a client in restructuring a debt obligation (*i.e.*, a home

mortgage) is unquestionably "the practice of law." Courts have agreed with that assessment. It is

well established that the practice of law includes the negotiation and settlement of consumer debt.

*See, e.g.*, *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir. 2007) (noting that one of

the parties "was a law firm regularly practicing in the field of consumer debt collection"); *In re*

*Ebel*, 371 B.R. 866, 868-70 (S.D. Ill. 2007) (exemplifying that a lawyer was engaged in the practice

of law when providing debt negotiation services despite violating ethics rules for incompetent

13

representation); *In re UPL Advisory Opinion 2003-1*, 623 S.E.2d 464 (Ga. 2005) (finding that "an individual or entity who represents a debtor in negotiations with a creditor's attorney in an effort to reduce the amount of the debt or work out a payment plan is engaging in the unauthorized practice of law"); *Ohio State Bar Assn. v. Kolodner*, 817 N.E.2d 25, 28 (Ohio 2004) (holding that it was the unauthorized practice of law for a non-lawyer to advise a debtor or negotiate on his behalf to resolve a debt collection claim); *In re Matter of Huang*, No. 242193, 2014 WL 232686, at *8-9 (Jan. 16, 2014, Review Dept. State Bar Cal.) (explaining that loan modification services qualify as the practice of law).

The undisputed evidence shows that TMLG and CFLG represented clients vis-à-vis their mortgage lenders, and provided services ranging from loan modifications to short sales to foreclosure defense services.  (*See* Def. Prop. Findings of Fact ("Def. PFOF" at ¶¶ 43, 50, 85-86, 100-02; Decl. Frier (Dkt. 145) ¶ 4; Decl. Trebbe (Dkt. 146) ¶ 3; Aff. Gustafson (Dkt. 147) ¶ 4; Aff. Tannenbaum (Dkt. 148) ¶ 3; Aff. Fears (Dkt. 149) ¶ 5; Aff. Ruggiero (Dkt. 150) ¶ 5; Aff. Rumunno (Dkt. 151) ¶ 5; Decl. Hermosillo (Dkt. 152) ¶ 4; Decl. C. Banyon (Dkt. 153) ¶¶ 4-5; Decl. Sibert (Dkt. 154) ¶¶ 4-5; Decl. K. Banyon (Dkt. 155) ¶ 4; Decl. Reiff (Dkt. 156) ¶ 4; Decl. Windsor (Dkt. 157) ¶ 5; Decl. Powell (Dkt. 158) ¶ 5; Decl. Rammell (Dkt. 159) ¶ 4; Decl. Harrington (Dkt. 160) ¶ 5; Decl. Terry (Dkt. 161) ¶ 4; Decl. Hyslip (Dkt. 162) ¶ 3; Decl. Daines (Dkt. 163) ¶ 4; Decl. Murdock (Dkt. 164) ¶ 4; Decl. Moore (Dkt. 165) ¶ 4; Decl. Gray (Dkt. 166) ¶ 5; Decl. Straub (Dkt. 167) ¶ 5; *see also* Sibert Dep. (Dkt. 77) at 59, 64-66, 91-96; Banyon Dep. (Dkt. 82) at 38-39, 44, 46, 150-51; Delgado Dep. (Dkt. 73) at 33-34, 44-48, 75-76, 81-83; Harrington Dep. (Dkt. 81) at 38-39, 77-79, 82-83, 98; Ruggiero Dep. (Dkt. 70) at 58, 60, 70-71,

131; Powell Dep. (Dkt. 71) at 141-44.)  Such services, all rendered by attorneys, fall squarely within the definition of the "practice of law" for all 50 states.[6]  *See* Ex. A.

None of that should come as a surprise.  Indeed, if a solo practitioner in, say, Fond du Lac, assisted a local client in renegotiating a residential mortgage loan with Chase Bank (or negotiated a short sale, or defended the homeowner against a foreclosure action), no one would question whether the lawyer was engaged in the practice of law.  Indeed, it seems certain that attorneys throughout Wisconsin (and elsewhere) provide such services to clients every day.

In this case, it appears that the CFPB's dispute with TMLG and CFLG is based on the *size* of their practice, not the substance of their practice.  The CFPB contends that because Defendants had attorneys across the country, and relied heavily on technology, and non-lawyer paralegals to perform work (and keep costs down), they were no longer engaged in the practice of law.  The CFPB is wrong.

*First*, the CFPB cannot complain that TMLG and CFLG delegated work to non-lawyers. Such delegation is permitted and does not remove those firms (or their attorneys) from the "practice of law."  Indeed, virtually every law firm, in-house legal department, and judicial chambers in the country uses non-lawyers to assist the attorneys.  These include paralegals, investigators, law clerks, receptionists, court runners and the like.  Every state has adopted a version of Model Rule of Professional Conduct 5.3, which permits lawyers to delegate tasks to non-lawyer under the supervision of an attorney:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:
>
> > (a)     a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm

---

[6] That should end the analysis, particularly in light of this Court's finding that "an attorney's violation of a state rule of professional conduct or regarding client trust accounts does not automatically equate to an unfair or deceptive mortgage loan practice."  (Dkt. 144 at 21)

shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b)      a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer[.]

MODEL RULES OF PROF'L CONDUCT R. 5.3; Ex. A at II for each state.[7]  The CFPB may contend that

TMLG and CFLG failed to adequately supervise their non-lawyer paralegals.  The undisputed

evidence shows otherwise.  TMLG and CFLG non-attorney support staff worked with clients to

gather information and documents necessary to secure loan modification or for other services, and

such materials (once compiled) were reviewed by attorneys to ensure they were properly done.

(Def. PFOF (Dkt. 112) at ¶¶ 41-44, 48, 49, 95, 97, 99-102)  Moreover, even if the CFPB could

show that TMLG and CFLG attorneys failed to adequately supervise their non-lawyer paralegals

---

[7] *See* ALA. RULES OF PROF'L CONDUCT R. 5.3; ALASKA RULES OF PROF'L CONDUCT R. 5.3; ARIZ. RULES OF PROF'L CONDUCT R. 5.3; ARK. RULES OF PROF'L CONDUCT R. 5.3; *Hu v. Fang*, 104 Cal. App. 4th 61, 64 (2002); *Vaughn v. State Bar*, 494 P.2d 1257 (Cal. 1972); *Spindell v. State*, 530 P.2d 168 (Cal. 1975); COLO. RULES OF PROF'L CONDUCT R. 5.3; CONN. RULES OF PROF'L CONDUCT R. 5.3; DEL. RULES OF PROF'L CONDUCT R. 5.3; FL. RULES OF PROF'L CONDUCT R. 4-5.3; GA. STATE BAR RULES AND REGS., R. 5.3; HAWAII RULES OF PROF'L CONDUCT R. 5.3; IDAHO RULES OF PROF'L CONDUCT R. 5.3; ILL. RULES OF PROF'L CONDUCT R. 5.3; IND. RULES OF PROF'L CONDUCT R. 5.3; IOWA RULES OF PROF'L CONDUCT R. 32:5.3; KAN. RULES OF PROF'L CONDUCT R. 5.3; KY. RULES OF PROF'L CONDUCT R. 5.3; LA. RULES OF PROF'L CONDUCT R. 5.3; ME. RULES OF PROF'L CONDUCT R. 5.3; MD. RULES OF PROF'L CONDUCT R. 5.3; MASS. RULES OF PROF'L CONDUCT R. 5.3; MICH. RULES OF PROF'L CONDUCT R. 5.3; MINN. RULES OF PROF'L CONDUCT R. 5.3; MISS. RULES OF PROF'L CONDUCT R. 5.3; MO. RULES OF PROF'L CONDUCT R. 4-5.3; MONT. RULES OF PROF'L CONDUCT R. 5.3; NEB. RULES OF PROF'L CONDUCT R. 3-505.3; NEV. RULES OF PROF'L CONDUCT R. 5.3; N.H. RULES OF PROF'L CONDUCT R. 5.3; N.J. RULES OF PROF'L CONDUCT R. 5.3; N. MEX. RULES OF PROF'L CONDUCT R. 16-503; N.Y. RULES OF PROF'L CONDUCT R. 5.3; N.C. RULES OF PROF'L CONDUCT R. 5.3; N.D. RULES OF PROF'L CONDUCT R. 5.3; OHIO RULES OF PROF'L CONDUCT R. 5.3; OKL. RULES OF PROF'L CONDUCT R. 5.3; OR. RULES OF PROF'L CONDUCT R. 5.3; PA. RULES OF PROF'L CONDUCT R. 5.3; R.I. RULES OF PROF'L CONDUCT R. 5.3; S.C. RULES OF PROF'L CONDUCT R. 5.3; S.D. RULES OF PROF'L CONDUCT R. 5.3; TENN. RULES OF PROF'L CONDUCT R. 5.3; TEXAS RULES OF PROF'L CONDUCT R. 5.03; UTAH RULES OF PROF'L CONDUCT R. 5.3; VT. RULES OF PROF'L CONDUCT R. 5.3; WA. RULES OF PROF'L CONDUCT R. 5.3; W.VA. RULES OF PROF'L CONDUCT R. 5.3; WIS. RULES OF PROF'L CONDUCT R. 20:5.3; WYO. RULES OF PROF'L CONDUCT R. 5.3; D.C. RULES OF PROF'L CONDUCT R. 5.3

– and it cannot – such a showing would be irrelevant.  A law firm's (or an attorney's) failure to supervise a paralegal does not somehow mean that the firm (or the attorney) has stopped "practicing law."  Rather, at most, it means that the firm (or attorney) is "practicing law" but violating a particular Rule of Professional Conduct.  This Court has already struck Section (a)(3) of Regulation O's attorney exemption (which requires attorneys to demonstrate compliance with the Rules of Professional Conduct).

*Second*, national law firms such as TMLG and CFLG (and Kirkland & Ellis, Foley & Lardner and the like) are fully entitled to represent clients in multiple states.  Nearly all states have adopted a form of Model Rule of Professional Conduct 5.5, which expressly permits the multi-jurisdictional practice of law provided that an in-state attorney is associated with and participates in the matter:

> (c)    A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:
>
> (1)    are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter[.]

MODEL RULES OF PROF'L CONDUCT R. 5.5; *see also* Ex. A at III for each state.[8]  Again, that is

exactly what Defendants did.  Every client's file was reviewed ***twice*** by an attorney in the state in

which the client was located, after the initial reviews were performed by an attorney in Chicago.

(Def. PFOF (Dkt. 112) at ¶ 48-50, 42-44, 101-102; Sibert Dep. (Dkt. 77) at 93-97, 98-100)

Attorneys in the client's state provided foreclosure defense services, sometimes in tandem with a

Chicago-based attorney.  (Decl. C. Banyon (Dkt. 153) ¶¶ 4-5; Decl. Murdock (Dkt. 164) ¶ 4; Decl.

Reiff (Dkt. 156) ¶ 4)  All of that is permissible under the relevant rule in all 50 states.  (Ex. A)

Here again, the CFPB might quibble with the relative levels of involvement of specific attorneys

in specific instances.  However, that does not impact whether the firm (or the attorney) is engaged

---

[8] ALA. RULES OF PROF'L CONDUCT R. 5.5 (b); ALASKA RULES OF PROF'L CONDUCT R. 5.5 (c); ARIZ. RULES OF PROF'L CONDUCT R. 5.5 (c), (f); ARK. RULES OF PROF'L CONDUCT R. 5.5 (c); CAL. RULES OF COURT, R. 9.48; COLO. REV. STAT. ANN. § 205.1; CONN. RULES OF PROF'L CONDUCT R. 5.5 (c); DEL. RULES OF PROF'L CONDUCT R. 5.5 (c); FL. RULES OF PROF'L CONDUCT R. 4-5.5 (c); GA. RULES OF PROF'L CONDUCT R. 5.5 (c); HAWAII RULES OF PROF'L CONDUCT R. 5.5; IDAHO RULES OF PROF'L CONDUCT R. 5.5 (b); ILL. RULES OF PROF'L CONDUCT R. 5.5 (c); IND. RULES OF PROF'L CONDUCT R. 5.5 (c); IOWA RULES OF PROF'L CONDUCT R. 32:5.5 (c); KAN. RULES OF PROF'L CONDUCT R. 5.5 (c); KY. RULES OF PROF'L CONDUCT R. 5.5 (c); KY. SUP. CT. R. 3.030(2); LA. RULES OF PROF'L CONDUCT R. 5.5 (c); ME. RULES OF PROF'L CONDUCT R. 5.5 (c); MD. RULES OF PROF'L CONDUCT R. 5.5 (c); MASS. RULES OF PROF'L CONDUCT R. 5.5 (c); MICH. RULES OF PROF'L CONDUCT R. 5.5 (c); MINN. RULES OF PROF'L CONDUCT R. 5.5 (c); MISS. RULES OF PROF'L CONDUCT R. 5.5; MO. RULES OF PROF'L CONDUCT R. 4-5.5 (c); MONT. RULES OF PROF'L CONDUCT R. 5.5; NEB. RULES OF PROF'L CONDUCT R. 3-505.5(c); NEV. RULES OF PROF'L CONDUCT R. 5.5 (b)(5); N.H. RULES OF PROF'L CONDUCT R. 5.5 (c); N.J. RULES OF PROF'L CONDUCT R. 5.5 (b)(3)(iv), (c); N.MEX. RULES OF PROF'L CONDUCT R. 16-505 (E); N.Y. COMP. CODES R. & REGS. TIT. 22, §523.2; N.C. RULES OF PROF'L CONDUCT R. 5.5 (c); N.D. RULES OF PROF'L CONDUCT R. 5.5 (b), (d); OHIO RULES OF PROF'L CONDUCT R. 5.5 (c); OKL. RULES OF PROF'L CONDUCT R. 5.5 (c); OR. RULES OF PROF'L CONDUCT R. 5.5 (c); PA. RULES OF PROF'L CONDUCT R. 5.5 (c); R.I. RULES OF PROF'L CONDUCT R. 5.5 (c); S.C. RULES OF PROF'L CONDUCT R. 5.5 (c); S.D. RULES OF PROF'L CONDUCT R. 5.5 (c); TENN. RULES OF PROF'L CONDUCT R. 5.5 (c); TEXAS RULES OF PROF'L CONDUCT R. 5.05; UTAH RULES OF PROF'L CONDUCT R. 5.5 (c); VT. RULES OF PROF'L CONDUCT R. 5.5 (c); VA. RULES OF PROF'L CONDUCT R. 5.5 (c); VA. RULES OF PROF'L CONDUCT R. 5.3; WA. RULES OF PROF'L CONDUCT R. 5.5 (c); W.VA. RULES OF PROF'L CONDUCT R. 5.5 (c), (f); WIS. RULES OF PROF'L CONDUCT R. 20:5.5 (c), (e); WYO. RULES OF PROF'L CONDUCT R. 5.5 (c); D.C. CT. APP. R. 49(c)(13)

18

in the practice of law.  Rather, at most, it would suggest that the firm (or the attorney) may have violated a rule of professional conduct.  That is a matter for state bar authorities – not the CFPB.

### C.    Defendants Fall Within The CFPA's Attorney Exemption.

Under the CFPA, the CFPB is expressly prohibited from exercising "supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law."  12 U.S.C. § 5517(e)(1).  However, Congress did not completely exempt attorneys from the CFPB's purview.  Section 5517 contains exceptions to the general attorney exemption.  None of those exemptions apply here.

*First*, the CFPB retains enforcement jurisdiction over an attorney's activities where the attorney's conduct does not constitute the practice of law.  As discussed extensively above, TMLG and CFLG were engaged in the practice of law in states in which their attorneys were licensed to practice.

*Second*, the CFPB may regulate certain activities where the attorney's client is ***not*** a consumer.  12 U.S.C. § 5517(e)(2); *see also Frederick J. Hanna*, 2015 WL 4282252 at * 11 (finding that the CFPB was authorized to regulate conduct of creditors' attorney under Section 5517(e)(2)(B)).  Specifically, attorneys are not excluded where they offer or provide consumer financial services that relate to consumers who are ***not*** receiving legal advice from that attorney.  It is undisputed that Defendants' clients were consumers.  Moreover, Defendants' clients received legal advice and services from attorneys.  Accordingly, Defendants do not fall within the scope of the second exception.

*Third*, the CFPB is permitted to exercise authority "with respect to any attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer laws or the

authorities transferred under subtitle F or H."  12 U.S.C. § 5517(e)(3).  However, this exception

does not give the CFPB *carte blanche* authority over attorneys.  Rather, the CFPB must point to

some specific authority.  The only authority relied upon by the CFPB has now been invalidated in

part by this Court.  Moreover, as this Court correctly noted:

> [P]laintiff fails to explain why Congress would prohibit plaintiff from regulating
> attorneys engaged in the practice of law and then create an exception that swallows
> that general prohibition.  It is clear from the Consumer Protection Act that Congress
> did not want plaintiff to regulate the activities of attorneys if those activities were
> part of the practice of law.  Interpreting the exception in § 5517(e)(3) as granting
> plaintiff authority to regulate an attorney's professional conduct violates the clear
> mandate against regulating attorneys engaged in the practice of law.

(Dkt. 144 at 19-20)  Put simply, to the extent that this "grandfather" provision allows the CFPB to

regulate attorneys by "looking back" to the previously-enacted MARS Rule (now codified as

Regulation O), the scope of attorney regulation can be as broad as the attorney exemption in

Regulation O (as modified by this Court's January 14, 2016 Order).  As set forth above, Defendants

fall easily within the scope of the modified Regulation O attorney exemption.  Accordingly, they

would satisfy this exemption as well.

## CONCLUSION

For the reasons set forth herein, and in Defendants' initial Motion for Summary Judgment

(and related Memorandum, Reply and supporting evidentiary materials), Defendants respectfully

move the Court to invalidate the additional clause of 12 C.F.R § 1015.7(a)(3) and (b) as identified

herein, and to enter judgment on all claims in favor of Defendants and against the Consumer

Financial Protection Bureau.

Dated:  February 5, 2016

*s/ Emily A. Shupe*
Douglas M. Poland
Rathje & Woodward, LLC
10 E. Doty St., Suite 800
Madison, WI 53703
dpoland@rathjewoodward.com

Timothy D. Elliott (*pro hac vice*)
Emily A. Shupe (*pro hac vice*)
Jordan R. Franklin (*pro hac vice*)
Rathje & Woodward, LLC
300 E. Roosevelt Rd., Ste. 300
Wheaton, IL 60187
telliott@rathjewoodward.com
eshupe@rathjewoodward.com
jfranklin@rathjewoodward.com
Telephone: (630) 668-8500

## CERTIFICATE OF FILING & SERVICE VIA CM/ECF

I, Emily A. Shupe, an attorney, do hereby certify that on February 5, 2016, I electronically filed the above document and all other documents referenced therein with the clerk of the court by using the CM/ECF system. I further certify that a notice of electronic filing related to the above document was sent to all counsel of record.

Dated:  February 5, 2016                                  /s/ Emily A. Shupe