UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CONSUMER FINANCIAL<br>PROTECTION BUREAU,<br><br>         Plaintiff,<br><br>  v.<br><br>THE MORTGAGE LAW GROUP, LLP, (D/B/A THE LAW FIRM OF MACEY, ALEMAN & SEARNS), CONSUMER FIRST LEGAL GROUP, LLC, THOMAS G. MACEY, JEFFREY J. ALEMAN, JASON E. SEARNS, and HAROLD E. STAFFORD,<br><br>         Defendants. | Case No. 3:14-cv-00513 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND STATEMENT
OF ADDITIONAL PROPOSED FINDINGS OF FACT IN SUPPORT
OF PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE
TO CERTAIN DEFENDANTS' SUPPLEMENTAL BRIEF IN
<u>SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

  Defendants Consumer First Legal Group, LLC, Thomas G. Macey, Jeffrey J. Aleman, Jason E. Searns, and Harold E. Stafford (collectively "Defendants"), by and through their undersigned counsel, respond to Plaintiff Consumer Financial Protection Bureau's ("CFPB") Local Rule 56.1 Statement of Undisputed Facts[1] as follows:

  1.  TMLG's and CFLG's ("Companies") welcome packets contained instructions to consumers on how to apply for HAMP, but not for any other loan modification program. The forms contained in the welcome packet included the same forms available to consumers on the HAMP website, and a financial worksheet that is substantially similar to one or more worksheets provided by mortgage servicers or

---

[1] On January 14, 2016, this Court ordered the parties to file supplemental briefs on the issues identified by the Court. (Dkt. 144) Defendants did not understand this Court's ruling as requiring additional proposed findings of fact, but rather supplemental briefs with exhibit evidence. However, Defendants have responded to Plaintiff's additional proposed facts herein, and all of the evidence submitted with Defendants' opening brief is responsive to the proposed facts set forth herein.

1

lenders. Bureau's Motion Ex. 34 (TMLG Welcome Packet for Consumers); Plaintiff's Motion for Summary Judgment ("Bureau's Motion") Ex. 21 (CFLG Welcome Packet for Consumers); Plaintiff's Memorandum of Law in Response to Certain Defendants' Supplemental Brief in Support of Their Motion for Summary Judgment ("Bureau's Supp. Mem."); Citibank Forms for Housing Counselors, Hardship Package, www.citibank.com/citi/citizen/community/ homeownershippreservation/pages/forms.html (last visited Feb. 16, 2016) (including financial worksheet).

**RESPONSE: Disputed in part.**

The CFPB cites generally to the HAMP website and Citibank's online forms for housing counselors. It does not adequately describe the pages it references, it did not provide any pin cites pages to which it is referring, and it did not attach any such forms to its response brief. Thus, it is impossible to determine what exactly forms or worksheets the CFPB is citing.

Regardless, Defendants do not dispute that the TMLG and CFLG Welcome Packets included instructions as to how to apply to the HAMP program. However, TMLG and CFLG provided a variety of legal services to clients to keep clients in their home permanently or as long as possible, all of which required the firms to evaluate the financial hardship (*i.e.* through review of the requested financial documents). (Def. PFOF (Dkt. 112) ¶¶ 33, 82, 84, 101; CFLG Retainer Agreement (Dkt. 101-17); TMLG Retainer Agreement (Dkt. 101-4); Aleman Dep. (Dkt. 76) 51:18-25; Aleman Decl. (Dkt. 105), ¶¶ 6, 16; CFLG (Aleman) Dep. I (Dkt. 66) 44:3-23) TMLG and CFLG accomplished this goal through loan modification, foreclosure defense, deed-in-lieu of foreclosure, short sales and other possible remedies for a client's hardship, including "cash for keys" programs. (*Id.*)

2. The cover letter to the Companies' welcome packets instructed consumers to complete the HAMP application's required forms, and to then submit those forms and any additional required documentation to the Companies. Bureau's Motion Ex. 34 (TMLG Welcome Packet for Consumers); Bureau's Motion Ex. 21 (CFLG Welcome Packet for Consumers).

**RESPONSE: Not materially disputed.**

The Welcome Packets requested that clients collect, complete, and submit to TMLG or CFLG a variety of documents and forms, relating to the client's financial situation. (Pl. Mot. Summ. J. Ex. 21 (Dkt. 101-21); Pl. Mot. Summ. J. Ex. 34 (Dkt. 101-34))  Although many of the documents requested by TMLG and CFLG are required submissions for a HAMP application, TMLG and CFLG utilized the documents and forms to review the client's financial status, evaluate the client's best course of action, and provide the appropriate legal services to the client's needs. (*Id.*; CFLG Retainer Agreement (Dkt. 101-17); TMLG Retainer Agreement (Dkt. 101-4); Aleman Dep. (Dkt. 76) 51:18-25; Aleman Decl. (Dkt. 105), ¶¶ 6, 16; CFLG (Aleman) Dep. I (Dkt. 66) 44:3-23; *see also* Resp. ¶ 1, *supra*.)  In addition, TMLG and CFLG provided a full array of mortgage relief legal services to its clients, including foreclosure defense, short sales, cash-for-keys, and deeds in lieu of foreclosure. (*See* Resp. ¶ 1, *supra*)

> 3. Local attorneys did not negotiate with mortgage servicers or lenders in the course of providing loan modification services to consumers.  Deposition of Frank Grey Powell, July 15, 2015 ("Powell Dep."), ECF No. 71, at 237-238; Deposition of Daniel Goldsmith Ruggiero, July 8, 2015 ("Ruggiero Dep."), ECF No. 70, at 173; Deposition of William P. Harrington, Jr. June 17, 2015 ("Harrington Dep."), ECF No. 81, at 204, 240.

**RESPONSE:**  **Not materially disputed.**

While generally the local attorneys did not have contact with lenders, local attorneys' tasks included reviewing client financial disclosures and other documents, determining whether mortgage modification was appropriate and the best option for the client, supervising the efforts of CFLG and TMLG staff members in collecting client financial information and documents and negotiating mortgage modifications on behalf of the client, reviewing proposed mortgage modifications from lenders, determining whether such proposed modifications were appropriate for the client, and representing clients in court in foreclosure actions filed by their lenders. (*See id*; *see also* Frier Decl. (Dkt. 145); Trebbe Decl. (Dkt. 146); Gustafson Aff. (Dkt. 147);

3

Tannenbaum Aff. (Dkt. 148); Ramunno Aff. (Dkt. 151); C. Banyon Decl. (Dkt. 153); K. Banyon Decl. (Dkt. 155); Reiff Decl. (Dkt. 156); Windsor Aff. (Dkt. 157); Powell Decl. (Dkt. 158); Rammell Decl. (Dkt. 159); Terry Decl. (Dkt. 161); Daines Decl. (Dkt. 163); Murdock Decl. (Dkt. 164); Hull Decl. (Dkt. 171); Fears Aff. (Dkt. 173); Ruggiero Aff. (Dkt. 174); Hermasillo Decl. (Dkt. 175); Sibert Decl. (Dkt. 176); Hyslip Decl. (Dkt. 177); Gray Decl. (Dkt. 178); Straub Aff. (Dkt. 179); Harrington Decl. (Dkt. 180); Moore Decl. (Dkt. 181) (collectively, the "Class B Declarations"); Aleman Decl. (Dkt. 168); Def. PFOF at ¶¶ 43, 50, 85-86, 100-02; Sibert Dep. (Dkt. 77) at 59, 64-66, 91-96; Banyon Dep. (Dkt. 82) at 38-39, 44, 46, 150-51; Delgado Dep. (Dkt. 73) at 33-34, 44-48, 75-76, 81-83; Harrington Dep. (Dkt. 81) at 38-39, 77-79, 82-83, 98; Ruggiero Dep. (Dkt. 70) at 58, 60, 70-71, 131; Powell Dep. (Dkt. 71) at 141-44)

   4. Negotiating with mortgage servicers or lenders is not a service that is delineated in any of the stages of loan modification work described in Exhibit B of TMLG's or CFLG's retainer agreement.  Bureau's Motion Ex. 4 at CFPB-TMLG-0037271-73 (TMLG Retainer Agreement); Bureau's Motion Ex. 17 (CFLG Retainer Agreement) at DEF.000198-200.

**RESPONSE:  Disputed.**

Exhibit B to the TMLG Retainer Agreement provides that in some cases, "TMLG's provision of Mortgage Relief Services includes negotiating for modification of Client's mortgage loan terms, and Stage III services include "continued monitoring of loan modification package review process with lender" and "proposal of alternative loan solution where deemed necessary." (TMLG Retainer (Dkt. 101-4) at CFPB-TMLG-0037271-73)  Moreover, a complete review of the TMLG Retainer Agreement demonstrates that agreement is replete with references to negotiations with the client's lender, various forms of mortgage workout solutions, loan modifications, and debt negotiating and restructuring.  (*See, e.g., id.* at § III(a) ("TMLG will attempt to resolve the litigation prior to formally responding to the lawsuit);  § III(e) ("TMLG, as part of its defense of any

4

foreclosure action, will attempt to enter into a mortgage workout solution with Client's mortgage servicer(s)"); § III(e) ("Client agrees that TMLG is retained to…communicat[e] and negotiat[e] with the servicer of the note…to effectuate a workout solution for the Property"); § (V) ("TMLG…will supervise all negotiations"); § VII ("Client expressly agrees that TMLG makes no specific guarantee regarding the outcome of…negotiation for a mortgage workout solution"); § X(c) ("The outcome of…TMLG's negotiation of any mortgage workout solution is uncertain"); § XIII(c) ("Client authorizes TMLG to negotiate mortgage workout solutions"); Exhibit A thereto (numerous references to various mortgage workout solutions)).

Exhibit B to the CFLG Retainer Agreement provides that in some cases, "CFLG's provision of Mortgage Relief Services includes negotiating for modification of Client's mortgage loan terms, and Stage V through VIII services include "continued monitoring of loan modification package review process with lender" and "continued follow up with lender regarding review of loan modification package." (CFLG Retainer (Dkt. 101-17) at DEF.00198-200) Moreover, a complete review of the CFLG Retainer Agreement demonstrates that agreement is replete with references to negotiations with the client's lender, various forms of mortgage workout solutions, loan modifications, and debt negotiating and restructuring. (*See, e.g., id.* at § III(a) ("CFLG will attempt to resolve the litigation prior to formally responding to the lawsuit); § III(e) ("CFLG, as part of its defense of any foreclosure action, will attempt to enter into a mortgage workout solution with Client's mortgage servicer(s)"); § III(e) ("Client agrees that CFLG is retained to…communicat[e] and negotiat[e] with the servicer of the note…to effectuate a workout solution for the Property"); § (V) ("CFLG…will supervise all negotiations"); § VII ("Client expressly agrees that CFLG makes no specific guarantee regarding the outcome of…negotiation for a mortgage workout solution"); § X(c) ("The outcome of…CFLG's negotiation of any mortgage

workout solution is uncertain"); § XIII(c) ("Client authorizes CFLG to negotiate mortgage workout solutions"); Exhibit A thereto (numerous references to various mortgage workout solutions)).

> 5. The local attorneys' reviews of intake files, and the sending of automatically-generated emails with local attorneys' names, were described as "attorney touches" implemented by Aleman. Deposition of Kelly Patrick Sibert, April 23, 2015 ("Sibert Dep."), ECF No. 77, at 227-228.

**RESPONSE: Disputed in part.**

Sibert's testimony pertains to TMLG only, as Sibert had no involvement in CFLG. (Sibert Dep. (Dkt. 77) at 22-23) Sibert testified that, to provide the clients with additional attorney contact, the decision was made to have TMLG attorneys conduct intake reviews and speak to prospective clients. (Sibert Dep. (Dkt. 77) at 227-28) In addition, TMLG sent out several emails in the name of the local attorney to keep clients informed as to the progress of their loan modification packages. (*Id.*) Those emails were approved by the local attorneys beforehand, and local attorneys agreed that to represent the firm in their respective state and that their names "may be listed as a member of the Firm as the Firm deems appropriate[.]. (*Id.*; *see also* TMLG Class B Agreement (Dkt. 101-12) at §§ 1, 6(a); CFLG Class B Agreement (Dkt. 101-18) at §§ 1, 6(a))

While Sibert described the intake reviews and as "extra attorney touches," those were not the only "attorney touches" that TMLG attorneys had with client files and clients. Every client's file was reviewed by an attorney at TMLG/CFLG headquarters and by an attorney in the client's state prior to submission to the client's lender, and attorneys were available to speak with clients as needed. (Def. PFOF (Dkt. 112) at ¶¶ 31-36, 41-44, 48-50, 64, 82-86, 95-99, 101-02; Sibert Dep. (Dkt. 77) at 75, 93-100, 171, 248-51; Banyon Dep. (Dkt. 82) at 138; Aleman Dep. (Dkt. 76) at 74-78, 132-36, 178, 256-57, 280-81; 1st Aleman Decl. (Dkt. 105) at ¶ 21; CFLG (Aleman) Dep. (Dkt. 66) at 10, 14-16, 19-23, 25, 53-54, 71, 127-28, 141-45, 149, 160-63; Delgado Dep. (Dkt. 73)

at 33-34, 45-51, 72-73, 81, 82-84, 115-17) TMLG and CFLG attorneys represented clients vis-à-vis their mortgage lenders, and provided services ranging from loan modifications to short sales to foreclosure defense services. (*See id*; *see also* Frier Decl. (Dkt. 145); Trebbe Decl. (Dkt. 146); Gustafson Aff. (Dkt. 147); Tannenbaum Aff. (Dkt. 148); Ramunno Aff. (Dkt. 151); C. Banyon Decl. (Dkt. 153); K. Banyon Decl. (Dkt. 155); Reiff Decl. (Dkt. 156); Windsor Aff. (Dkt. 157); Powell Decl. (Dkt. 158); Rammell Decl. (Dkt. 159); Terry Decl. (Dkt. 161); Daines Decl. (Dkt. 163); Murdock Decl. (Dkt. 164); Hull Decl. (Dkt. 171); Fears Aff. (Dkt. 173); Ruggiero Aff. (Dkt. 174); Hermasillo Decl. (Dkt. 175); Sibert Decl. (Dkt. 176); Hyslip Decl. (Dkt. 177); Gray Decl. (Dkt. 178); Straub Aff. (Dkt. 179); Harrington Decl. (Dkt. 180); Moore Decl. (Dkt. 181) (collectively, the "Class B Declarations"); Aleman Decl. (Dkt. 168); Def. PFOF at ¶¶ 43, 50, 85-86, 100-02; Sibert Dep. (Dkt. 77) at 59, 64-66, 91-96; Banyon Dep. (Dkt. 82) at 38-39, 44, 46, 150-51; Delgado Dep. (Dkt. 73) at 33-34, 44-48, 75-76, 81-83; Harrington Dep. (Dkt. 81) at 38-39, 77-79, 82-83, 98; Ruggiero Dep. (Dkt. 70) at 58, 60, 70-71, 131; Powell Dep. (Dkt. 71) at 141-44) Those services included reviewing client financial disclosures and other documents, determining whether mortgage modification was appropriate and the best option for the client, supervising the efforts of CFLG and TMLG staff members in collecting client financial information and documents and attempting to obtain mortgage modifications on behalf of the client, reviewing proposed mortgage modifications from lenders, determining whether such proposed modifications were appropriate for the client, and representing clients in court. (*Id.*)

6. A local attorney licensed in Connecticut, Maine, Massachusetts, New Jersey, and New York never advised TMLG or CFLG consumers enrolled in the Companies' loan modification services regarding the law; never selected, drafted, or completed any legal documents or agreements; never negotiated any legal rights or responsibilities for consumers; and never rendered any service that required the use of legal knowledge or skill. The same local attorney also testified that he never authorized TMLG or CFLG to sign retainer agreements with his digital signature. Ruggiero Dep., ECF No. 70, at 172174, 176, 190, 203.

7

**RESPONSE:  Disputed in part.**

In his deposition, Ruggiero testified that he used his past experiences, including going to court and performing mediations, when reviewing consumer intake files.  (Ruggiero Dep. (Dkt. 70) at 176)  Ruggiero further testified that Class B attorneys rendered state-specific legal advice and legal services for purposes of litigation. (Dkt. 70 at 90-91)  Ruggiero also testified that he considered himself to have an attorney-client relationship with the clients assigned to him, and that there is value in having attorneys involved in the mortgage modification process.  (*Id.* (Dkt. 70) at 31, 169-172)  Moreover, Ruggiero stated in his affidavit that he "provided legal services to TMLG and CFLG clients in Connecticut, Maine, Massachusetts, New Jersey and New York.  Those services included reviewing client financial disclosures and other documents, determining whether mortgage modification was the best option for the client." (Ruggiero Aff. (Dkt. 174) ¶ 5)

Ruggiero's deposition and affidavit testimony is consistent with the numerous other TMLG and CFLG local attorneys, who testified that they were responsible for reviewing client financial disclosures and other documents, determining whether mortgage modification was appropriate and the best option for the client, supervising the efforts of CFLG and TMLG staff members in collecting client financial information and documents and attempting to obtain mortgage modifications on behalf of the client, reviewing proposed mortgage modifications from lenders, determining whether such proposed modifications were appropriate for the client, and representing clients in court. (Frier Decl. (Dkt. 145); Trebbe Decl. (Dkt. 146); Gustafson Aff. (Dkt. 147); Tannenbaum Aff. (Dkt. 148); Ramunno Aff. (Dkt. 151); C. Banyon Decl. (Dkt. 153); K. Banyon Decl. (Dkt. 155); Reiff Decl. (Dkt. 156); Windsor Aff. (Dkt. 157); Powell Decl. (Dkt. 158); Rammell Decl. (Dkt. 159); Terry Decl. (Dkt. 161); Daines Decl. (Dkt. 163); Murdock Decl. (Dkt. 164); Hull Decl. (Dkt. 171); Fears Aff. (Dkt. 173); Ruggiero Aff. (Dkt. 174); Hermasillo Decl.

(Dkt. 175); Sibert Decl. (Dkt. 176); Hyslip Decl. (Dkt. 177); Gray Decl. (Dkt. 178); Straub Aff. (Dkt. 179); Harrington Decl. (Dkt. 180); Moore Decl. (Dkt. 181); Aleman Decl. (Dkt. 168); Def. PFOF at ¶¶ 43, 50, 85-86, 100-02; Sibert Dep. (Dkt. 77) at 59, 64-66, 91-96; Banyon Dep. (Dkt. 82) at 38-39, 44, 46, 150-51; Delgado Dep. (Dkt. 73) at 33-34, 44-48, 75-76, 81-83; Harrington Dep. (Dkt. 81) at 38-39, 77-79, 82-83, 98; Ruggiero Dep. (Dkt. 70) at 58, 60, 70-71, 131; Powell Dep. (Dkt. 71) at 141-44))

7. A local attorney licensed in Pennsylvania and New Jersey never advised consumers enrolled in the Companies' loan modification services regarding the law; never appeared for consumers before public tribunals charged with the power of determining liberty or property rights; never gave legal advice that required the use of legal knowledge or skill; never rendered a service that required the use of legal knowledge or skill; never gave advice as to the legal rights and responsibilities of others; never selected, drafted or completed documents for consumers; never negotiated legal rights or responsibilities for consumers; and never represented consumers in court or in any other formal adjudicative proceeding. Harrington Dep., ECF No. 81, at 202-204.

**RESPONSE:** Disputed in part.

At his deposition, Harrington testified that he would review a client intake file to "confirm or deny that there would be a legal benefit to the client based on their information." (Harrington Dep. (Dkt. 81) at 36) Harrington further testified that, "[a]t TMLG, they would take a look at it and they would send it over to a Pennsylvania attorney or one of the other local attorneys so that an attorney licensed in that state would be able to take a role on that file and say, you know, yes, I believe that there is a valid legal reason to undertake this representation." (*Id.*) In addition, Harrington submitted a declaration stating that "[d]uring my Class B term with TMLG and CFLG, I reviewed intake submissions and reviewed client financials and documents, followed up with CFLG and TMLG employees/staff regarding client information and worked with other members of the TMLG and CFLG entities." (Harrington Decl. (Dkt. 180) ¶ 5)

9

Harrington's deposition and declaration testimony is consistent with the numerous other TMLG and CFLG local attorneys, who testified that they were responsible for reviewing client financial disclosures and other documents, determining whether mortgage modification was appropriate and the best option for the client, supervising the efforts of CFLG and TMLG staff members in collecting client financial information and documents and attempting to obtain mortgage modifications on behalf of the client, reviewing proposed mortgage modifications from lenders, determining whether such proposed modifications were appropriate for the client, and representing clients in court. (Frier Decl. (Dkt. 145); Trebbe Decl. (Dkt. 146); Gustafson Aff. (Dkt. 147); Tannenbaum Aff. (Dkt. 148); Ramunno Aff. (Dkt. 151); C. Banyon Decl. (Dkt. 153); K. Banyon Decl. (Dkt. 155); Reiff Decl. (Dkt. 156); Windsor Aff. (Dkt. 157); Powell Decl. (Dkt. 158); Rammell Decl. (Dkt. 159); Terry Decl. (Dkt. 161); Daines Decl. (Dkt. 163); Murdock Decl. (Dkt. 164); Hull Decl. (Dkt. 171); Fears Aff. (Dkt. 173); Ruggiero Aff. (Dkt. 174); Hermasillo Decl. (Dkt. 175); Sibert Decl. (Dkt. 176); Hyslip Decl. (Dkt. 177); Gray Decl. (Dkt. 178); Straub Aff. (Dkt. 179); Harrington Decl. (Dkt. 180); Moore Decl. (Dkt. 181); Aleman Decl. (Dkt. 168); Def. PFOF at ¶¶ 43, 50, 85-86, 100-02; Sibert Dep. (Dkt. 77) at 59, 64-66, 91-96; Banyon Dep. (Dkt. 82) at 38-39, 44, 46, 150-51; Delgado Dep. (Dkt. 73) at 33-34, 44-48, 75-76, 81-83; Harrington Dep. (Dkt. 81) at 38-39, 77-79, 82-83, 98; Ruggiero Dep. (Dkt. 70) at 58, 60, 70-71, 131; Powell Dep. (Dkt. 71) at 141-44))

8. A local attorney licensed in Florida did not give legal advice, represent consumers in court, or communicate with consumers whose files she reviewed at intake and submission. Additionally, she did not select, draft, or complete any documents for consumers. Deposition of Jacqueline Delgado, April 9, 2015 ("Delgado Dep."), ECF No. 73, at 89, 111, 117.

**RESPONSE: Disputed.**

The CFPB misstates Ms. Delgado's testimony.

10

*First,* nothing on page 89 of Ms. Delgado's deposition supports the CFPB's claim that she "did not give legal advice, represent consumers in court, or communicate with consumers whose files she reviewed at intake and submission." (Pl. Resp. (Dkt. 184) at 41)

*Second,* on page 111 of Ms. Delgado's deposition, she specifically states that she *did* provide legal advice to TMLG clients:

> Q   Did you at any time give any legal advice or counsel to any TMLG consumers as to their rights and obligations under the law?
>
> \*               \*               \*
>
> A   *I would say yes at Delray*, but no during the reviews.
>
> Q   You would say yes while you were at Delray?
>
> A   Yes.

(Delgado Dep. (Dkt. 73) at 111-12) Delgado further testified that:

> Q   Did you ever provide legal advice to any of these consumers whose files you reviewed?
>
> A   I would – I would
>
> Q   Outside –
>
> A   Sorry.
>
> Q   - of the Delray office?
>
> A   Yeah. I would say doing these reviews is legal work.
>
> \*               \*               \*
>
> Q   So you said you did give legal advice or counsel to TMLG consumers as to their rights and obligations under the law while you were at Delray. What rights did you give legal advice about?
>
> \*               \*               \*
>
> A   Okay. Just their general rights as to how long they can be – a lot of the questions were how long can I be in the home, and how long do I need to

11

>pay my mortgage to qualify for a loan modification. ***Most of the time I would answer those according to the law.***
>
>\*            \*            \*
>
>Q      What obligations under the law did you provide legal advice about?
>
>A      When they would ask me if they were obligated to pay their mortgage.

(Delgado Dep. (Dkt. 73) at 92, 113-14) (emphasis added)

*Third,* Delgado did not testify that she never communicated with clients. Rather, she stated that she did not communicate with clients regarding her final pre-submission application review. (Delgado Dep. (Dkt. 73) at 117) What's more, Delgado testified that she regularly spoke to clients, and she considered her relationship with the clients to be an attorney-client relationship. (Delgado Dep. (Dkt. 73) at 45-51; 92, 98)

*Fourth,* Delgado testified that, as a Class B Attorney, she reviewed client files and evaluated the client's financial, personal, and family information to make determinations regarding whether the client was appropriate for loan modification; whether their loan submission package was properly documented; and whether the client could benefit from other legal services, including foreclosure defense or bankruptcy. (Delgado Dep. (Dkt. 73) at 33-34, 81-84; 115-17)

Delgado's deposition testimony is consistent with the numerous other TMLG and CFLG local attorneys, who testified that they were responsible for reviewing client financial disclosures and other documents, determining whether mortgage modification was appropriate and the best option for the client, supervising the efforts of CFLG and TMLG staff members in collecting client financial information and documents and attempting to obtain mortgage modifications on behalf of the client, reviewing proposed mortgage modifications from lenders, determining whether such proposed modifications were appropriate for the client, and representing clients in court. (Frier Decl. (Dkt. 145); Trebbe Decl. (Dkt. 146); Gustafson Aff. (Dkt. 147); Tannenbaum Aff. (Dkt.

148); Ramunno Aff. (Dkt. 151); C. Banyon Decl. (Dkt. 153); K. Banyon Decl. (Dkt. 155); Reiff Decl. (Dkt. 156); Windsor Aff. (Dkt. 157); Powell Decl. (Dkt. 158); Rammell Decl. (Dkt. 159); Terry Decl. (Dkt. 161); Daines Decl. (Dkt. 163); Murdock Decl. (Dkt. 164); Hull Decl. (Dkt. 171); Fears Aff. (Dkt. 173); Ruggiero Aff. (Dkt. 174); Hermasillo Decl. (Dkt. 175); Sibert Decl. (Dkt. 176); Hyslip Decl. (Dkt. 177); Gray Decl. (Dkt. 178); Straub Aff. (Dkt. 179); Harrington Decl. (Dkt. 180); Moore Decl. (Dkt. 181); Aleman Decl. (Dkt. 168); Def. PFOF at ¶¶ 43, 50, 85-86, 100-02; Sibert Dep. (Dkt. 77) at 59, 64-66, 91-96; Banyon Dep. (Dkt. 82) at 38-39, 44, 46, 150-51; Delgado Dep. (Dkt. 73) at 33-34, 44-48, 75-76, 81-83; Harrington Dep. (Dkt. 81) at 38-39, 77-79, 82-83, 98; Ruggiero Dep. (Dkt. 70) at 58, 60, 70-71, 131; Powell Dep. (Dkt. 71) at 141-44))

9. A local attorney licensed in North Carolina did not negotiate with mortgage servicers or lenders, or prepare any legal documents for consumers enrolled in the Companies' loan modification services. Powell Dep., ECF No. 71, at 235, 237-238.

**RESPONSE:** **Disputed.**

In his deposition, Powell testified that Class B Attorneys for TMLG and CFLG checked the CRM to review the progress of the file, responded to inquiries from clients, and spoke with lenders. (Powell Dep. (Dkt. 71) at 141-45) In addition, Powell indicated that Class B Attorneys gave advice on how to handle client files in states with expedited foreclosure processes. (Powell Dep. (Dkt. 71) at 74, 77, 80) Powell also testified that he considered himself to have an attorney-client relationship with clients assigned to him. (Powell Dep. (Dkt. 71) at 239-43) Furthermore, Powell submitted a declaration, in which he stated that:

> I provided legal services to TMLG and CFLG clients in North Carolina. Those services included reviewing client financial disclosures and other documents, determining whether mortgage modification was the best option for the client, supervising the efforts of CFLG and TMLG staff members in collecting client financial information and documents and attempting to obtain mortgage modifications on behalf of the client, reviewing proposed mortgage modifications from lenders, and advising whether to accept such modification.

(Powell Decl. (Dkt. 158) ¶ 5)

Powell's deposition and declaration testimony is consistent with the numerous other TMLG and CFLG local attorneys, who testified that they were responsible for reviewing client financial disclosures and other documents, determining whether mortgage modification was appropriate and the best option for the client, supervising the efforts of CFLG and TMLG staff members in collecting client financial information and documents and attempting to obtain mortgage modifications on behalf of the client, reviewing proposed mortgage modifications from lenders, determining whether such proposed modifications were appropriate for the client, and representing clients in court. (Frier Decl. (Dkt. 145); Trebbe Decl. (Dkt. 146); Gustafson Aff. (Dkt. 147); Tannenbaum Aff. (Dkt. 148); Ramunno Aff. (Dkt. 151); C. Banyon Decl. (Dkt. 153); K. Banyon Decl. (Dkt. 155); Reiff Decl. (Dkt. 156); Windsor Aff. (Dkt. 157); Powell Decl. (Dkt. 158); Rammell Decl. (Dkt. 159); Terry Decl. (Dkt. 161); Daines Decl. (Dkt. 163); Murdock Decl. (Dkt. 164); Hull Decl. (Dkt. 171); Fears Aff. (Dkt. 173); Ruggiero Aff. (Dkt. 174); Hermasillo Decl. (Dkt. 175); Sibert Decl. (Dkt. 176); Hyslip Decl. (Dkt. 177); Gray Decl. (Dkt. 178); Straub Aff. (Dkt. 179); Harrington Decl. (Dkt. 180); Moore Decl. (Dkt. 181); Aleman Decl. (Dkt. 168); Def. PFOF at ¶¶ 43, 50, 85-86, 100-02; Sibert Dep. (Dkt. 77) at 59, 64-66, 91-96; Banyon Dep. (Dkt. 82) at 38-39, 44, 46, 150-51; Delgado Dep. (Dkt. 73) at 33-34, 44-48, 75-76, 81-83; Harrington Dep. (Dkt. 81) at 38-39, 77-79, 82-83, 98; Ruggiero Dep. (Dkt. 70) at 58, 60, 70-71, 131; Powell Dep. (Dkt. 71) at 141-44))

10. A local attorney licensed in New Jersey and Pennsylvania had never seen the TMLG or CFLG Operating Agreement and did not receive a copy. Harrington Dep., ECF No. 81, at 125-127.

**RESPONSE: Disputed.**

Harrington stated that he *did not recall* whether he had ever seen or signed an operating agreement, and he did not then have a copy in his possession. (Harrington Dep. (Dkt. 81) at 125-27)

>   11.   Defendants submitted an affidavit from Gregory Straub, an attorney in Wisconsin, in which Mr. Straub states that he was a Class B member of TMLG and that he provided legal services to TMLG clients in Wisconsin. Yet in 2015, Mr. Straub testified at a deposition (in a different matter) that he did no work for TMLG. Mr. Straub also testified that he had sent a letter to TMLG demanding that TMLG remove his name from its marketing materials and correspondence. Affidavit of Gregory Straub at 2, ECF No. 167; Deposition of Gregory Straub, January 28, 2015 (State of Wisconsin v. Legal Helpers Debt Resolution, LLC, Case No. 2013-CX-11, Circuit Court Branch 14, Dane County, Wisconsin), ECF No. 182, at 41-42, 128-31.

**RESPONSE:  Disputed in part.**

Defendants do not dispute that Mr. Straub provided that testimony in an unrelated matter. However, that testimony is belied by the documentary evidence. Defendants produced a spreadsheet of TMLG client data (DEF.0003455), which lists eighty-nine TMLG clients for which Straub was the local attorney. (*See id.*, lines 42, 102, 103, 210, 220, 386, 526, 528, 539, 541, 554, 810, 847, 855, 1031, 1094, 1097, 1146, 1157, 1281, 1333, 1392, 1450, 1456, 1551, 1586, 1638, 1647, 1703, 1724, 1754, 1757, 1762, 1771, 1822, 1853, 1913, 1918, 1945, 1950, 1963, 1983, 2020, 2075, 2235, 2279, 2353, 2357, 2462, 2528, 2537, 2539, 2693, 2758, 2777, 2860, 2931, 2945, 2987, 2988, 3027, 3153, 3201, 3206, 3292, 3319, 3379, 3406, 3460, 3583, 3605, 3677, 3832, 3870, 3913, 3955, 4058, 4210, 4228, 4276, 4286, 4311, 4472, 4483, 4723, 4787, 4841, 4882, 4912) It is also belied by his affidavit testimony, in which he states that he "provided legal services to TMLG clients in Wisconsin" and that those services included "reviewing client financial disclosures and other documents, determining whether mortgage modification was the best option for the client, reviewing proposed mortgage modifications from lenders, and advising whether to accept such modifications." (Straub Aff. (Dkt. 167) ¶ 5).

Moreover, regardless of Straub's status, Deborah Stencel was also a Wisconsin Class B attorney. Defendants have also submitted the affidavit of Jeffrey Aleman, which identifies Ms. Stencel as a Class B Member responsible for reviewing client financial disclosures and other documents to determine whether mortgage modification was appropriate for the client; supervising the efforts of TMLG staff members in attempting to obtain mortgage modifications on behalf of the Wisconsin clients; reviewing proposed mortgage modifications from lenders and determining whether the proposed modifications were appropriate for the client; and providing foreclosure defense services and negotiating short sales where necessary. Aleman Decl. (Dkt. 168) ¶¶ 4-5, 8, Ex. A., Ex. B. Those services also fall squarely within Wisconsin's definition of the practice of law. WIS. SUP. CT. R. 23.01 (practice of law includes giving advice or counsel to others as to their legal rights or responsibilities).

Dated: February 26, 2016

*s/ Emily A. Shupe* _____

Douglas M. Poland
Rathje & Woodward, LLC
10 E. Doty St., Suite 800
Madison, WI 53703
dpoland@rathjewoodward.com

Timothy D. Elliott (*pro hac vice*)
Emily A. Shupe (*pro hac vice*)
Jordan R. Franklin (*pro hac vice*)
Rathje & Woodward, LLC
300 E. Roosevelt Rd., Ste. 300
Wheaton, IL 60187
telliott@rathjewoodward.com
eshupe@rathjewoodward.com
jfranklin@rathjewoodward.com
Telephone: (630) 668-8500

## **CERTIFICATE OF FILING & SERVICE VIA CM/ECF**

I, Emily A. Shupe, an attorney, do hereby certify that on February 26, 2016, I electronically filed the above document and all other documents referenced therein with the clerk of the court by using the CM/ECF system. I further certify that a notice of electronic filing related to the above document was sent to all counsel of record.

Dated: February 26, 2016                                                                                                  /s/ Emily A. Shupe