IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CONSUMER FINANCE
PROTECTION BUREAU,                                                  OPINION AND ORDER

                        Plaintiff,                                                  14-cv-513-bbc

            v.

THE MORTGAGE LAW GROUP, LLP,
CONSUMER FIRST LEGAL GROUP, LLC,
THOMAS G. MACEY, JEFFREY J. ALEMAN,
JASON E. SEARNS and HAROLD E. STAFFORD,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

            Plaintiff Consumer Finance Protection Bureau contends that defendants Thomas G.

Macey, Jeffrey J. Aleman, Jason E. Searns, Harold E. Stafford, The Mortgage Legal Group,

LLP and Consumer First Legal Group, LLC violated various provisions of the Consumer

Financial Protection Act of 2010 and 12 C.F.R. part 215 (commonly known as Regulation

O) in providing mortgage relief services to more than 6,000 consumers in 39 states.  Because

defendant The Mortgage Law Group has not filed an answer to the complaint or taken any

other action in its defense, unless otherwise specified I will use the term "defendants" in this

opinion to refer only to defendants Consumer First Legal Group, Macey, Aleman, Searns and

Stafford.  Earlier in these proceedings, the parties filed cross motions for summary judgment

in which they disputed in part whether Regulation O is invalid as applied to attorneys and

1

whether defendants qualified for the exemption for attorneys in both Regulation O and the Consumer Financial Protection Act.  Dkt. ##83 and 96.

In an order dated January 14, 2016, I considered the parties' cross motions for summary judgment and determined that (1) plaintiff exceeded its rulemaking authority in promulgating 12 C.F.R. § 1015.7(a)(3) and (b), which required attorneys seeking an exemption under the regulation to comply with certain state laws and regulations; and (2) defendants have the burden of proving that they qualify for the attorney exemption in the Consumer Protection Act and any remaining exemption in Regulation O.  Dkt. #144.  In addition, I asked the parties to provide supplemental briefing on the following issues:  (1) what effect, if any, the partial invalidation of the attorney exemption has on the exemption or the regulation as a whole; and (2) whether the Consumer Financial Protection Act and Regulation O apply to defendants' conduct in this case.  Id.  I instructed defendants to identify the applicable state legal standards and support with admissible evidence their contention that they offered or provided mortgage assistance relief services as part of, or incidental to, the practice of law in each state in which they provided such services.  Id.  I denied the parties' motions for summary judgment with respect to all other issues without prejudice to the parties raising those issues after the court determined whether Regulation O remains valid in whole or in part and whether defendants qualify for the attorney exemption under the Consumer Protection Act and possibly Regulation O.  Id.

Having reviewed the supplemental briefing submitted by the parties, I conclude that the remaining provisions of Regulation O and its exemption for attorneys are valid and that

2

there is a genuine dispute of material fact with respect to whether defendants qualify for the statutory and regulatory exemptions. Because plaintiff initially moved for summary judgment with respect to defendants' violations of Regulation O and the Consumer Protection Act, the liability of the individual defendants and available remedies, dkt. #83, I will allow plaintiff to renew its motion with respect to those issues if it wishes to do so. Similarly, I will give defendants the opportunity to renew their motion for summary judgment with respect to the individual liability of defendants Macey and Stafford. Dkt. #96. The parties shall have until May 6, 2016, to inform the court whether they wish to renew their motions for summary judgment on these remaining issues. Although the summary judgment motions have been fully briefed, the parties should inform the court about any modifications or supplemental briefing that may be necessary in light of the court's rulings on the validity of Regulation O and the applicability of the attorney exemptions.


BACKGROUND FACTS

    In early 2011, defendants Thomas Macey, Jason Searns and Jeffrey Aleman formed defendant The Mortgage Law Group, LLP, a Nevada limited liability partnership with its principal place of business in Chicago, Illinois. The Mortgage Law Group offered and provided mortgage assistance relief and financial advisory services, including assisting consumers with modifying the terms of an extension of credit. It ceased operations by approximately November 2013.

3

In July 2012, Macey and Aleman purchased defendant Harold Stafford's 95 percent interest in defendant Consumer First Legal Group, LLC, a Wisconsin limited liability company with its principal places of business in Madison, Wisconsin and Chicago, Illinois. The company offered and provided mortgage assistance relief and financial advisory services to consumers.  By July 2013, Consumer First Legal Group ceased operations and did not have any clients.

Defendants The Mortgage Law Group and Consumer First Legal Group employed a few attorneys and several non-attorneys at their headquarters.  To serve consumers in different states, both companies sought affiliations with local attorneys through what defendants refer to as "Class B" memberships or partnerships.  Many local attorneys signed a "Member Addendum for Class B Member" (for The Mortgage Law Group) or a "Class B Member Agreement" (for Consumer First Law Group), which stated that the attorney's relationship with the company was governed by the company's "operating" or "LLC" agreement and the membership agreement or addendum.  E.g., dkt. #168, exh. B-J. (Examples of The Mortgage Law Group's operating agreement or and Consumer First Legal Groups's LLC agreement are included in the record.  Dkt. #101, exhs. ##3 and 16; dkt. #168, exhs. B and I.)  The member agreement also stated that the attorneys would confirm that they were in good standing to practice law in their home state and would provide a variety of legal-related services to the company's clients in exchange for "distributions" and other benefits.  E.g., dkt. #168 at exh. B at ¶¶ 2-4 and 9 and exh. I at ¶¶ 1-2 and 9(d).  The distributions generally included a flat fee of $40 for each file the member attorney reviewed

and approved.  E.g., dkt. #168, exh. B at p. 9.  Although the companies did not have Class B members in a few states, defendants say that they worked with attorneys licensed in those states on a "local counsel" or "of counsel" basis.

Non-legal staff at the companies' headquarters performed intake interviews and gathered financial information from prospective clients.  After the client signed a retainer agreement, non-legal staff prepared a loan modification package that was reviewed by an attorney at company headquarters.  The local attorney in the state in which the client resided reviewed the package a second time for accuracy and completeness before the companies sent the package to the client's lender.  (The parties dispute how much additional involvement local attorneys had in providing services to consumers and whether that involvement was legally necessary.)

OPINION

A.  Validity of Regulation O

As promulgated, the exemption for attorneys in Regulation O read as follows:

(a) An attorney is exempt from this part, with the exception of § 1015.5, if the attorney:

(1)  Provides mortgage assistance relief services as part of the practice of law;

(2)  Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located; and

(3)  Complies with state laws and regulations that cover the same type of conduct the rule requires.

(b) An attorney who is exempt pursuant to paragraph (a) of this section is also exempt from § 1015.5 if the attorney:

(1)  Deposits any funds received from the consumer prior to performing legal services in a client trust account; and

(2)  Complies with all state laws and regulations, including licensing regulations, applicable to client trust accounts.

12 C.F.R. § 1015.7.  In my previous order, I found § 1015.7(a)(3) and (b) to be invalid. This finding may expand the scope of the exemption by eliminating certain requirements that an attorney must meet before qualifying for the exemption.  Because I invalidated only a portion of the attorney exemption provision in the regulation, I must determine whether those portions are severable from the remainder of the exemption and regulation.

The Supreme Court has developed a test for determining whether invalid provisions in a regulation may be severed from the remainder of the regulation.  Although the Court first developed the test to consider the severability of congressional statutes, Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987), it has applied the test to administrative regulations as well.  Charles W. Tyler & E. Donald Elliott, Administrative Severability Clauses, 124 Yale L.J. 2286, 2294-96 (2015) (citing K-Mart Corp. v. Cartier, 486 U.S. 281 (1988)).  At least one federal appellate court has had the opportunity to apply K-Mart.  MD/DC/DE Broadcasters Association v. FCC, 236 F.3d 13, 22 (D.C. Cir. 2001); Davis County Solid Waste Management v. EPA, 108 F.3d 1454, 1460 (D.C. Cir. 1997).  Generally, "severability depends on  (1) whether there is any 'indication that the regulation would not have been passed but for [the] inclusion' of the [invalid] standards' and (2) whether severance would 'impair the function of [the remainder of the rule].'"  Tyler & Elliott, 124 Yale L.J. at 2296-

97 (quoting <u>Davis County</u>, 108 F.3d at 1460).  <u>See also MD/DC/DE Broadcasters</u>, 236 F.3d at 22 ("Whether the offending portion of a regulation is severable depends upon the intent of the agency and upon whether the remainder of the regulation could function sensibly without the stricken provision.").

Both parties contend and I agree that the invalidation of two discrete requirements of the exemption provision does not warrant the invalidation of either the remaining portion of the exemption or Regulation O as a whole.  Plaintiff clearly expressed its intent that individual provisions of the regulation be separate and severable by including a severability clause in Regulation O.  12 C.F.R. § 1015.11 ("If any provision is stayed or determined to be invalid, it is the Bureau of Consumer Financial Protection's intention that the remaining provisions shall continue in effect.").  As defendants point out, there is no indication in the administrative record that plaintiff would have opted for different prohibitions on conduct had it known that the scope of the attorney exemption would be expanded.  Further, the remaining provisions of the regulation prohibiting certain conduct by mortgage service relief providers can stand on their own, regardless of the scope of the attorney exemption.  The only issue I need to discuss is whether the attorney exemption can function without the invalidated provisions.

As defendants note, § 1015.7(a) states that "[a]n attorney is exempt from this part, *with the exception of § 1015.5*, if the attorney" meets certain requirements.  Section 1015.5 requires mortgage assistance relief service providers to make certain disclosures and prohibits them from requesting or receiving any compensation before the consumer has executed a

written mortgage assistance relief agreement between the consumer and the consumer's loan holder or servicer. Before I found § 1015.7(b) to be invalid, that section exempted attorneys from the requirements of § 1015.5 if they met requirements in addition to those listed in § 1015.7(a). However, in the absence of subsection (b), attorneys can no longer obtain an exemption from the ban on advanced fees in § 1015.5 under the current wording of subsection (a). To rectify this problem, defendants propose that the court strike the phrase "with the exception of § 1015.5" in the preamble of subsection (a).

Plaintiff does not object to defendant's proposal, stating only that it is unnecessary to address the issue because defendants cannot show that either The Mortgage Law Group or Consumer First Legal Group qualifies for the attorney exemption. However, as explained below, I have found that I cannot decide as a matter of law whether the corporate defendants qualify for the exemption for attorneys in Regulation O and the Consumer Protection Act. Therefore, it is necessary to determine whether the phrase "with the exception of § 1015.5" should be struck from the preamble of § 1015.7(a).

As defendants point out, without an exemption for attorneys, § 1015.5 would give plaintiff authority to regulate certain aspects of the practice of law that fall within the sole jurisdiction of the states. For example, under § 1015.5, plaintiff could prosecute an attorney for accepting a retainer or other fees for the provision of legal services if the client had not yet signed a written agreement regarding the offer of mortgage assistance relief with his or her loan holder or servicer. As discussed at length in the previous order finding §§ 1015.7(a)(3) and (b) to be invalid, dkt. #144, this would run afoul of the Consumer

8

Protection Act's provision that plaintiff not exercise any enforcement authority with respect to "an activity engaged in by an attorney [as] part of the practice of law." 12 U.S.C. § 5517(e)(1). Although in promulgating the additional requirements in § 1015.7(b), plaintiff may have sought to insure that attorneys deposit advanced fees collected for mortgage relief services in client trust fund accounts and comply with local trust fund rules, it seems clear that plaintiff never intended to subject attorneys engaged in the practice of law to the advanced fee provisions in § 1015.5. Receiving no objection from plaintiff on this issue, I will invalidate the phrase "with the exception of § 1015.5" from the preamble of § 1015.7(a).

## B. The Mortgage Law Group

Even though defendant The Mortgage Law Group has not appeared in this case and is not represented by counsel, the other defendants make several arguments on its behalf regarding the company's potential liability under the Consumer Protection Act and Regulation O and its qualification for the attorney exemption. However, neither defendant Consumer First Legal Group nor the individual defendants have cited any authority that would permit them to do this. In addition, plaintiff has filed a summary judgment motion against The Mortgage Law Group. It is unclear what authority the court would have to enter summary judgment against a party that has not appeared in the case; typically a motion for a default judgment would be the appropriate means of resolving claims against a party that has failed to appear. These issues will need to be resolved before this case proceeds to the

final stages of summary judgment and trial.  However, because both parties assume for purposes of the supplemental briefing that The Mortgage Law Group should be included in the court's discussion of the attorney exemption, I will do the same.

## C.  Application of Attorney Exemptions

Plaintiff has brought claims against all of the defendants under both the Consumer Protection Act and Regulation O, alleging that the corporate defendants charged illegal advance fees, discouraged consumers from communicating with their lenders or servicers, failed to make required disclosures to consumers and made prohibited misrepresentations to consumers about legal representation, the likelihood of mortgage modifications and the timeframe for the modifications.  (Plaintiff's claims against the individual defendants seem to be based on allegations that they had the authority to control the actions of the corporate defendants.)  As discussed above, Regulation O provides an exemption for attorneys who are providing mortgage relief services as part of the practice of law and who are licensed in the states in which their consumers reside.  12 C.F.R. § 1015.7.  The Consumer Protection Act provides a similar exclusion with respect to activities "engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law."  12 U.S.C. § 5517(e)(1).  A subsequent provision allows plaintiff to exercise "supervisory, enforcement, or other authority regarding the offering or provision of a consumer financial product or service"

(A) that is not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship; or

(B) that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service.

12 U.S.C. § 5517(e)(2).

Defendants contend that plaintiff cannot enforce Regulation O or the Consumer Protection Act against them because defendants Mortgage Law Group and Consumer First Legal Group were national law firms with Class B member or partner attorneys who were licensed to practice law in the states in which the firms provided legal advice and mortgage assistance relief services to consumers as part of the practice of law. Plaintiff contends that defendants have failed to meet their burden with respect to either requirement of the exemption. Although I will discuss the licensing and practice of law requirements separately, one preliminary matter deserves attention.

Plaintiff argues that defendants must show that they qualify for the exemption not only with respect to each state in which they provided mortgage loan modification services, but also with respect to each consumer to whom they provided services. Defendants contend that it is unnecessary and unduly burdensome to delve into the details of each and every attorney-client relationship. I agree. Plaintiff alleges that defendants violated the Consumer Protection Act and Regulation O with respect to more than 6,000 consumers nationwide. However, as defendants point out, plaintiff does not make any consumer-specific or state-specific allegations and focuses on defendants' general practices with respect to all of their

consumers.  In response to plaintiff's allegations, defendants attempt to show that they had membership agreements with licensed attorneys in every jurisdiction in which defendants served consumers and that all of those member attorneys performed the same type of tasks that qualified as the practice of law in those jurisdictions.  Plaintiff has not cited any persuasive authority in support of its contention that defendants must provide a consumer-by-consumer analysis with respect to their burden of proof.  Although it cites a general provision in the Consumer Protection Act related to the court's power to grant legal or equitable relief, including restitution or disgorgement or compensation for unjust enrichment, 12 U.S.C. § 5565(a), nothing in that provision requires that defendants provide a consumer-specific analysis of the application of the attorney exemption provisions.  It is possible for the court to conclude from evidence regarding defendants' general operations and services that the corporate defendants were legally affiliated with local attorneys who were licensed in each of the states in which defendants' consumers resided and who performed services for consumers in that state as part of the practice of law, provided that the court finds the evidence credible and persuasive.

I will now turn to the licensing and practice requirements of the attorney exemptions.

1.  Licensing requirement

The parties seem to agree that in order for defendants to show that The Mortgage Law Group and Consumer First Legal Group were licensed to practice law in the states in which their consumers resided, defendants must show that these companies were affiliated

12

legally with local attorneys who were licensed to practice law in those states at the time the attorneys were providing services.  Defendants contend that The Mortgage Law Group served consumers in all 50 states, the District of Columbia and Puerto Rico and that Consumer First Legal Group served consumers in 37 states.  Dkt. #168 at exh. A (chart listing number of consumers and identity of Class B member attorneys in each state and territory served by corporate defendants).  As evidence that The Mortgage Law Group and Consumer First Legal Group were affiliated with licensed attorneys in each of these jurisdictions, defendants have submitted declarations from 24 attorneys in 30 different jurisdictions who state that they were licensed and in good standing with a bar association while they were Class B members of the Mortgage Law Group or the Consumer First Legal Group.  Dkt. ##145-48, 151, 153, 155-59, 161, 163-64, 171 and 173-81.  In addition, defendants have submitted copies of the agreements it had with 16 Class B member attorneys in various states.  Dkt. #168 at exhs. B-J; dkt. #149 at exh. A; dkt. #150 at exh. A; dkt. #152 at exh. A; dkt. #154 at exh. A; dkt. #160 at exh. A; dkt. #166 at exh.A; and dkt. #167 at exh. A.  Under those agreements, the attorneys promised to confirm that they were in good standing to practice law in their home state.  E.g., dkt. #168 at exhs. B and C at ¶ 9.

Because defendants say that they were unable to obtain declarations or a copy of a signed agreement from every local attorney with whom they partnered, defendant Jeffrey Aleman, co-founder of the Mortgage Law Group and co-owner of Consumer First Legal Group, submitted a declaration in which he states that the companies were affiliated with

local attorneys in every state or jurisdiction in which clients were located for the period of time during which the services were provided. Dkt. #168 at ¶ 5 and exh. A. (Defendants state that the bankruptcy trustee took possession of The Mortgage Practice Group's records and that they did not have time to obtain declarations from every Class B attorney before the supplemental brief was due.) Aleman avers that prior to signing an agreement with a Class B member attorney, the corporate defendants conducted "due diligence," which included interviewing the attorney, reviewing resumes and qualifications, checking references and confirming with the relevant state bar association that the attorney was licensed and in good standing in the state. Id. at ¶ 17. According to Aleman, in the few states in which the companies did not have Class B partners or members (South Dakota, West Virginia and Ohio), the companies worked with attorneys licensed in those states on a "local counsel" or "of counsel" basis. Id. at ¶¶ 5-7. Finally, defendants submitted the affidavit of Nicole Winters, who located and attached copies of the state bar admission profiles for most of the companies' Class B attorneys. Dkt. #172. The profiles show whether the attorney is currently a member of the state bar, and in some cases, list the date the attorney was admitted to the bar and identify whether the attorney has any history of disciplinary action.

Plaintiff contends that defendants have not met their burden because they have not produced a copy of the Class B agreement for most of their local attorneys, did not provide any copies of the limited liability corporations' general operating agreement referred to in the Class B agreements and rely primarily on Aleman's general averment that "to the best of [his] recollection," all of the local attorneys executed Class B agreements with the

14

corporate defendants.  Dkt. #168 at ¶ 5.  However, as defendants argue, the companies do not have to produce every operating and Class B member agreement that they signed with local attorneys to survive summary judgment.  The relevant question is whether the evidence defendants did produce is sufficient to allow the court to conclude that the corporate defendants had licensed attorneys in each state in which they had consumers and during the time period during which services were provided.  Marr v. Bank of America, N.A., 662 F.3d 963, 966 (7th Cir. 2011) ("[O]pponent of summary judgment need only point to evidence that can be put in an admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor.").  Aleman's affidavit qualifies as admissible evidence from which the court could reach this conclusion, if it finds Aleman's testimony persuasive at trial. Aleman makes clear that "[t]he statements in this declaration are based on my personal knowledge and I would be competent to testify to them if called."  Dkt. #168 at ¶ 1.  Fed. R. Civ. P. 56(c)(4) (affidavits made on personal knowledge, setting out facts admissible in evidence and showing affiant competent to testify are admissible evidence on summary judgment).  See also Waterloo Furniture Components, Ltd. v. Haworth, Inc., 467 F.3d 641, 648-49 (7th Cir. 2006) ("If a witness's testimony is based on his first-hand knowledge of an event as opposed to his knowledge of the document . . . [Fed. R. Evid. P. 1002 requiring original writing] does not apply.").

Plaintiff contends that the court should view Aleman's affidavit with skepticism because Aleman does not provide any details about how the companies confirmed that a Class B attorney was licensed in a particular state or worked with attorneys on a "local

counsel" or "of counsel" basis.  (I note that defendants explain in their brief that they provided services as licensed attorneys in a few states by associating with local attorneys who actively participated in client matters, as provided by state professional rules related to the multi-jurisdictional practice of law.)  Plaintiff also contends that there are other "substantial indicators of untrustworthiness" that "taint Defendants' evidence."  For example, plaintiff points out that Gregory Straub, a Wisconsin attorney whom defendants identify as a Class B member of The Mortgage Law Group, testified in a deposition in another case that he did not work for The Mortgage Law Group and demanded in that case that the company remove his name from its marketing materials.  Dkt. #184 at 11.  (Although defendants acknowledge that Straub testified to this effect, they dispute the substance of the testimony with client data forms.  Dkt. #185 at ¶ 11.)  However, as defendants argue, plaintiff's arguments relate to the weight that the court should give to defendants' evidence.  "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party."  Abdullahi v. City of Madison, 423 F.3d 763, 773 (7th Cir. 2005).  See also Hansen v. Fincantieri Marine Group, 763 F.3d 832, 836 (7th Cir. 2014) (on summary judgment, a court may not choose between competing inferences or balance weight of competing evidence).

Finally, although plaintiff seems to question whether the Class B attorneys met all of the requirements relevant to becoming partners in a limited liability corporation in Nevada

(for The Mortgage Law Group) or Wisconsin (for Consumer First Legal Group), plaintiff does not develop a meaningful argument with respect to either state's requirements. Without more, there is no basis for the court to question whether the Class B membership agreements satisfy the state partnership requirements at this stage of the proceedings.

2.  <u>Practice of law</u>

In their opening supplemental brief, defendants provide very little discussion or analysis with respect to whether the local attorneys with whom they affiliated were engaged in the practice of law in their home states.  They generally state that "every state's definition of the practice of law includes the type of representation at issue in this case, *i.e.*, representing clients in settling or compromising debts and accounts, in-court representation and negotiation and drafting of papers affecting clients' rights."  Dkt. #170 at 11-12.  <u>See also</u> <u>id.</u> at 15 (companies, through attorneys, "represented clients vis-à-vis their mortgage lenders, and provided services ranging from loan modifications to short sales to foreclosure defense services.").  In support of these contentions, defendants cite a number of affidavits from local attorneys who say that they provided legal services to the clients of The Mortgage Law Group or Consumer First Legal Group by reviewing financial disclosures, determining whether mortgage modification was appropriate and the best option for the client, helping staff members collect client financial information and obtain mortgage modifications on behalf of the client and reviewing proposed mortgage modifications from lenders. Dkt. #170 at 14 (citing dkt. ##145-67 at ¶¶ 3-5).  They also cite a few of their proposed findings of

17

fact to establish that Class B member attorneys reviewed loan modification packages prepared by support staff for accuracy and completeness, that clients were involved in "consultations" about a proposed action and that each client went through a "quality control telephone interview" with an attorney.  Id. (citing dkt. #112 at ¶¶ 43, 50, 86, and 100-02).

Plaintiff disputes defendants' characterization of the tasks performed by the local attorneys and contends that defendants' loan modification services were limited to gathering basic financial information from consumers and collecting documents for loan modification packages to submit to lenders or mortgage servicers.  It says that the local attorneys performed redundant, non-legal ministerial tasks and did not draft documents, give any legal advice to consumers, communicate directly with consumers or lenders, manage or supervise non-legal staff or perform any other work that a lay person could not perform.  Therefore, even though the parties dispute the extent to which the local attorneys were involved in providing consumer services and whether their involvement was even necessary, they agree that the local attorneys performed at least a limited review of consumer financial packages before the packages were submitted to the consumer's lender.

Defendants' opening brief also lacks any analysis of how the specific services that the local attorneys provided to consumers in each state qualified as the practice of law in that state.  Although they attach an appendix reciting the relevant portions of every state's law or state bar rule governing the definition of the practice of law, defendants provide only limited examples of how the general functions of negotiating mortgage loans and

18

representing a client vis-à-vis their mortgage lender fit within the definition of the practice of law in a few states (specifically, Louisiana, Wisconsin, Tennessee, Mississippi, Kentucky, Georgia and Florida).  Dkt. #170 at 12-13.  Plaintiff correctly points out that such a conclusory and incomplete analysis fails to satisfy defendants' burden with respect to the application of either attorney exemption.

Defendants provide a more thorough and detailed discussion in their reply brief, which includes a state-by-state analysis that identifies the local attorney(s) in each state, the services that the attorney(s) provided and how those services qualified as the practice of law in that state.  Dkt. #186 at 18-69.  In response to plaintiff's argument that the local attorneys performed only ministerial tasks, they point out that many tasks that do not amount to the practice of law when performed by non-lawyers qualify as the practice of law when performed by lawyers or by non-lawyers working under the supervision of lawyers. E.g., Persels & Associates, LLC v. Banking Commissioner, 318 Conn. 652, 678, 122 A.3d 592, 607 (2015).  Defendants also explain that even though the companies did not have a Class B attorney in some states, their headquarters' attorneys may provide legal services on a temporary basis in a state in which the out-of-state attorney has associated with a locally-licensed attorney who actively participates in and shares responsibility for the representation of the client.  Model R. Prof. Cond. 5.5(c)(1) and cmt. [8].  (Although plaintiff has not had an opportunity to respond to these more specific arguments, I anticipate that disputes of fact and law will arise as to what qualifies as a "temporary basis" and "actively participates."  The parties should be prepared to address these issues at or in advance of trial.)

19

In its response brief, plaintiff includes a state-by-state analysis of whether defendants were engaged in the practice of law.  However, plaintiff addresses the issues in general terms, arguing with respect to almost every state that the tasks performed by local attorneys (specifically, the review of consumers' non-legal information and documents) did not require "any legal knowledge or skill, and the Companies' non-attorneys performed these same tasks before the local attorneys repeated them."  Dkt. #184 at 33-83.  The crux of plaintiff's general argument is that it believes that reviewing financial files and documents fails to qualify as providing legal advice or opinions.  <u>Compare</u> dkt. #184 at 34-35 (citing Alaska Bar R. 63(b) (practice of law includes providing advice or preparing documents for another that affect *legal* rights or duties) and Ariz. Sup. Ct. R. 31 (practice of law includes preparing or expressing legal opinions or negotiating legal rights or responsibilities)).  (In their reply brief, defendants  generally agree with plaintiff about what legal standard applies in many states, but the parties are not in complete agreement over the standards applicable in Georgia, Maryland, Massachusetts, Minnesota, Missouri, Nebraska, Nevada, New York, North Carolina and Wisconsin.  This issue will have to be resolved at or in advance of trial.)

Although defendants should have presented the more detailed analysis in their opening brief and given plaintiff the opportunity to articulate a direct response, it is clear from the parties' submissions that they dispute key factual and legal issues, which makes it impossible to determine as a matter of law whether defendants were engaged in the practice of law in the jurisdictions in which they served consumers.  Accordingly, this case will go to

trial on the question of whether defendants qualify for the attorney exemption in the Consumer Protection Act and Regulation O.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Consumer First Legal Group, LLC, Thomas G. Macey, Jeffrey J. Aleman, Jason E. Searns and Harold E. Stafford, dkt. #96, is GRANTED in part and DENIED in part:

(a)   The motion is GRANTED with respect to the partial invalidation of Regulation O.  The court finds 12 C.F.R. §§ 1015.7(a)(3) and (b) and the phrase "with the exception of § 1015.5" in the preamble of 12 C.F.R. § 1015.7(a) to be invalid.  All other provisions of § 1015.7 and Regulation O remain valid.

(b)  The motion is DENIED with respect to the qualification of defendants The Mortgage Law Group and Consumer First Legal Group for the attorney exemption in the Consumer Financial Protection Act, 12 U.S.C. § 5517(e), and Regulation O, 12 C.F.R. § 1015.7.

(c)   The motion is DENIED WITHOUT PREJUDICE with respect to the individual liability of defendants Macey and Stafford.

2. Plaintiff Consumer Financial Protection Bureau's motion for summary judgment, dkt. #83, is DENIED with respect to the validity of Regulation O and the corporate defendants' failure to qualify for the attorney exemption in the Consumer Protection Act,

12 U.S.C. § 5517(e), and Regulation O, 12 C.F.R. § 1015.7.  The motion is DENIED WITHOUT PREJUDICE in all other respects.

3.  The parties shall have until May 6, 2016, to inform the court whether they wish to renew their motions for summary judgment with respect to any of the issues raised in their motions that the court denied without prejudice.

Entered this 21st day of April, 2016.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge