IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CONSUMER FINANCIAL PROTECTION BUREAU,

        Plaintiff,

  v.

THE MORTGAGE LAW GROUP, LLP,
CONSUMER FIRST LEGAL GROUP, LLC,
THOMAS G. MACEY, JEFFERY J. ALEMAN,
JASON E. SEARNS and HAROLD E. STAFFORD,

        Defendants.

ORDER

14-cv-513-wmc

---

The court has reviewed plaintiff's motion for reconsideration under Fed. R. Civ. P. 54(b) challenging Judge Crabb's previous invalidation of two provisions in Regulation O's attorney exemption.[1] (Dkt. #257.) More specifically, plaintiff raises two basic challenges to the court's January 14 and April 21, 2016, summary judgment opinions & orders (dkt. #144 and #187):

(1) the court misread the Consumer Protection Act (CPA) and misinterpreted related regulations by improperly applying step one of the analysis under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); and

(2) the court should not have found that the plaintiff unreasonably exercised its rulemaking authority in issuing portions of Regulation O under step two of the *Chevron* analysis.[2]

---

[1] This case was reassigned to Judge Conley in January 2016.

[2] As discussed in the summary judgment order, the Supreme Court set forth a two-step inquiry in *Chevron* to determine the extent of an agency's rulemaking authority under a statute that it administers: First, a reviewing court asks whether Congress has directly spoken to the precise question at issue, and if the answer is no, the court then looks to the agency's regulations to

1

With respect to both challenges, plaintiff generally repeats the same arguments raised in its summary judgment briefs over a year ago, neither making new legal arguments nor alleging new facts from its previous briefing in the fall of 2015. Instead, plaintiff's sole basis for the motion for reconsideration appears to be a non-binding and unpublished opinion from the Middle District of Florida, *FTC v. Lanier Law, LLC*, 2016 WL 3632371 at *27-28 (M.D. Fla. Jul. 7, 2016), that reached a different conclusion with respect to the validity of Regulation O's attorney exemption, also last year.

Plaintiff offers no explanation as to why it waited more than six months after the decision in *Lanier Law* to file its motion, which is sufficient grounds by itself, for denying the motion. Indeed, much has happened in that period. For example, Judge Crabb issued a third summary judgment decision on July 20, 2016, relating to liability and damages; the parties have engaged in significant additional discovery; and they filed a number of motions in anticipation of trial, which is set to begin next week. Plaintiff's failure to move for reconsideration until the eve of trial is simply unreasonable. Moreover, even if plaintiff's renewed challenges had not been waived, the court finds no grounds for reconsideration for the reasons set forth below.

---

determine whether they are based on a reasonable construction of the statute. *Chevron*, 467 U.S. at 842-43.

BACKGROUND

Regulation O, 12 CFR § 1015.7, contains an exemption for attorneys that reads as follows:

**§ 1015.7 Exemptions**

(a) An attorney is exempt from this part, with the exception of § 1015.5 [prohibiting charging advance fees], if the attorney:

(1) Provides mortgage assistance relief services as part of the practice of law;

(2) Is licensed to practice law in the state in which the consumer for whom the attorney is providing mortgage assistance relief services resides or in which the consumer's dwelling is located; and

(3) Complies with state laws and regulations that cover the same type of conduct the rule requires.

(b) An attorney who is exempt pursuant to paragraph (a) of this section is also exempt from § 1015.5 [advance fees] if the attorney:

(1) Deposits any funds received from the consumer prior to performing legal services in a client trust account, and

(2) Complies with all state laws and regulations, including licensing regulations, applicable to client trust accounts.

In her January 14, 2016 order, Judge Crabb found § 1015.7(a)(3) (requiring compliance with related state laws) and § 1015.7(b) (requiring compliance with state client trust account laws) to be invalid (dkt. #144 at 26), and upon further consideration in the April 21, 2016 order (dkt. #187 at 21), she found the phrase "with the exception of § 1015.5" in the preamble of § 1015.7(a) also to be invalid.

3

OPINION

Rule 54(b) provides that a court may revise an interlocutory order "at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." While such motions are rarely granted, they are proper when necessary to "correct manifest errors of law or fact or to present newly discovered evidence." *BB Syndication Svcs., Inc. v. First Am. Title Ins. Co.*, 2013 WL 11322616 at *10 (W.D. Wis. Jan. 11, 2013) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)).

Generally, "[t]he doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995). The fact that Judge Crabb entered both of the orders that plaintiff now asks this court to reconsider further complicates matters. As plaintiff recognizes, the doctrine of the law of the case "counsels against a judge's changing an earlier ruling," and applies with "greater force . . . when there is a change of judges during the litigation and the new judge is asked to revisit the rulings of his predecessor." *HK Sys., Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009). A new judge may reverse the previous judge's decision only when necessary to correct for "new evidence, controlling law, or clear error," *Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985), and only "if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefited from it," *Avitia*, 49 F.3d at 1227. Plaintiff has failed to come close to meeting

this standard, nor even the general high bar for motion to reconsider with respect to either of its challenges.

I.  *Chevron* step 1 analysis

Applying step one of the *Chevron* analysis, Judge Crabb reasoned that subsections (a)(3) and (b) of § 1015.7 are in direct conflict with the Consumer Financial Protection Act's (CFPA) general prohibition against regulating attorneys engaged in the practice of law. 12 U.S.C. § 5517(e)(1) ("[T]he bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law . . ."). In summary judgment briefing and now in this motion for reconsideration, plaintiff argued that it has authority to require attorneys otherwise engaged in the practice of law to comply with various state laws pursuant to an exception contained in § 5517(e)(3), which states that the bureau's authority is not limited "with respect to any attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer laws or the authorities transferred under subtitle F or H."

One such "enumerated consumer law" is § 626 of the Omnibus Act, which generally authorized the Federal Trade Commission (FTC) to promulgate rules to address mortgage lending practices. Pub. L. No. 111-8, § 626, 123 Stat. 524, 678 (Mar. 11, 2009). A few months later in the Credit Card Accountability Responsibility and Disclosure Act, however, Congress clarified that § 626 of the Omnibus Act did *not* authorize the FTC to promulgate a rule "with respect to any entity that is not subject to enforcement of the

Federal Trade Commission Act (15 U.S.C. § 41 et seq.)." Pub. L. No. 111–24, § 511(a)(1)(C), 123 Stat. 1734, 1764 (May 22, 2009). While the FTC subsequently exercised its rulemaking authority in 2010 in passing the Mortgage Assistance Relief Services (MARS) rule, which contained the same attorney exemption subsequently adopted by the CFPB in Regulation O, neither the Omnibus Act nor the Credit Card Act specifically discuss the regulation of attorneys.

Still, plaintiff reasons that they also do not prohibit the regulation of attorneys engaged in the practice of law. In particular, plaintiff asserts that even though § 5517(e)(1) of the CFPA expressly prohibits the bureau from regulating attorneys engaged in the practice of law, the exception in § 5517(e)(3) allows it to do so because no express limits were placed on the FTC's authority to regulate the practice of law in the Omnibus and Credit Card Acts.

In considering this same argument in her summary judgment opinion, Judge Crabb found that Congress's intent with respect to the regulation of attorneys engaged in the practice of law was ambiguous at best. *Chevron*, 467 U.S. at 842-43 (Step 1 of analysis satisfied when "Congress has directly spoken to the precise question at issue;" "if the statute is silent or ambiguous," the court moves on to step 2.). She further found § 5517(e)(1) of the CFPA to be strong evidence that Congress did not want plaintiff to regulate the activities of attorneys if part of the practice of law. As a result, she went on to reject plaintiff's notion that "Congress [would] prohibit plaintiff from regulating attorneys engaged in the practice of law and then create an exception that swallows that

6

general prohibition." Dkt. #144 at 19.

Nevertheless, plaintiff now cites a later federal district court that agreed with its reading of the statute, finding no basis to debate that the bureau inherited the FTC's authority to regulate attorneys engaged in the practice of law. *See Fed. Trade Comm'n v. Lanier Law, LLC*, 194 F. Supp. 3d 1238, 1282–83 (M.D. Fla. 2016) ("[T]he 'clear mandate against regulating attorneys engaged in the practice of law,' is the precise 'mandate' to which the existing authority exception is directed."). Unfortunately for plaintiff, that a sister court found Congress unambiguously allowed the regulation of attorneys in an exception to the general prohibition on the regulation of practicing attorneys, this alone is little or no basis for overturning Judge Crabb's decision to the contrary. As an initial matter, the unpublished opinion in *Lanier* is obviously not controlling law in this court. Moreover, given the seemingly conflicting statutory mandates in the CFPA itself *and* the lack of specific direction regarding the regulation of attorneys in the Ominbus Act and Credit Card Act, this court cannot say that it was "clear error" for Judge Crabb to conclude that Congress did not unambiguously express its intent with respect to the bureau's rulemaking authority in this area, nor even that her ruling was a "manifest error of law." Therefore, the court finds no legal basis for rescinding its earlier ruling. Finally, doing otherwise would clearly prejudice defendants by eliminating their primary defense in a case set to proceed to trial next week.

## II. *Chevron* step 2 analysis

The result is much the same as to plaintiff's additional argument that Judge Crabb improperly applied step two of the *Chevron* analysis in finding that the bureau acted arbitrarily and capriciously in seeking to regulate practicing attorneys in the face of a clear mandate to the contrary. Again, this court is not convinced that Judge Crabb reached a baseless or unreasonable decision in not affording deference to the bureau's rulemaking decision. To the contrary, she reasoned that Congress never intended plaintiff to address attorney conduct within the attorney-client relationship because both the CFPA and the Omnibus Act provide rulemaking authority only with respect to unfair or deceptive mortgage loan practices, and an attorney's violation of a state rule of professional conduct or state laws regarding client trust accounts does not automatically equate to an unfair or deceptive mortgage loan practice. Dkt. # at 20-21. "Even assuming . . . that many attorneys providing mortgage assistance relief services have engaged in practices that violate state licensing regulations," Judge Crabb further concluded that "plaintiff has failed to explain why that correlation would justify the Commission's authority to regulate attorney conduct under state law." *Id.* at 22.

While plaintiff and the court in *Lanier* do not share Judge Crabb's concern that requiring attorneys to comply with state laws governing their professions, such as professional conduct rules, constitutes the regulation of "the general professional conduct of attorneys," this is because, in their view, attorneys are already subject to those rules and Regulation O does not punish violations of state laws or rules. *Lanier,* 194 F. Supp. 3d at

1282–83 ("Regulation O does not impose new professional rules or responsibilities on attorneys, and neither the CFPB nor the FTC seek to punish violations of the state laws or rules"); dkt. #258 at 17-18. Plaintiff also points out that the FTC has historically regulated some aspects of professional practice, such as the anticompetitive conduct of lawyers and dentists. However, Judge Crabb's concern was neither that the attorney exemption in Regulation O unfairly punishes attorneys for state law violations nor that the federal government lacks the authority to regulate the conduct of attorneys.

Rather, Judge Crabb was concerned that the CFPB, and ultimately federal courts, would effectively be regulating the practice of law at the federal level by serving as arbiters of whether the conduct of attorneys providing mortgage relief services complied with state laws and ethical rules. Indeed, if the CFPB determined that an attorney was *not* in compliance with a particular state professional standard or practice requirement, then it would seek to regulate the attorney's practice under the CFPA and Regulation O. Again, Judge Crabb determined that this was unreasonable in light of the CFPA's clear mandate not to regulate the practice of law. Moreover, it raised a wholly legitimate concern that "[n]either the [FTC] nor plaintiff has special expertise in regulating the general professional conduct of attorneys[,] . . . a task that has been reserved traditionally for the state authorities." Dkt. #144 at 22.

While plaintiff may disagree with the court's reasoning, that disagreement does not equate to a manifest error of law. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party.

It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"). Indeed, a small glimpse of the can of worms the *Lanier* court's ruling would open is the parties' inability in this case to even agree what constitutes the "practice of law" in some states. One shudders to think what would await both plaintiff, and ultimately federal courts, if charged with deciding what constitutes the unlawful or unethical practice of law in each state. Accordingly, plaintiff's motion for reconsideration will be denied.

ORDER

IT IS ORDERED that plaintiff's motion to reconsider (dkt. #257) is DENIED.

Entered this 20th day of April, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge