United States District Court
Western District of Wisconsin

| | |
|---|---|
| Consumer Financial<br>Protection Bureau,<br><br>     Plaintiff,<br>  v.<br><br>The Mortgage Law Group, LLP, (d/b/a the<br>Law Firm of Macey, Aleman & Searns),<br>Consumer First Legal Group, LLC,<br>Thomas G. Macey, Jeffrey J. Aleman,<br>Jason E. Searns, and Harold E. Stafford,<br><br>     Defendants. | Case No. 3:14-cv-00513 |

## **PLAINTIFF'S AMENDED PROPOSED SPECIAL VERDICT**

  The Mortgage Law Group, LLP (TMLG) filed for bankruptcy protection and did not appear in this action. Based on a settlement reached between the Consumer Financial Protection Bureau (Bureau) and the TMLG bankruptcy trustee, the Bureau and the trustee filed a joint motion to enter a stipulated judgment and order against TMLG (ECF Nos. 305, 305-1 to -3). The Bureau includes in this proposed special verdict form, specific provisions relating to TMLG so that the Court may establish an evidentiary record for, and the underlying basis for, the violations by defendants Thomas Macey, Jeffrey Aleman, and Jason Searns. The Bureau does not include provisions on the specific amount of TMLG civil money penalties or on TMLG injunctive relief because those matters would be resolved through the pending stipulated judgment.

The Mortgage Law Group, LLP's violations of Regulation O.[1]

1. Has the Bureau proven by a preponderance of the evidence that TMLG misrepresented to consumers, expressly or by implication, that they would receive legal representation?[2]

    Yes \_\_\_\_\_        No \_\_\_\_\_

2. Has the Bureau proven by a preponderance of the evidence that TMLG misrepresented to consumers, expressly or by implication, the likelihood of negotiating, obtaining, or arranging any represented service or result?[3]

    Yes \_\_\_\_\_        No \_\_\_\_\_

3. Has the Bureau proven by a preponderance of the evidence that TMLG misrepresented to consumers, expressly or by implication, the amount of time to accomplish any represented service or result?[4]

    Yes \_\_\_\_\_        No \_\_\_\_\_

4. Has the Bureau proven by a preponderance of the evidence that TMLG misrepresented to consumers, expressly or by implication, that TMLG had special contacts with lenders or mortgage servicers to expedite the mortgage loan modification application process?[5]

    Yes \_\_\_\_\_        No \_\_\_\_\_

5. Has the Bureau proven by a preponderance of the evidence that TMLG represented during phone calls, expressly or by implication, that consumers should not communicate with their lenders or mortgage servicers?[6]

    Yes \_\_\_\_\_        No \_\_\_\_\_

---

[1] 12 C.F.R. part 1015.
[2] 12 C.F.R. § 1015.3(b)(8).
[3] 12 C.F.R. § 1015.3(b)(1).
[4] 12 C.F.R. § 1015.3(b)(2).
[5] 12 C.F.R. § 1015(b) (prohibiting misrepresentations about "any material aspect" of MARS).
[6] 12 C.F.R. § 1015.3(a).

**Consumer First Legal Group, LLC's violations of Regulation O before July 2012 (CFLG I).[7]**

6. Has the Bureau proven by a preponderance of the evidence that the amount of fees that CFLG I requested or received before consumers executed written agreements between them and their lenders or mortgage servicers incorporating modification offers from those lenders or servicers (advance fees) was $94,730?[8]

    Yes _____    No _____

7. Has the Bureau proven by a preponderance of the evidence that CFLG I failed to make the disclosures required under 12 C.F.R. § 1015.5(b) that a consumer could reject the mortgage modification offer and corresponding fee charged by CFLG I?[9]

    Yes _____    No _____

**Consumer First Legal Group, LLC's violations of Regulation O after July 2012 (CFLG II).[10]**

8. Has the Bureau proven by a preponderance of the evidence that CFLG II misrepresented to consumers, expressly or by implication, that they would receive legal representation?[11]

    Yes _____    No _____

9. Has the Bureau proven by a preponderance of the evidence that CFLG II misrepresented to consumers, expressly or by implication, the likelihood of negotiating, obtaining, or arranging any represented service or result?[12]

    Yes _____    No _____

10. Has the Bureau proven by a preponderance of the evidence that CFLG II misrepresented to consumers, expressly or by implication, the amount of time to accomplish any represented service or result?[13]

    Yes _____    No _____

---

[7] 12 C.F.R. part 1015.
[8] 12 C.F.R. § 1015.5(a).
[9] 12 C.F.R. § 1015.5(b).
[10] 12 C.F.R. part 1015.
[11] 12 C.F.R. § 1015.3(b)(8).
[12] 12 C.F.R. § 1015.3(b)(1).
[13] 12 C.F.R. § 1015.3(b)(2)

11. Has the Bureau proven by a preponderance of the evidence that CFLG II misrepresented to consumers, expressly or by implication, that CFLG II had special contacts with lenders or mortgage servicers to expedite the mortgage loan modification application process?[14]

    Yes _____        No _____

12. Has the Bureau proven by a preponderance of the evidence that CFLG II represented during phone calls, expressly or by implication, that consumers should not communicate with their lenders or mortgage servicers?[15]

    Yes _____        No _____

**Defendants Macey, Aleman, and Searns's attorney exemption and practice of law affirmative defense under Regulation O for TMLG**

13. Have Macey, Aleman, and Searns each proven by a preponderance of the evidence that all of the TMLG local attorneys provided mortgage loan modification services as part of the practice of law?[16]

    Yes _____        No _____

14. Have Macey, Aleman, and Searns each proven by a preponderance of the evidence that all of the TMLG local attorneys were licensed to practice law in the state in which each consumer resided or the consumer's dwelling was located?[17]

    Yes _____        No _____

15. Have Macey, Aleman, and Searns each proven by a preponderance of the evidence that all of the TMLG local attorneys' affiliations with TMLG met the requirements for limited liability partnerships under Nevada law?

    Yes _____        No _____

---

[14] 12 C.F.R. § 1015(b) (prohibiting misrepresentations about "any material aspect" of MARS).
[15] 12 C.F.R. § 1015.3(a).
[16] 12 C.F.R. § 1015.7(a)(1).
[17] 12 C.F.R. § 1015.7(a)(2).

4

16. Have Macey, Aleman, and Searns each proven by a preponderance of the evidence that all of the TMLG local attorneys were partners in TMLG under Nevada law?

    Yes _____     No _____

17. Have Macey, Aleman, and Searns each proven by a preponderance of the evidence that all of the TMLG local attorneys had legally effective affiliations with TMLG under Nevada law?

    Yes _____     No _____

**CFLG I's attorney exemption and practice of law affirmative defense under Regulation O**

18. Has CFLG I proven by a preponderance of the evidence that all of the CFLG I local attorneys provided mortgage loan modification services as part of the practice of law?[18]

    Yes _____     No _____

19. Has CFLG I proven by a preponderance of the evidence that all of the CFLG I local attorneys were licensed to practice law in the state in which each consumer resided or the consumer's dwelling was located?[19]

    Yes _____     No _____

20. Has CFLG I proven by a preponderance of the evidence that all of the CFLG I local attorneys' affiliations with CFLG I met the requirements for limited liability companies under Wisconsin law?

    Yes _____     No _____

21. Has CFLG I proven by a preponderance of the evidence that all of the CFLG I local attorneys were members of CFLG I under Wisconsin law?

    Yes _____     No _____

22. Has CFLG I proven by a preponderance of the evidence that all of the CFLG I local attorneys were partners in CFLG I under Wisconsin law?

    Yes _____     No _____

---

[18] 12 C.F.R. § 1015.7(a)(1).
[19] 12 C.F.R. § 1015.7(a)(2).

23. Has CFLG I proven by a preponderance of the evidence that all of the CFLG I local attorneys had legally effective affiliations with CFLG I under Wisconsin law?

    Yes _____      No _____

**CFLG II's attorney exemption and practice of law affirmative defense under Regulation O**

24. Has CFLG II proven by a preponderance of the evidence that all of the CFLG II local attorneys provided mortgage loan modification services as part of the practice of law?[20]

    Yes _____      No _____

25. Has CFLG II proven by a preponderance of the evidence that all of the CFLG II local attorneys were licensed to practice law in the state in which each consumer resided or the consumer's dwelling was located?[21]

    Yes _____      No _____

26. Has CFLG II proven by a preponderance of the evidence that all of the CFLG II local attorneys' affiliations with CFLG II met the requirements for limited liability companies under Wisconsin law?

    Yes _____      No _____

27. Has CFLG II proven by a preponderance of the evidence that all of the CFLG II local attorneys were members of CFLG II under Wisconsin law?

    Yes _____      No _____

28. Has CFLG II proven by a preponderance of the evidence that all of the CFLG II local attorneys were partners in CFLG II under Wisconsin law?

    Yes _____      No _____

---

[20] 12 C.F.R. § 1015.7(a)(1).
[21] 12 C.F.R. § 1015.7(a)(2).

29. Has CFLG II proven by a preponderance of the evidence that all of the CFLG II local attorneys had legally effective affiliations with CFLG II under Wisconsin law?

    Yes _____      No _____

**TMLG's conduct with respect to civil money penalty**

30. Did TMLG commit knowing violations of Regulation O (subject to a third tier civil money penalty of up to $1,105,241 for each day during which such violation continued)?[22]

    Yes _____      No _____

31. If the answer to question 30 was yes, skip to question 33. If not, was TMLG's conduct a reckless violation of Regulation O (subject to a second tier penalty of up to $27,631 for each day during which such violation continued)?[23]

    Yes _____      No _____

32. If the answer to question 31 was yes, skip to question 33. If the answer to both questions 30 and 31 was no, was TMLG's conduct subject to a first tier strict liability civil money penalty (up to $5,526 for each day during which such violation continued)?[24]

    Yes _____      No _____

33. How many violations and days of violation did TMLG commit: _____.

**CFLG I's civil money penalty**

34. Did CFLG I commit knowing violations of Regulation O (subject to a third tier civil money penalty of up to $1,105,241 for each day during which such violation continued)?[25]

    Yes _____      No _____

---

[22] 12 U.S.C. § 5565(c)(2)(C) (statutory penalty amounts) and 12 C.F.R. § 1083.1 (adjusting statutory penalty amounts for inflation).
[23] 12 U.S.C. § 5565(c)(2)(B) and 12 C.F.R.§ 1083.1.
[24] 12 U.S.C. § 5565(c)(2)(A) and 12 C.F.R. § 10831.1.
[25] 12 U.S.C. § 5565(c)(2)(C) and 12 C.F.R. § 1083.1.

35. If the answer to question 34 was yes, skip to question 37. If not, was CFLG I's conduct a reckless violation of Regulation O (subject to a second tier penalty of up to $27,631 for each day during which such violation continued)?[26]

        Yes \_\_\_\_        No \_\_\_\_

36. If the answer to question 35 was yes, skip to question 37. If the answer to both questions 34 and 35 was no, CFLG I's conduct is subject to a first tier strict liability civil money penalty (up to $5,526 for each day during which such violation continued).[27]

        Yes \_\_\_\_        No \_\_\_\_

37. How many violations and days of violation did CFLG I commit: _____.

38. How much is CFLG I's resulting civil money penalty: $_____.

**CFLG II's civil money penalty**

39. Did CFLG II commit knowing violations of Regulation O (subject to a third tier civil money penalty of up to $1,105,241 for each day during which such violation continued)?[28]

        Yes \_\_\_\_        No \_\_\_\_

40. If the answer to question 39 was yes, skip to question 42. If not, was CFLG II's conduct a reckless violation of Regulation O (subject to a second tier penalty of up to $27,631 for each day during which such violation continued)?[29]

        Yes \_\_\_\_        No \_\_\_\_

41. If the answer to question 40 was yes, skip to question 42. If the answer to both questions 39 and 40 was no, CFLG II's conduct is subject to a first tier strict liability civil money penalty (up to $5,526 for each day during which such violation continued).[30]

        Yes \_\_\_\_        No \_\_\_\_

---

[26] 12 U.S.C. § 5565(c)(2)(B) and 12 12 C.F.R. § 1083.1.
[27] 12 U.S.C. § 5565(c)(2)(A) and 12 C.F.R. § 1083.1.
[28] 12 U.S.C. § 5565(c)(2)(C) and 12 CF.R. § 1083.1.
[29] 12 U.S.C. § 5565(c)(2)(B) and 12 CF.R. § 1083.1.
[30] 12 U.S.C. § 5565(c)(2)(A) and 12 CF.R. § 1083.1.

42. How many violations and days of violation did CFLG II commit: _____.

43. How much is CFLG II's resulting civil money penalty: $_____.

**Thomas Macey's civil money penalty**

44. Did Macey commit knowing violations of Regulation O (subject to a third tier civil money penalty of up to $1,105,241 for each day during which such violation continued)?[31]

   Yes _____        No _____

45. If the answer to question 44 was yes, skip to question 47. If not, was Macey's conduct a reckless violation of Regulation O (subject to a second tier penalty of up to $27,631 for each day during which such violation continued)?[32]

   Yes _____        No _____

46. If the answer to question 45 was yes, skip to question 47. If the answer to both questions 44 and 45 was no, Macey's conduct is subject to a first tier strict liability civil money penalty (up to $5,526 for each day during which such violation continued).[33]

   Yes _____        No _____

47. How many violations and days of violation did Macey commit in connection with, and through, TMLG and CFLG II: _____.

48. How much is Macey's resulting civil money penalty: $_____.

**Jeffrey Aleman's civil money penalty**

49. Did Aleman commit knowing violations of Regulation O (subject to a third tier civil money penalty of up to $1,105,241 for each day during which such violation continued)?[34]

   Yes _____        No _____

---

[31] 12 U.S.C. § 5565(c)(2)(C) and 12 CF.R. § 1083.1.
[32] 12 U.S.C. § 5565(c)(2)(B) and 12 CF.R. § 1083.1.
[33] 12 U.S.C. § 5565(c)(2)(A) and 12 CF.R. § 1083.1.
[34] 12 U.S.C. § 5565(c)(2)(C) and 12 CF.R. § 1083.1.

50. If the answer to question 49 was yes, skip to question 52. If not, was Aleman's conduct a reckless violation of Regulation O (subject to a second tier penalty of up to $27,631 for each day during which such violation continued)?[35]

 Yes \_\_\_\_\_    No \_\_\_\_\_

51. If the answer to question 50 was yes, skip to question 52. If the answer to both questions 49 and 50 was no, Aleman's conduct is subject to a first tier strict liability civil money penalty (up to $5,526 for each day during which such violation continued).[36]

 Yes \_\_\_\_\_    No \_\_\_\_\_

52. How many violations and days of violation did Aleman commit in connection with, and through, TMLG and CFLG II: _____.

53. How much is Aleman's resulting civil money penalty: $_____.

**Jason Searns's civil money penalty**

54. Did Searns commit knowing violations of Regulation O (subject to a third tier civil money penalty of up to $1,105,241 for each day during which such violation continued)?[37]

 Yes \_\_\_\_\_    No \_\_\_\_\_

55. If the answer to question 54 was yes, skip to question 57. If not, was Aleman's conduct a reckless violation of Regulation O (subject to a second tier penalty of up to $27,631 for each day during which such violation continued)?[38]

 Yes \_\_\_\_\_    No \_\_\_\_\_

---

[35] 12 U.S.C. § 5565(c)(2)(B) and 12 CF.R. § 1083.1.
[36] 12 U.S.C. § 5565(c)(2)(A) and 12 CF.R. § 1083.1.
[37] 12 U.S.C. § 5565(c)(2)(C) and 12 CF.R. § 1083.1.
[38] 12 U.S.C. § 5565(c)(2)(B) and 12 CF.R. § 1083.1.

56. If the answer to question 55 was yes, skip to question 57. If the answer to both questions 54 and 55 was no, Searns's conduct is subject to a first tier strict liability civil money penalty (up to $5,526 for each day during which such violation continued).[39]

      Yes _____      No _____

57. How many violations and days of violation did Searns commit in connection with, and through, TMLG: _____.

58. How much is Searns's resulting civil money penalty: $_____.

**Harold Stafford civil money penalty**

59. Did Stafford commit knowing violations of Regulation O (subject to a third tier civil money penalty of up to $1,105,241 for each day during which such violation continued)?[40]

      Yes _____      No _____

60. If the answer to question 59 was yes, skip to question 62. If not, was Stafford's conduct a reckless violation of Regulation O (subject to a second tier penalty of up to $27,631 for each day during which such violation continued)?[41]

      Yes _____      No _____

61. If the answer to question 60 was yes, skip to question 62. If the answer to both questions 59 and 60 was no, Stafford's conduct is subject to a first tier strict liability civil money penalty (up to $5,526 for each day during which such violation continued).[42]

      Yes _____      No _____

62. How many violations and days of violation did Stafford commit in connection with, and through, CFLG I: _____.

---

[39] 12 U.S.C. § 5565(c)(2)(A) and 12 CF.R. § 1083.1.
[40] 12 U.S.C. § 5565(c)(2)(C) and 12 CF.R. § 1083.1.
[41] 12 U.S.C. § 5565(c)(2)(B) and 12 CF.R. § 1083.1.
[42] 12 U.S.C. § 5565(c)(2)(A) and 12 CF.R. § 1083.1.

11

63. How much is Stafford's resulting civil money penalty: $_____.

**Restitution and disgorgement**

64. Is the Bureau entitled to restitution and disgorgement from Macey, Aleman, and Searns, jointly and severally, for TMLG's violations, in the previously-ruled amount of $18,331,737 (TMLG's net revenues from fees collected from consumers)?

    Yes _____          No _____

65. Is the Bureau entitled to restitution and disgorgement from CFLG I and Stafford, jointly and severally, for CFLG I's violations, in the amount of $94,730 (CFLG I's net revenues from fees collected from consumers, out of the previously-ruled amount of $2,992,296 in combined CFLG I and CFLG II's net revenues from fees collected from consumers)?

    Yes _____          No _____

66. Is the Bureau entitled to restitution and disgorgement from CFLG II, Macey, and Aleman, jointly and severally, for CFLG II's violations, in the amount of $2,897,566 (CFLG II's net revenues from fees collected from consumers, out of the previously-ruled amount of $2,992,296 in combined CFLG I and CFLG II's net revenues from fees collected from consumers)?

    Yes _____          No _____

**Injunctive relief**

67. Is the Bureau entitled to a permanent injunction prohibiting CFLG from offering, providing, or assisting others in offering or providing mortgage assistance relief services as defined in 12 C.F.R. § 1015.2, or other debt relief products or services, to consumers, and from engaging in any other conduct that violates Regulation O?

    Yes _____          No _____

68. Is the Bureau entitled to a permanent injunction prohibiting Macey from offering, providing, or assisting others in offering or providing mortgage assistance relief services as defined in 12 C.F.R. § 1015.2, or other debt relief products or services, to consumers, and from engaging in any other conduct that violates Regulation O?

    Yes _____          No _____

69. Is the Bureau entitled to a permanent injunction prohibiting Aleman from offering or providing, or assisting others in offering or providing mortgage assistance relief services as defined in 12 C.F.R. § 1015.2, or other debt relief products or services, to consumers, and from engaging in any other conduct that violates Regulation O?

    Yes _____          No _____

70. Is the Bureau entitled to a permanent injunction prohibiting Searns from offering or providing, or assisting others in offering or providing mortgage assistance relief services as defined in 12 C.F.R. § 1015.2, or other debt relief products or services, to consumers, and from engaging in any other conduct that violates Regulation O?

    Yes _____          No _____

71. Is the Bureau entitled to a permanent injunction prohibiting Stafford from offering or providing, or assisting others in offering or providing mortgage assistance relief services as defined in 12 C.F.R. § 1015.2, or other debt relief products or services, to consumers, and from engaging in any other conduct that violates Regulation O?

    Yes _____          No _____

May 12, 2017

Respectfully submitted,

Consumer Financial Protection Bureau

Anthony Alexis (DC Bar #384545)
*Enforcement Director*

David M. Rubenstein (DC Bar #458770)
*Deputy Enforcement Director*

Cynthia Gooen Lesser (NY Bar #2578045)
*Assistant Deputy Enforcement Director*

/s David Dudley
Seth B. Popkin, DC Bar #417365
seth.popkin@cfpb.gov
202-435-9496
Shirley Chiu, IL Bar #6296079
shirley.chiu@cfpb.gov
202-435-7592
Mary K. Warren, NY Bar #2557684
mary.warren@cfpb.gov
202-435-7815
David Dudley, WI Bar # 1062812
202-435-9284
david.dudley@cfpb.gov
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552

## Certification

I certify that a copy of the Proposed Special Verdict was served on all counsel of record on May 12, 2017 via the Court's electronic filing system.

/s David Dudley