IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CONSUMER FINANCIAL PROTECTION BUREAU,

            Plaintiff,

    v.

THE MORTGAGE LAW GROUP, LLP,
CONSUMER FIRST LEGAL GROUP, LLC,
THOMAS G. MACEY, JEFFERY J. ALEMAN,
JASON E. SEARNS and HAROLD E. STAFFORD,

            Defendants.

OPINION and ORDER

14-cv-513-wmc

---

    This court entered an amended, final judgment in favor of plaintiff Consumer Financial Protection Bureau ("CFPB") on November 18, 2019, which awarded: (1) over $20 million in restitution to the consumers of The Mortgage Law Group ("TMLG") and Consumer First Legal Group ("CFLG") I and II[1] for the advanced fees defendants had wrongfully collected in violation of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5481 *et seq.*; (2) civil penalties for defendants' reckless and strict liability violations; and (3) a permanent injunction against defendants Thomas Macey, Jeffery Aleman, Jason Searns, and CFLG regarding mortgage assistance *and* debt relief products or services, as well as a five-year injunction against defendant Harold Stafford regarding mortgage assistance relief products or services. (Dkt. ##419 at 26-27, 426.) On appeal, the Seventh Circuit affirmed this court's liability findings against defendants,

---

[1] "CFLG I" refers to the company solely owned by defendant Harold Stafford from January to July 2012, and "CFLG II" refers to the company jointly owned by defendants Thomas Macey, Jeffery Aleman, Jason Searns, and Stafford after July 2012.

except for recklessness. However, the court of appeals vacated the award of restitution, civil penalties, and injunctive relief, remanding for further proceedings as to those remedies. *Consumer Fin. Prot. Bureau v. Consumer First Legal Grp., LLC*, 6 F.4th 694 (7th Cir. 2021). Specifically, the Seventh Circuit found: (1) equitable restitution should have been calculated using defendants' net *profits*, rather than net revenues; and (2) the civil penalties should be revised in part based on the miscalculation of the penalty period for defendants TMLG and CFLG II's enrollment violations, and an erroneous factual finding that all defendants (except Stafford and CFLG I) had acted recklessly. Finally, the court found that the permanent injunction must be tailored in breadth to reflect that the violations at issue were not knowing or reckless and concerned only mortgage-relief services, rather than debt-relief services as a whole. *Id.* at 710-13. After denying plaintiff's petition for rehearing *en banc*, the Seventh Circuit issued its mandate on December 7, 2021. (Dkt. ##571-2, 571-3.)

On remand, this court directed the parties to brief what, if anything, would be an appropriate entry of restitution, civil penalties, and injunctive relief against defendants. In something of an "you don't get what you don't ask for," plaintiff requests that this court: (1) simply award $21.7 million again, though this time as *legal* restitution in the full amount of advanced fees that defendants wrongfully took from consumers, minus refunds, *or equitable* restitution in the same amount with no deduction for expenses because they were incurred in carrying out unlawful conduct; (2) impose the maximum strict liability penalty against Macey ($10,380,000) and Aleman ($13,330,000), impose a strict liability penalty against Searns limited to the amount previously imposed against him

($8,002,500), and reimpose the same strict liability penalties against Stafford ($35,250) and CFLG ($3,121,500);[2] and (3) permanently ban Macey, Aleman, Searns, and CFLG from providing mortgage-relief services, as well as reimpose the five-year ban on Stafford. Conversely, defendants now request that the court: (1) award *no* restitution absent evidence that defendants netted any profits, or alternatively, hold another bench trial to determine the amount of profits; (2) limit civil penalties to $1,000 a day, subject to the previously imposed mitigation of 80%; and (3) impose a time-limited injunction related solely to the offering of mortgage relief services for all defendants. Having considered the court of appeals' instructions on remand and the parties' additional briefing, this court now orders entry of a reduced civil remedy in lieu of equitable restitution relief, lower civil penalties, and time-limited injunctive relief as set forth below.

OPINION

I.  Civil Relief In Lieu of Equitable Restitution

For their violations of Regulation O, this court originally ordered: defendants TMLG, Macey, Aleman, and Searns to provide restitution to TMLG consumers in the amount of $18,716,725.78; defendants CFLG, Macey, and Aleman to provide restitution to CFLG II consumers in the amount of $2,897,566; and defendants CFLG and Stafford to provide restitution to CFLG I consumers in the amount of $94,730. (Dkt. #419 at

---

[2] While neither Stafford's penalty nor his ban were explicitly disturbed on appeal, the Seventh Circuit stated that it was vacating the restitution, civil penalties, and injunction ordered by this court. Therefore, at plaintiff's request and to avoid any possible confusion, the court will impose a revised civil penalty and injunction against Stafford in its new judgment proportional to the reduced awards against the other defendants.

3

26.)  As noted by the Seventh Circuit, this court determined these amounts by looking to defendants' net revenues, calculated based on the amount of advance fees collected from consumers minus any refunds to those consumers.  *Id.* at 3-4.  In vacating this restitution award on appeal, the Seventh Circuit held that under the Supreme Court's recent decision in *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936 (2020), "all categories of equitable relief," including restitution and disgorgement, "may not exceed a firm's net profits."  *CFLG*, 6 F.4th at 710.  The court of appeals further observed that in ordering restitution, this court "understood itself to be awarding equitable relief because it cited equitable restitution cases in support of its order," and for that reason, declined plaintiff's request to affirm the award as legal restitution.  *Id.* at 711.

Obviously following up on this observation, plaintiff now asks this court to award the *full* amount taken from consumers either as legal restitution or a refund of moneys under 12 U.S.C. § 5565(a)(2), arguing that it has always sought a monetary judgment, rather than the return of specific funds or property to the firms' consumers.  As plaintiff points out, a claim for legal restitution only requires a defendant "to pay a sum of money," whereas a claim for equitable restitution "restore[s] to the plaintiff particular funds or property in the defendant's possession," and neither legal restitution nor a refund under § 5565(a) are concerned with disgorgement of defendant's profits or refunds.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002) (citations omitted); *see also Mooney v. Illinois Educ. Ass'n*, 942 F.3d 368, 371 (7th Cir. 2019) ("Where a plaintiff seeks 'recovery from the beneficiaries' assets generally' because her specific property has dissipated or is otherwise no longer traceable, the claim 'is a legal remedy, not an equitable

4

one.'"); *Fed. Trade Comm'n v. Inc21.com Corp.*, 475 F. App'x 106, 108 (9th Cir. 2012) ("legal restitution [is] measured by the loss to consumers").

In particular, as support for its argument that this court has the authority to recharacterize its previous equitable award as legal restitution, plaintiff cites *Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*, No. 17 C 194, 2021 WL 4146884, at *12 (N.D. Ill. Sept. 13, 2021). In that case, the Northern District of Illinois awarded legal restitution on remand under § 19 of the Federal Trade Commission ("FTC") Act, despite the Seventh Circuit having vacated the district court's original award under § 13(b) of the FTC Act as unauthorized. In doing so, that district court was persuaded in particular by its authority to amend the original judgment under Fed. R. Civ. P. 59(e), due to the intervening change in the law after having issued its original, vacated judgment.[3]  *Id.*

Defendants do not address the thrust of plaintiff's argument that legal restitution or § 5565(a) provide separate grounds for monetary relief in light of their violations of the CFPA. Rather, they argue that the Seventh Circuit explicitly rejected both equitable and legal restitution as a basis for relief in this case, having vacated an award of equitable relief. Defendants further argue that the specific nature of the Seventh Circuit's holding on appeal distinguishes this case from the Northern District of Illinois Court's non-precedential decision in *Credit Bureau Ctr.*, because unlike here, the Seventh Circuit did not expressly or impliedly consider the availability of restitution under the specific provision upon which the district court relied following remand.

---

[3] That case is again on appeal before the Seventh Circuit. *Id.*

Although the parties do not address it, their disagreement about what should be the basis of any monetary relief involves the related mandate rule and law-of-the-case doctrine. "The mandate rule requires a lower court to adhere to the commands of a higher court on remand," while the "law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 407 (7th Cir. 2018) (internal quotations and citations omitted). Although "[b]oth the mandate rule and the law-of-the-case doctrine are strong, . . . they can bend in sufficiently compelling circumstances," including subsequent changes in the law. *Id.* at 407-08.

While the Seventh Circuit's opinion in this case plainly forecloses any award of equitable restitution based on net revenues, it does not address the merits of plaintiff's argument that § 5565(a) authorizes a court's grant of both equitable and legal relief or forecloses an award of legal restitution as a possible remedy. Indeed, the court of appeals interpreted this court's previous orders as awarding equitable as opposed to legal restitution based only on the cases cited in this court's opinion. Further, during the earlier stages of this lawsuit through entry of final judgement in 2019, the question of whether the restitution award should be characterized as equitable or legal was not even before this court, largely because the distinction did not make a difference until the Supreme Court's *Liu* decision changed the law in 2020, at least with respect to how equitable restitution should be calculated. Therefore, this court finds that neither the law of the case nor the

Seventh Circuit's 2021 mandate precludes reconsideration on remand of the appropriate *type* of restitution or statutory remedy best suits any monetary award.

In particular, characterizing this relief as either legal restitution *or*, alternatively, an order for return of money under § 5565(a)(2)(B), is appropriate in this case because plaintiff's claim is against defendants generally and not one, identifiable fund or asset. *See Mooney*, 942 F.3d at 371 (holding same and emphasizing that "[i]t is not enough that [plaintiff's] fees once contributed to [defendant's] overall assets."); *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 144-45 (2016) ("[S]tandard equity treatises. . . make clear that a plaintiff could ordinarily enforce an equitable lien only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (e.g., identifiable property like a car). . . . The plaintiff then may have a personal claim against the defendant's general assets—but recovering out of those assets is a legal remedy, not an equitable one."). This is especially appropriate in a case like this one, where the court already found that the so-called "legal services" defendants and their corporate fronts purported to provide at exorbitant upfront fee were actually worth zero or next to zero, which despite being advertised as coming from local lawyers with special expertise, were national processing services essentially nothing more than clerical at worst and available through *free* clinics at best.

Accordingly, the court agrees that compensating consumers for their advanced fees paid to TMLG and CFLG I and II remains a valid and necessary remedy for the reasons explained in this court's previous order regarding remedies, which were not disturbed on

appeal (dkt. #419 at 3-9), and this court will recharacterize plaintiff's restitution claim as legal and award it based on defendants' net revenues consistent with the Supreme Court's decision in *Liu*. *See* 140 S. Ct. at 1942 ("consulting works on equity jurisprudence" to determine scope of "equitable relief"); *CFLG*, 6 F.4th at 710 ("*Liu* purports to set forth a rule applicable to all categories of equitable relief.").

Still, because the Seventh Circuit found that defendants' conduct was not the product of reckless disregard of the CFPA, but rather a failure to fit themselves under an exception for the delivery of legal services, the court has reconsidered the appropriate relief under § 5565(a)(2) from a complete restitution or disgorgement under (C) and (D). Instead, each defendant shall refund 50% of the moneys paid, which plaintiff shall return directly to the injured parties to the extent practical. Any portion that plaintiff is unable to be returned to the victims may be applied to the civil penalties assessed against defendants with the remainder, if any, reverting to defendants. Thus, the amended final judgment shall reflect reduced civil relief in the amount of $10,850,000: defendants TMLG, Macey, Aleman, and Searns are jointly and severally liable for $9,358,362.85 with respect to TMLG consumers; CFLG, Macey, and Aleman are jointly and severally liable for $1,448,783 with respect to CFLG II consumers; and defendant Stafford and CFLG are jointly and severally liable for $47,365 with respect to CFLG I consumers.

## II. Civil Money Penalties

Similarly, this court also imposed civil penalties at the "recklessness" tier against (1) Macey in the amount of $11,350,000, (2) Aleman in the amount of $14,785,000, (3)

Searns in the amount of $8,002,500, and (4) CFLG II in the amount of $3,086,250. These awards were obviously much greater than those against both Stafford and CFLG I in the amount of $35,250 at the strict liability tier.[4] (Dkt. #419 at 21-22, 27.) In calculating these penalties, this court expressly adopted plaintiff's recommendation that: Macey and Aleman pay 20% of the maximum reckless penalty of $25,000/day for six (Macey) to eight (Aleman) different violations they committed; Searns and CFLG II pay 15% of the maximum reckless penalty for four different violations; and Stafford and CFLG I pay 5% of the maximum strict liability penalty of $5,000/day for three violations. *Id.* The court further found that: TMLG-related enrollment violations occurred from July 21, 2011, through January 2, 2013 (532 days); CFLG I-related enrollment violations occurred from May 14, 2012 through June 29, 2012 (47 days); and CFLG II-related enrollment violations occurred from August 3, 2012 through January 4, 2013 (155 days). *Id.* at 16.

On appeal, the Seventh Circuit vacated this court's original finding of recklessness with respect to Macey, Aleman, Searns, and CFLG II, and instead ordered this court to make two adjustments in its penalty calculations on remand: (a) apply the penalty structure for strict-liability violations, which is limited to "$5,000 for each day during which such violation . . . continues," 12 U.S.C. § 5565(c)(2)(A); and (b) end the enrollment violation penalty period on October 30, 2012 for TMLG, and on November 30, 2012 for CFLG II, while tacking on one extra day of violations to account for the January 2013 enrollments "if it so wish[es]." *CFLG*, 6 F.4th at 712.

---

[4] The total civil penalty award against defendant CFLG was $3,121,500 ($3,0826,250 for CFLG II plus $35,250 for CFLG I).

On remand, therefore, plaintiff asks this court to impose: the maximum strict liability penalty against Macey and Aleman; a strict liability penalty against Searns and CFLG II limited to the penalty amounts previously imposed on those defendants; and the same strict liability penalty against Stafford and CFLG I. More specifically, plaintiff recalculated the penalties based on the strict liability tier, using the following dates and time periods for the enrollment violations:

- TMLG-related enrollment violations occurred July 21, 2011 through October 30, 2012, and then again on January 2, 2013 (469 days).

- CFLG II-related enrollment violations occurred August 3, 2012 through November 30, 2012, and then again on January 4, 2013 (121 days).

Repeating many of the arguments that they made on summary judgment, at trial, and in post-trial briefing, defendants assert that assessing the maximum strict liability penalties would be unconstitutional under the Excessive Fines clause of the Eighth Amendment and the Due Process clause of the Fifth Amendment because they provided legitimate services that helped many clients submit loan modification applications, did not wholly misrepresent their services, engaged in the practice of law, and did not commit grave offenses. However, the court of appeals did not criticize this court's previous analysis with respect to defendants' liability or dubious engagement in the practice of law. Rather, it merely limited the tier to which all defendants' culpability laid, considering "it a step too far to say that [defendants] were reckless—that is, that they should have been aware of an *unjustifiably high or obvious* risk of violating Regulation O." *CFLG*, 6 F.4th at 712.

Defendants further argue that when it comes to determining the appropriate penalty amount, the court must adopt the same level of mitigation that plaintiff previously

10

recommended and the court adopted in its original remedies order—20% of the maximum recklessness penalty for Macey and Aleman and 15% of the penalty for Searns and CFLG II—because those figures are the law of the case, and plaintiff is judicially estopped from arguing for a higher penalty. While the court of appeals did not disturb this court's ruling with respect to mitigation, this court finds that neither judicial estoppel nor the law of the case *require* it to adhere to its previous ruling regarding the 75-80% reductions in defendants' civil penalties. Instead, judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citations and internal quotations omitted). For the doctrine to apply, "a party's later position must be clearly inconsistent with its earlier position," *id.*, but plaintiff's current position regarding mitigation is not inconsistent with its earlier recommendation. To the contrary, plaintiff previously recommended substantial mitigation because defendants faced enormous maximum available penalties in the reckless tier, whereas now defendants now face more manageable maximum available penalties for the strict liability tier.

Further, the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (citation omitted). However, the doctrine is discretionary rather than mandatory and "does not prohibit a court from revisiting an issue when there is a legitimate reason to do so, whether it be a change in circumstances, new evidence, or something the court overlooked earlier." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 711-12 (7th Cir.), *opinion modified on reh'g*, 832 F.3d 699

(7th Cir. 2016) (internal citations omitted). This court did not decide upon any "rule of law" in deciding to impose penalties at 75-80% below the statutory maximum, but rather exercised its discretion in choosing the appropriate penalty amount within the permissible range of the then applicable penalty tier, which obviously has changed.

Finally, defendants challenge the new enrollment time periods proposed by plaintiff, arguing that the Seventh Circuit held plaintiff was entitled to a penalty only for those days on which defendants actually committed a violation, and not the entire time period that the firms were open for business. However, the court of appeals made no such finding. Rather, it affirmed this court's approach with one caveat: defendants "should not have been accountable for all the days between their second-to-last enrollments in Fall 2012 and their last enrollments in January 2013," directing instead that "the court should have ended the firms' enrollment violations penalty periods on October 30, 2012, and November 30, 2012, and (if it so wished) tacked on one extra day of violations to account for the January 2013 enrollments." *CFLG*, 6 F.4th at 712. Therefore, the court will use the following dates and time periods for the enrollment violations:

- TMLG-related enrollment violations occurred July 21, 2011 through October 30, 2012, and then again on January 2, 2013 (469 days).

- CFLG II-related enrollment violations occurred August 3, 2012 through November 30, 2012, and then again on January 4, 2013 (121 days).

This just leaves the amount of strict liability penalties to be imposed against defendants Macey, Aleman, Searns, and CFLG II. In assessing penalties, the CFPA requires courts to "take into account the appropriateness of the penalty with respect to" the following factors: (1) the size of the financial resources and the good faith of the

12

person charged; (2) the gravity of the violation; (3) the severity of the risks to or losses of the consumer; (4) the history of previous violations; and (5) such other matters as justice may require. 12 U.S.C. § 5565(c)(3). This court considered these factors in detail in its original, post-trial relief opinion, and determined that "[e]xcept for the remaining financial resources of the defendants, all of these factors weigh in favor of substantial civil penalties with respect to each of the defendants." (Dkt. #419 at 16-17.) Moreover, although the court of appeals concluded defendants' conduct did not rise to the level of recklessness, none of the facts informing this court's analysis of the mitigating factors has changed. If anything, the financial resources factor now further tips in plaintiff's favor because the future earning potential of Macey, Aleman, and Searns has improved with the more limited injunction mandated by the court of appeals. Accordingly, this court adopts by reference its previous analysis of the mitigation factors.

In light of the above considerations and the court's rulings with respect to defendants' liability, level of knowledge, and duration of misconduct, the court finds that imposing strict liability penalties at 50% below the statutory maximum is reasonable and will award civil penalties as follows: Macey in the amount of $5,190,000; Aleman in the amount of $6,665,000; Searns in the amount of $4,682,500; and CFLG II in the amount of $1,802,500. As for the $35,250 strict liability penalties previously awarded against Stafford and CFLG I and undisturbed by the court of appeals, those will remain the same.

### III. Injunction

Finally, this court had permanently enjoined Macey, Aleman, Searns, and CFLG from providing any mortgage-relief *and* debt-relief services, as well as enjoined Stafford from providing mortgage-relief services for five years. On appeal, the Seventh Circuit held that the "injunction needs some tailoring," as the "violations at issue here concerned mortgage-relief services, not debt-relief services as a whole" and the "violations were not knowing or reckless." *CFPB*, 6 F.4th at 712. While plaintiff asks that this court permanently enjoin Macey, Aleman, Searns, and CFLG from providing mortgage relief services, defendants correctly point out that the Seventh Circuit instructed that "an injunction of this breadth is not necessary to protect the public against future harm" and "need only ensure that defendants do not stray beyond the scope of the Act and its implementing regulations." *Id.*

In accordance with the mandate of the court of appeals, therefore, this court will: (1) impose an eight-year injunction (ending on November 4, 2027) against defendants Macey, Aleman, Searns, and CFLG, against marketing, selling, providing, offering to provide, as well as assisting others to market, sell, provide, or offer to provide, any mortgage assistance relief products or services as defined in 12 C.F.R. § 1015.2; and (2) reimpose the undisturbed, five-year injunction against Stafford, which will end on November 4, 2024, against his marketing, selling, providing, offering to provide, as well as assisting others to market, sell, provide, or offer to provide, any mortgage assistance relief products or services as defined in 12 C.F.R. § 1015.2.

ORDER

IT IS ORDERED that:

A. Civil relief as set forth above in the following amounts

1. Defendants TMLG, Macey, Aleman, and Searns are jointly and severally liable for $9,358,362.85 with respect to the advance fees that TMLG collected from consumers, payable within 30 days to plaintiff to be disbursed on a pro rata basis to the extent practical (or otherwise as the court might approve in the future).

2. Defendants CFLG, Macey, and Aleman are jointly and severally liable for $1,448,783 with respect to the advanced fees that CFLG II collected from consumers, payable within 30 days to the Bureau to be disbursed on a pro rata basis to the extent practical (or otherwise as the court might approve in the future).

3. Defendants Stafford and CFLG are jointly and severally liable for $47,365 with respect to the advanced fees that CFLG I collected from consumers, payable within 30 days to the Bureau to be disbursed on a pro rata basis to the extent practical (or otherwise as the court might approve in the future).

4. To the extent that any portions of these amounts paid cannot reasonably be returned to consumers by plaintiff, then the excess—minus any reasonable costs incurred by plaintiff in implementing the award—shall be applied toward the civil penalties assessed against defendants, with the remainder, if any, reverting to defendants. Plaintiff shall apply any excess toward civil penalties, with the remainder reverting to defendants, when it determines, in accordance with its standard practices for administering payments to victims, that it is not practicable to distribute the remaining funds to consumers. Plaintiff shall apprize the court annually of its progress.

B. Defendants are directed to pay civil penalties to plaintiff in the following amounts on or before 30 days from date of this order. These amounts represent civil penalties owed to the United States pursuant to 12 U.S.C. § 5565(c) and are not compensation for actual pecuniary loss and, therefore, are not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7).

1. Macey in the amount of $5,190,000.

2. Aleman in the amount of $6,665,000.

3. Searns in the amount of $4,682,500.

4. Stafford in the amount of $35,250.

5. CFLG in the amount of $1,837,750.

C. No interest shall accrue on the ordered payments if timely made. In the event of any default in payment, the entire unpaid amount shall constitute a debt due and immediately owing and post-judgment interest shall be assessed from the date of this order until payment is made as set forth in 28 U.S.C. § 1961.

D. An injunction pursuant to Federal Rule of Civil Procedure 65 is also ENTERED under the following terms and conditions:

> Defendants Macey, Aleman, Searns, and CFLG are enjoined for a period of eight years ending on November 4, 2027, and defendant Stafford is enjoined for a period of five years ending on November 4, 2024, from marketing, selling, providing, offering to provide, and assisting others to market, sell, provide, or offer to provide, any mortgage assistance relief products or services as defined in 12 C.F.R. § 1015.2.

E. The clerk of court is directed to enter final judgment in favor of plaintiff consistent with this order.

Entered this 1st day of August, 2022.

        BY THE COURT:

        /s/

        WILLIAM M. CONLEY
        District Judge